# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADRIAN CALISTE AND BRIAN GISCLAIR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED** | **CIVIL ACTION NO. 17-6197** **(CLASS ACTION)** **JUDGE FALLON** |
| **v.** | **MAGISTRATE NORTH** |
| **HARRY E. CANTRELL, MAGISTRATE JUDGE OF ORLEANS PARISH CRIMINAL DISTRICT COURT** | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### MAY IT PLEASE THE COURT:

This memorandum is submitted by defendant, Magistrate Judge Harry E. Cantrell, in support of his Motion for Summary Judgment. For the several reasons discussed herein, Judge Cantrell submits that his motion should be granted and plaintiffs' claims against him dismissed.

## I.   THIS COURT LACKS THE POWER TO DIRECT A STATE COURT JUDGE IN THE PERFORMANCE OF HIS DUTIES

Plaintiffs' suit implicates two conflicting legal principles: (1) judicial immunity does not bar claims for injunctive or declaratory relief in civil rights actions[1] and (2) federal courts do not enjoy the authority to direct state courts or their judicial officers in the performance of their duties.[2] Resolution of this conflict requires a consideration of the relief being sought. Labels affixed and characterizations made by plaintiffs are not conclusive. "Courts throughout the

---

[1] *Oliver v. Superior Court of Plymouth Cty.*, 799 F.Supp. 1273 (D. Mass.1992).

[2] 28 U.S.C.A. § 1361; federal courts "shall have jurisdiction over of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff. Mandamus relief is limited to federal officials and agencies and does not include the power to issue mandamus writs or orders directing state courts or their judicial officers in the performance of their duties.

United Sates have ruled that a request for injunctive or declaratory relief, which asks a court to order a state officer or agency to perform certain duties, is not a request for injunctive or declaratory relief—it is a request for a writ of mandamus"[3]:

> Under these circumstances, it is clear plaintiffs are attempting to redefine a request for mandamus relief as one for declaratory relief. As discussed above, the court cannot do this. Plaintiffs' claim has all the indicia of a request for mandamus relief, and this Court cannot construe it as anything but a request for mandamus relief. As the saying goes, if it looks like a duck, swims like a duck and quacks like a duck, then it's a duck. Accordingly, because "federal courts are without power to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties," this court is without jurisdiction to consider plaintiff's claim.[4]

When a plaintiff wants a federal court to compel a state judicial officer to do something, it is a request for mandamus and the federal court lacks the power to oblige:

- Louisiana state prisoner filed in state court for leave to file *in forma pauperis*. His motion was denied, as was his motion to appeal. He then sued in federal court to have the state court judge grant the motion. The prisoner argued that the judge was not judicially immune from claims for equitable relief and attorney's fees. "Johnson is correct that judicial immunity does not bar claims for injunctive or declaratory relief in civil rights actions.... The dismissal of his claims for such relief was nevertheless appropriate as the federal courts have no authority to direct state courts or their judicial officers in the performance of their duties." [5]

- Requesting an order to expunge is mandamus.[6]

- "In his petition, Jackson argues that he is entitled to review the tape recordings of his state court trial, and he seeks an order from this court allowing him to do so... As a general rule, a federal court does not have this type of mandamus authority over the state courts and its officers."[7]

---

[3] *Kress v. Copple-Trout*, 2008 WL 2095602 (D. Idaho May 16, 2008), citing *Oliver*, 799 F.Supp. 1273; *Johnson v. Bigelow*, 239 Fed.Appx. 865 (5th Cir. 2007); *In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001); *Santee v. Quinlan*, 115 F.3d 355, 356–57 (5th Cir. 1997); *Russell v. Knight*, 488 F.2d 96, 97 (5th Cir. 1973); *Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973); *Lamar v. 118th Judicial Dist. Court of Tex.*, 440 F.2d 383, 384 (5th Cir. 1971); *White v. Stricklin*, 2002 WL 1125747 (N.D. Tex. 2002); *Norman v. Louisiana Supreme Court*, 2001 WL 881298 (E.D. La. 2001).

[4] *Kress* at p.2.

[5] *Johnson*, 239 Fed. Appx. 865.

[6] *Pearson v. Super. Ct. of Douglas Cnty.*, 2016 WL 5897786 (N.D. Ga. 2016).

[7] *Jackson v. Prince*, 2015 WL 9672926 (E.D. La. 2015).

- No authority to direct a clerk of court to accept a late pleading.[8]

- Claim against state court judges based on their rulings which allegedly deprived plaintiff of her property and civil rights was dismissed based on *Rooker-Feldman* and fact that court had no authority to direct state court judges.[9]

- Civil rights action against a Lincoln Parish judge and her law clerk alleging that the law clerk denied plaintiff authority to proceed *in forma pauperis* in an intended state court lawsuit. Plaintiff sought injunctive relief compelling the judge to rule on the motion, prohibiting law clerks from deciding such motions, and requiring judges to enact a specific policy to about ISP motions.[10] Held: court had no power to direct state court judges.[11]

Regarding their claims for declaratory relief, plaintiffs' demands mirror those in *Johnson*[12] and *Wingo*.[13] Plaintiffs apparently seek to have this Court order Judge Cantrell, a duly appointed and currently sitting state court judge, to follow a prescribed protocol in conducting bail hearings. There is no way to interpret such a demand other than as a request to this Court to instruct a state judicial officer on how to run his docket. This Court lacks the authority to do so; Judge Cantrell's motion should accordingly be granted and plaintiffs' suit dismissed.

## II.   DISCRETION AND DECLARATORY RELIEF

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.[14]

---

[8] *Lavergne v. Peters*, 2014 WL 133948 (W.D. La. 2014).
[9] *Anderson v. Law Firm of Shorty, Dooley, & Hall*, 2009 WL 3293962 (5th Cir. 2014).
[10] *Wingo v. City of W. Monroe*, 2012 WL 1135682 (W.D. La. 2012).
[11] *Ibid.*
[12] *Johnson*, 239 Fed. Appx. 865.
[13] *Wingo*, 2012 WL 1135682.
[14] 28 U.S.C.A. § 2201(a).

The Declaratory Judgment Act "is an enabling act which confers discretion on the courts rather than an absolute right on a litigant."[15] The Supreme Court describes the granting of declaratory relief as a discretionary decision that must consider three over-arching considerations: federalism, fairness, and efficiency.[16] The Fifth Circuit requires consideration of the seven non-exclusive *Trejo* factors.[17] Where no parallel state action is pending, a district court's discretion to abstain or grant a stay under the Declaratory Judgment Act still exists, but that discretion is less broad.[18] Here, there is sufficient reason to decline to exercise jurisdiction, as Judge Cantrell has resolved the purported constitutional deficiencies cited by plaintiffs in their claim for declaratory relief. As a matter of federalism, if practical it is appropriate to resolve the alleged problem in the state court where it arose rather than to invoke federal jurisdiction.[19]

To satisfy the "actual controversy" requirement of the Declaratory Judgment Act, the dispute must be definite and concrete, touching the legal relations of parties having adverse legal interests; the dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law

[15] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995), quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952).

[16] *Wilton*, 515 U.S. 277 *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

[17] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994): (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

[18] *Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958 (8th Cir. 2013); the Eighth Circuit crafted a specific six-factor test when no suit was pending.

[19] *Severin v. Par. of Jefferson*, 357 Fed. Appx. 601 (5th Cir. 2009); there, and in multiple companion cases, issues arose when, shortly before committing suicide, a state court clerk called out the validity of the Louisiana Fifth Circuit's criminal writ review process. The Louisiana Fifth Circuit, with the approval of the Louisiana Supreme Court, developed a protocol to reconsider all suspect writs. Multiple efforts to invoke federal jurisdiction were rejected.

would be upon a hypothetical set of facts.[20] A declaratory judgment must be more than an advisory opinion. A case falls within the scope of the judiciary article of the Constitution if it presents a dispute that is appropriate for judicial determination, not hypothetical, abstract, academic, or moot, but definite and concrete, touching the legal relations of parties having adverse legal interests; it must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character.[21] For the reasons articulated below, there is no currently extant justiciable controversy; any ruling issued by this Court on the claims for relief sought by plaintiffs' would be purely advisory and Judge Cantrell's motion should accordingly be granted.

## III.   PLAINTIFFS' CLAIMS OF UNCONSTITUTIONAL BAIL HEARING PROTOCOL MOOTED BY VOLUNTARY CESSATION

"Mootness is the doctrine of standing in a time frame."[22]  A case becomes moot—and therefore no longer a "case" or "controversy" for purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[23]

Circumstances eliminating the actual controversy after a lawsuit is filed render it moot.[24] Mootness occurring because a defendant stops engaging in allegedly wrongful conduct is viewed with skepticism, as the defendant might resume the conduct after dismissal:

> A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.  It is well-settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  Defendant-induced mootness is viewed with caution because there exists some cognizable

[20] *Medimmune, Inc. v. Genentech, Inc.*, 219 Fed. Appx. 986 (Fed. Cir. 2007).

[21] *Wacker v. Bisson*, 348 F.2d 602 (5th Cir. 1965).

[22] *Zen-Noh Grain Corp. v. Consol. Envtl. Mgmt., Inc.*, 2013 WL 3947186 (E.D. La. 2013).

[23] *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194 (1993), quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curium); *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015).

[24] *Fontenot*, 777 F.3d 741, citing *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

danger of recurrent violation where a defendant follows one adjudicated violation with others.[25]

A case is moot if (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations.[26] If these conditions exist, it is no longer possible for the court to grant any effectual relief to the prevailing party and any opinion on the legality of the action at issue would be advisory.[27] Judge Cantrell submits that, by revising his standard bail hearing protocol to take into account recent Fifth Circuit jurisprudence, he has in good faith and with diligence undertaken to meet this burden.[28]

The Fifth Circuit is solicitous when the issue is voluntary cessation of possibly wrongful conduct and the defendant is a governmental institution.[29] The goal is to determine whether the governmental actor's actions constitute a true effort to extinguish a controversy or litigation posturing.[30] "Government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."[31] Absent "evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."[32] Such self-correction by a government defendant provides a secure foundation for dismissal based on

---

[25] *Fontenot*, 777 F.3d 741.

[26] *Cars v. Alta Verde Industries, Inc.* 931 F.3d 1055, 1065 (5th Cir. 1991).

[27] *City of Erie v. Pap's A.M.*, 529 U.S. 277, 278 (2000).

[28] See Exhibit A, Cantrell affidavit.

[29] *Fontenot*, 777 F.3d 741, citing *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009).

[30] *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 426, n. 3 (5th Cir. 2013).

[31] *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 10471052–53 (5th Cir. 1997).

[32] *id.*

mootness so long as it appears genuine.[33] By way of example, cases considering and sustaining governmental defendant claims of voluntary cessation include the following:

- A prison policy that prohibited inmates from receiving packages from Iran was moot for purposes of declaratory relief due to voluntary abandonment of the policy;[34]

- The city's amendment of an ordinance was presumed to be in good faith and not litigation posturing because the new terms showed it was extremely unlikely that the city would reenact a new ordinance similar to the old one;[35]

- When a new ordinance makes insignificant changes and continues to disadvantage the plaintiffs in the same fundamental ways as the superseded provision, the case is not moot;[36]

- A new administrative order that was nothing more than a re-characterization of the original order did not make the matter moot;[37]

- Litigation seeking issuance of an injunction requiring a university to provide disabled students with reasonable accommodations was rendered moot when the university acquired a wheel-chair accessible van;[38]

- A challenge to practices involving transfer of incompetent criminal defendants from jail to a mental health facility was not moot when plaintiff was transferred during suit because pretrial detention is transitory;[39]

- A company's claim on an unsuccessful bid for a public project was rendered moot when all bids were rejected.[40]

Judge Cantrell's revising of his bail hearing protocol demonstrates his good faith efforts to cure the constitutional shortcomings posited by plaintiffs and to obviate any need for this

---

[33] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 2010 WL 3523040 (E.D. La. 2010), citing *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988).
[34] *Spence v. Nelson*, 533 Fed. Appx. 368 (5th Cir. 2013).
[35] *Gross v. City of New Orleans*,2013 WL 66223911 (E.D. La. 2013).
[36] *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993); see also *Conservation Law Found. v. Evans*, 360 F.3d 21, 28 (1st Cir. 2004).
[37] *Hornbeck Offshore Services, L.L.C. v. Salazar*, 2010 WL 3523040 (E.D. La. 2010).
[38] *Davis v. Biggers*, 2013 WL 5703616 (S.D. Tex. 2013).
[39] *Advocacy Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.*, 731 F.Supp.2d 603 (E.D. La.2010).
[40] *Tectrans, Inc. v. New Orleans Aviation Bd.*, 695 F.Supp.2d 313 (E.D. La. 2010).

Court to issue declaratory relief.  His attached affidavit[41] confirms that the colloquy he currently follows and checklist he currently utilizes in setting bail fully comports with all applicable constitutional requisites, as most recently articulated at length by the Fifth Circuit in *O'Donnell v. Harris County, Texas.*[42]  Voluntary cessation here is not a litigation tactic; it is a genuine resolution of plaintiffs' complaints regarding alleged constitutional infirmities in Judge Cantrell's bail hearing protocol and reflects complete compliance with the constitutional requirements set forth in *O'Donnell*. The claims of these plaintiffs are moot and cannot serve as the basis for a granting of declaratory relief.

Judge Cantrell acknowledges that, as the party asserting mootness, he bears the "heavy" and "formidable" burden of making this showing.[43]  While his "bare assurance" that he will not engage in the alleged wrongful conduct again is insufficient,[44] his detailed affidavit confirms that he has met his heavy burden[45] such that his motion should be granted and plaintiffs' claims dismissed.

## IV.   JUDICIAL EXPENSE FUND STATUTE DOES NOT OFFEND CONSTITUTIONAL REQUIREMENT FOR A FAIR TRIBUNAL

Plaintiffs have alleged that the Judicial Expense Fund violates their due process and equal protection rights; it does not. The Due Process Clause of the Fourteenth Amendment requires a non-biased judge.[46] Like all other courts in Louisiana's many parishes, the Orleans Parish Criminal District Court is funded in part by fines and fees, including designated percentages of

---

[41] See Exhibit A, Cantrell affidavit.
[42] 882 F.3d 528, 540-545 (5ᵗʰ Cir. 2018).
[43] *Advocacy Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.*, 731 F.Supp.2d 603 (E.D. La. 2010).
[44] *Ibid.*
[45] *Ibid.*
[46] *In re Murchison*, 349 U.S. 133, 136 (1955).

bail bond premiums, paid by criminal defendants.[47] This system has been in place since ratification of the 1974 state constitution.[48] The identical practice (courts collecting and using fines and costs for court administration) is also followed by a large number of states.[49] While not conclusive in a decision as to whether that practice accords with due process, it is plainly worth considering in determining whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental."[50]

A portion of the money criminal defendants pay to obtain commercial bail bonds is collected and distributed to other criminal justice system participants in accordance with state law. Judge Cantrell and all the other Orleans Parish Criminal Court judges collectively use their allocated share for court operations and administration; it is not used for their salaries:

> The judicial expense fund is established and may be used for  any purpose connected with, incidental to, or related to the proper administration or function of the court or in the office of the judges thereof and is in addition to any and all other funds, salaries, expenses, or other monies that are provided, authorized, or established by law.
>
> No salary shall be paid from the judicial expense fund to any judges of the court.[51]

The Louisiana legislature has created a system that lets each state court keep its collected funds for court operations and administration.[52] It also requires that each court account for these funds in public audits.[53] In the absence of this method, every year every court would be in Baton Rouge and before its local government lobbying and fund raising.  If a court has unanticipated

---

[47] See Exhibit B, Kazik affidavit (also attached as a supporting exhibit to plaintiffs' Motion for Summary Judgment as Exhibit 8, attachment C).
[48] The members of the Judiciary Comm. for the La. Const. Conv. 1973 included many distinguished constitutionalists and legal experts: Judge James L. Dennis, Judge Albert Tate, and Judge Max Tobias.
[49] See Exhibit B, Kazik affidavit.
[50] *McKeiver v. Pennsylvania*, 403 U.S. 528, 549 (1971), citing *Snyder v. Com. of Mass.*, 291 U.S. 97, 105 (1934).
[51] La. R. S. 13:1381.4.
[52] La. R.S. 13:1381.4; La. R.S. 13:991, et seq.; La.R.S. 13:1565.2.; La.R.S. 13:1595.2; La.R.S. 13:1599.1; La.R.S. 13:1312; and La.R.S. 13:1381.4.
[53] See Exhibit B, Kazik affidavit.

budgetary needs it can go to the legislature or its home parish for assistance; for example, when the Orleans Parish Criminal District Court anticipated a 2014 budgetary shortfall it went to the New Orleans City Council for relief.[54] The judges are not in the executive branch of any government (state or city).[55] They have inherent judicial power and administrative authority; they have no executive responsibilities.[56]

The financial documents submitted by both sides in support of their respective motions for summary judgment reveal that the disputed money is used appropriately.[57] The court is publically audited every year and its proposals to the City of New Orleans and the Louisiana Supreme Court are public records.  State law allows for mandamus.[58] If there is misuse of money, there are several avenues for it to be discovered and addressed. The money is used to defray the significant cost of administering and operating a large urban criminal justice system.

There are no targets, benchmarks, or quotas to be met and no judge is punished or rewarded for assessing and collecting, or not, money to go into the Judicial Expense Fund.[59] The judges divide the resources evenly by court sections.[60] Plaintiffs have not claimed that Judge Cantrell was biased against them when their bail was imposed.  Judge Cantrell is subject to the supervision of the Louisiana Supreme Court and the Judiciary Commission.[61] In every aspect of his service on the bench, he is subject to the law, his oath, the Judicial Canons, public scrutiny by

---

[54] *Ibid.*
[55] La. Const. Ann., Art V.
[56] *Imbornone v. Early*, 401 So.2d 953 (La. 1981), on rehearing.
[57] See Exhibit C, Orleans Parish Criminal District Court financial records for years 2012-2017 (also attached as supporting exhibits to plaintiffs' Motion for Summary Judgment as Exhibit 8, attachment B, and Exhibit 9).
[58] Louisiana Code of Civil Procedure, Art. 3862, et seq; La. Rev. Stat. 39:1305.
[59] See Exhibit B, Kazik affidavit.
[60] *Ibid.*
[61] La. Const. Ann., Art. V, 1-5; *In re Gremillion*, 204 So.3d 183 (La. 2016).

voters and the Metropolitan Crime Commission, and legal and personal review by superior courts and the Judiciary Commission.

Plaintiffs contend that the mere fact the money in the Judicial Expense Fund is used by Judge Cantrell and the other Criminal Court judges to fund court operations violates due process because the judges have an interest in the money. However that interest may be characterized, it is not personal. It is solely related to court administration and functioning and not for judicial salaries. Using the money to fund the Criminal Court's administration and functioning is entirely appropriate and consistent with the Criminal Court judges' oath of office.

Federal courts themselves assess fines and costs against guilty defendants. Federal collections dwarf those of the Orleans Parish Criminal District Court.[62] In 2013, the federal government collected $8.1 billion, or more than three times the amount necessary to operate all 94 U.S. Attorney offices:

> Attorney General Eric Holder announced that the Justice Department collected $8.1 billion in civil and criminal actions, which represented nearly three times the appropriated $2.76 billion budget for the 94 U.S. Attorneys' offices. The Justice Department's enforcement actions held to not only insure justice is served, but also deliver a valuable return to the American people.[63]

Those federally assessed fines and costs are collected by the U.S. Attorneys, who in turn replenish the public treasury. This Court receives its funding from that public treasury. To one extent or another, every court is funded in part by criminal defendants. Does it really make a constitutional difference that this particular money is funneled through the government's general fund and is then appropriated back to a court? If an improper bias is what generates this money, is that bias obviated simply by laundering the money through Baton Rouge or Washington?

---

[62] See Exhibit D, press release of United States Attorney's Office, Eastern District of Louisiana, dated January 9, 2014.
[63] *Ibid.*

{00781530 - v1}                                           11

Court systems are public institutions funded primarily by taxpayers and those civil and criminal litigants using them. It is entirely appropriate that users shoulder some share of the expense. If a person is unable to pay, they can so declare and obtain relief. If the relief is not to their satisfaction, they can appeal. Other important goals are served by collecting funds from criminal defendants to help fund court operations: (1) replenish the public treasury, (2) remind criminal miscreants of their wrongdoing, and (3) give the public confidence in the system:

> The collection of criminal and civil debts owed to the United States replenishes the public treasury, makes crime victims financially whole, and ensures that federal debtors timely and fully address the consequences of their conduct. As such, aggressive collection of civil judgments and criminal fines and restitution has been, and will continue to be, a hallmark of this office's work on behalf of the residents of the Eastern District of Louisiana.[64]

Due process requires a fair trial in a fair tribunal.[65] Most matters relating to judicial disqualification do not rise to a constitutional level.[66] The United States Supreme Court has held that only in the most extreme cases does the due process clause disqualify a judge.[67] The Supreme Court has held that (1) matters of kinship, personal bias, state policy, remoteness of interest, are generally matters left to legislative discretion; and (2) the due process clause of the Fourteenth Amendment creates an objective standard requiring a judge to recuse when they have a "direct, personal, substantial, and pecuniary interest" in the case.[68] This rule reflects the maxim that no man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment perhaps corrupt his integrity. The test is this:

> Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which

---

[64] *Ibid.*

[65] *In re Murchison*, 349 U.S. at 136.

[66] *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971).

[67] *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 216 (5th Cir. 2001).

[68] *Tumey v. State of Ohio*, 273 U.S. 510 (1927); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57 (1972).

might lead him not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.[69]

There is a presumption that public officials have properly discharged their official duties. There is a presumption of honesty and integrity of judges.[70] Judges take an oath to uphold the Constitution or an implied law impartially and the criminal justice system is grounded in the confidence that they will live up to that oath.[71] Bias by an adjudicator is not lightly established.[72] The Supreme Court holds that a judge's failure to recuse constitutes presumptive bias in three situations: (1) when the judge has a direct, personal, substantial, and pecuniary interest in the outcome of the case, (2) when he has been the target of personal abuse or criticism from the party before him, and (3) when he has the dual role of investigating and adjudicating disputes and complaints.[73]

The question is whether there exists evidence sufficient to overcome the presumptions existing in Judge Cantrell's favor.[74] There is not. What plaintiffs allege is the bald assertion that money collected under state laws designed and intended to fund Criminal Court operations is somehow tainted because the judges charged with operating the court are themselves components of that court. If this constitutes judicial bias then no court could function.

No case holds that judges have an unconstitutional bias against the defendants before them simply because some of the money collected from those defendants is used to assist the court in its day to day operations and not used personally by the judge. In fact, the contrary is

---

[69] *Ward,* 409 U.S. 57.
[70] *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1052–53 (5th Cir. 1997).
[71] *Ibid.*
[72] *Ibid.*
[73] *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005).
[74] Plaintiffs have the burden of showing direct evidence from the record; speculations and inference will not do. *Schweiker v. McClure*, 456 U.S. 188 (1982); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1360 (2d Cir. 1991).

true.[75] Assessing administrative fees by those using a governmental service does not implicate fundamental fairness.[76]

The system does not violate *Tumey*[77] or *Ward*.[78] Judge Cantrell is not an executive branch official; he is a judge and a part of the judicial branch. He is not responsible to the City of New Orleans or to the state for budget contributions or administration. The money paid by criminal defendants—whether bail bond premiums, fines, fees, or costs—have maximums set by the legislature, not the judges. The funds are used in accordance with state law to defray the taxpayers' share of court operations and administration. The money does not go to the judges as salary, bonus, or otherwise. The interest or benefit the judges receive is only as it relates to court operations and administration; it cannot and should not be said that this is a personal, substantial, or bias-creating interest.

The recent national avalanche of cases challenging the assessment of fines, fees, and costs and the setting of bail and the reaction to those cases by courts, judges, legislatures, and politicians reflects a concern with and desire to address and improve court administration and criminal justice. But the resulting task forces, studies, reports, and recommendations confirm that the true nature of this problem is political rather than legal and is best resolved in the legislative arena.

The role of Judge Cantrell and his fellow Criminal Court judges in conducting court administration and operations funded in part by monies assessed against and paid by criminal defendants is simply too contingent, too speculative, and too insubstantial to constitute the direct

---

[75] *Van Harken v. City of Chicago*, 103 F.3d 1346 (7th Cir. 1997); *Dugan v. State of Ohio*, 277 U.S. 61 (1928); *Com. of N. Mariana Islands v. Kaipat*, 94 F.3d 574, 580–81 (9th Cir. 1996); *Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*, 53 F.3d 1395, 1405–07 (4th Cir. 1995).

[76] *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971); *Bell v. Wolfish*, 441U.S. 250 (1979).

[77] *Tumey*, 273 U.S. 510 (1927).

[78] *Ward*, 409 U.S. 57 (1972).

stake in the outcome of a case that is required in order to conclude a constitutional violation exists. The facts and law are clear on this issue and Judge Cantrell is accordingly entitled to summary dismissal of plaintiffs' claims in this regard.

## V.     BAIL BOND STATUTES DO NOT CREATE AN IMPERMISSIBLE BIAS

Plaintiffs allege violations of their due process rights by virtue of enforcement of two Louisiana bail bond statutes, R.S. 13:1381.5 and R.S. 22:822. Specifically, plaintiffs claim due process violations through defendants' implementing a scheme of money bonds in which constitutionally neutral judicial and government actors take a percentage of each bond to fund their own budgets, all of which contravenes fundamental principles of neutrality. Plaintiffs' allegations in this regard mischaracterize and misapprehend prior Fifth Circuit rulings involving purported due process violations resulting from allegedly unconstitutional bail bond statutes. The controlling law is clear and plaintiffs' allegations should be rejected out of hand.

Initially, Judge Cantrell would point out that, contrary to plaintiffs' contention that R.S. 13:1381.5 and R.S. 9:822 are somehow inherently unconstitutional,[79] such is not the case. Throughout this litigation plaintiffs have predicated their due process claim on Judge Henry Mentz's 1991 ruling in *Augustus v. Roemer*.[80] In *Roemer* Judge Mentz dealt with R.S. 13:1384; he dealt with neither R.S. 13:1381.5 (enacted in 2009) nor R.S. 9:822 (enacted in 2012), the two bail bond statutes now at issue; no court has ever passed on the constitutionality of either statute. The Fifth Circuit has previously addressed and rejected virtually identical *Roemer*-based arguments that Louisiana's bail bond statutes violate the Fourteenth Amendment's due process clause or are otherwise unconstitutional.

---

[79] *Ibid.,* ¶ 198.
[80] *Augustus v. Roemer,* 771 F.Supp. 1458 (E.D. La. 1991).

R.S. 22:822, entitled "Criminal bail bond annual license fee," provides for the charging of a fee "on premiums for all commercial surety underwriters who write criminal bail bonds in the state of Louisiana."[81] As the statute pertains to Orleans Parish:

> [T]he fee shall be equal to three dollars for each one hundred dollars' worth of liability underwritten by the commercial surety. This shall be the exclusive fee or tax on any criminal bail bond premium, including thereto premium taxes owed. In furtherance of the payment of this premium fee, all commercial surety underwriters underwriting criminal bail bonds in the Parish of Orleans shall, upon submitting the appearance bond and their power of attorney, simultaneously pay to the sheriff a fee of three dollars for each one hundred dollars' worth of liability on the bail bond being presented for the release of a person on bail...[82]

As to how that collected fee is to be allocated to Orleans Parish:

> In Orleans Parish, two dollars of the three dollars collected for each one hundred dollars' worth of liability underwritten by the commercial surety on all premium fees collected by the sheriff shall be maintained, supervised, and distributed as provided in 13:1381.5 and the one additional dollar of the three dollars collected for each one hundred dollars' worth of liability underwritten by the commercial surety shall be allocated to the Criminal District Court for the Parish of Orleans.[83]

In turn, R.S. 13:1381.5 provides for the creation of an Orleans Parish administration of criminal justice fund, maintained and supervised by the sheriff,[84] to distribute the fees collected under R.S. 22:822.[85]

Relying on *Roemer* and the Supreme Court authority cited therein,[86] plaintiffs claim that the statutes run afoul of the Fourteenth Amendment's due process clause in that they create a financial conflict of interest, i.e., in setting the amount to be commercially bonded by criminal

---

[81] La. R. S. 22:236(A).
[82] La. R. S. 22:236(A)(2).
[83] La. R.S. 22:822(B)(3).
[84] La. R. S.13:1381.5(A).
[85] La. R. S. 13:1381.5(B)(2): 40% to the Orleans Parish Criminal District Court's judicial expense fund; 20% to the Orleans Parish Criminal Sheriff's operating fund; 20% to the Orleans Parish District Attorney's operating fund; 20% to the Orleans Parish Indigent Defender's program.
[86] *Ward*, 409 U.S. 57, and *Tumey*, 273 U.S. 510.

{00781530 - v1}                                            16

defendants Judge Cantrell is incentivized to set bail in an amount that ensures the maximization of money flowing into the Judicial Expense Fund.

The Fifth Circuit, in *Broussard v. Parish of Orleans,*[87] has previously dealt with claimed due process violations resulting from purportedly unconstitutional Louisiana bail bond statutes. As in the instant case, the authority proffered in support of the *Broussard* plaintiffs' claim of bail bond statute unconstitutionality consisted of the Supreme Court decisions of *Ward*[88] and *Tumey,*[89] both of which found constitutional violations when mayors acted as judges in cases in which the mayors or their offices benefitted financially from every conviction. The Supreme Court held that the test under these circumstances is whether the public official's situation "is one which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the State and the accused."[90]  Much as plaintiffs in the instant action contend in their allegations of conflict of interest and compromised neutrality on the part of Judge Cantrell, the *Broussard* plaintiffs argued that the bail bond statutes in question would tempt the sheriffs to impose multiple bookings upon arrestees simply to maximize revenues accruing to the sheriffs, in violation of *Ward* and *Tumey.*  The district court rejected the argument and found no due process violations inherent in the bail bond statutes, holding that (1) *Ward* and *Tumey* had no application because the plaintiffs' guilt or innocence was not at issue, (2) per the Supreme Court decision in *Schilb v. Kuebel,*[91] the bail bond fees provided were nothing more than administrative costs imposed upon those who take advantage of the state's bail bond

---

[87] *Broussard v. Parish of Orleans,* 318 F.3d 644 (5th Cir. 2003).
[88] *Ward,* 409 U.S. 57.
[89] *Tumey,* 273 U.S. 510.
[90] *Ward,* 409 U.S. at 60, quoting *Tumey,* 273 U.S. at 532.
[91] *Schilb v. Kuebel,* 404 U.S. 357 (1971).

{00781530 - v1}                                         17

system, and (3) there existed no authority, Fifth Circuit or otherwise, that had invalidated bail bond fees on due process grounds.

The *Broussard* plaintiffs appealed and the Fifth Circuit affirmed.[92]  A subsequent district court opinion upholding the constitutionality of several Louisiana bail fee statutes challenged on Fourth, Eighth and Fourteenth Amendment grounds, *Sanders v. Yentzen*,[93] cogently summarized the Fifth Circuit's *Broussard* affirmance:

> In reaching its decision in *Broussard*, the Fifth Circuit relied on Supreme Court precedent which indicates that fees charged in conjunction with bail-bond systems are properly characterized as administrative fees and as such are beyond the threat of heightened constitutional scrutiny because they do not implicate fundamental rights. See *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 30 L.Ed. 2d 502 (1971). Relying on the conclusion in *Schilb* that fundamental rights are not at issue and the analytical framework set forth in *Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed. 2d 447 (1979)*, the Fifth Circuit concluded that the added financial burden imposed by the bail fees on already-sanctioned release would pass constitutional scrutiny if such fees are reasonable administrative fees and not impermissible arbitrary punishment. *Broussard*, 318 F.3d at 659. *"Reasonableness depends on both the nature of the government interest itself and the extent to which the statutes at issue support that purpose."* In considering the plaintiffs' challenges in *Broussard*, the Fifth Circuit found that (1) providing funds for the administration of the bail-bond system is a legitimate governmental purpose; (2) there is a rational connection between the statutes at issue and the legitimate government purpose, and (3) the nominal bail-fees ranging from $5-$15 are reasonable administrative charges.
>
> In light of the Fifth Circuit's holdings in *Broussard*, the court finds that plaintiff's constitutional challenge to § 1432(9) fails to state a claim upon which relief can be granted. Additionally, using the reasonableness analysis set forth in *Broussard*, the court finds that the plaintiff's constitutional challenge to § 1065.1 is also subject to dismissal.
>
> In *Broussard*, the Fifth Circuit recognized that the government has an interest in continuing to assess fees to support its bail-bond system. Additionally, the fifth Circuit's observation that the 2% tax on bondsmen "seems to address more directly the overall financing of the bail-bond system" than the bail-fee provisions because "[i]t specifies distribution of funds not just the sheriff, but also to the

---

[92] *Broussard v. Par. of Orleans*, 318 F.3d 644 (5th Cir. 2003).
[93] *Sanders v. Yentzen*, 2005 WL 2035029 (W.D. La. 2005).

other groups who participate in the bail-bond system" indicates that the 2% tax on bondsmen satisfies the requirement that there be at least a rational connection between the statute at issue and the governmental interest. *Broussard*, 318 F.3d at 659-60. As to the reasonableness of the tax, this court finds that the plaintiff has failed to allege any facts in his complaint or otherwise which would cause this court to find that the 2% tax imposed on bondsmen (which they pass onto arrestees seeking their services) is unreasonable or arbitrary punishment. Although the amount of this tax is more than the nominal bail-fee charges considered in *Broussard*, it does not appear that the amount of the tax was unduly burdensome to the plaintiff.

For the same reasons articulated by the Fifth Circuit in *Broussard*, as well as by the Western District in *Sanders*, Judge Cantrell submits that, with respect to plaintiffs' claims of unconstitutionality of Louisiana bail bond statutes R.S. 22:822 and R.S. 13:1381.5, there exist no disputed material facts, the controlling law is clear, the statutes pass constitutional muster, and Judge Cantrell is entitled to summary dismissal of plaintiffs' claims to the contrary.

## CONCLUSION

The constitutional shortcomings in Judge Cantrell's bail hearing protocol alleged by plaintiffs in their complaint, if shortcomings they be, have been obviated by the revised protocol Judge Cantrell now utilizes, rendering plaintiffs' request for declaratory relief moot and any ruling this Court might render advisory. The inherent institutional bias posited by plaintiffs regarding the funding and utilization of the Criminal Court's Judicial Expense Fund is not a bias at all; plaintiffs cannot demonstrate that Judge Cantrell and the other sitting Criminal Court judges, following and enforcing applicable state statutes, the constitutionality of which plaintiffs have not challenged or otherwise called into question, are somehow compromised. Judge Cantrell accordingly urges the Court to grant his motion for summary judgment and to dismiss plaintiffs' suit and all claims for declaratory relief sought therein.

Respectfully submitted,

/s/ Dennis J. Phayer

**Burglass and Tankersley, LLC**
Dennis J. Phayer (#10408) (T.A.)
dphayer@burglass.com
Christopher K. Tankersley (#19176)
ctankersley@burglass.com
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0412
Fax: (504) 287-0452
Attorneys for Magistrate Judge Harry E.
Cantrell

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2018, a copy of the foregoing pleading has
been forwarded to all counsel of record via CM/ECF filing through the United States District
Court system, email and/or United States Mail.

/s/ Dennis J. Phayer