## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ADRIAN CALISTE and BRIAN
GISCLAIR, individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.

HARRY E. CANTRELL, Magistrate Judge
of Orleans Parish Criminal District Court,

      Defendant.

Case No. 2:17-cv-06197-EEF-MBN

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Magistrate Cantrell opposes Plaintiffs' motion for summary judgment (ECF No. 116) and also relies upon his opposition memo as the basis for his own motion for summary judgment. (ECF Nos. 120, 121.) Accordingly, Plaintiffs submit the following consolidated memorandum both in reply to Magistrate Cantrell's opposition memorandum and in response to his motion for summary judgment.

Magistrate Cantrell concedes that there is no dispute as to the material facts of this case. (ECF Nos. 120-5, 121-6 (adopting Plaintiffs' statement of uncontested facts).) In addition, Magistrate Cantrell makes no argument as to the constitutional merits of Plaintiffs' first claim, instead relying on jurisdiction, standing, and abstention arguments. He first argues that Plaintiffs' civil rights claim under Section 1983 should be construed as a petition for a writ of mandamus, which federal courts lack the jurisdiction to issue against a state court. As to standing, Magistrate Cantrell next argues that a purported change in his practices renders Plaintiffs' claim moot.

Finally, he argues that the Court should abstain from ordering declaratory relief under the *Brillhart-Wilton* abstention line of cases.  Each of these arguments is meritless.

As to Plaintiffs' second claim, Magistrate Cantrell offers only an argument, previously rejected by this court, that the case of *Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir. 2003), is fatal to Plaintiffs' claims.  Plaintiffs are entitled to summary judgment.

## I.        Plaintiffs Do Not Seek a Writ of Mandamus

Despite Plaintiffs' express reliance on 42 U.S.C. § 1983 and their plea for declaratory relief pursuant thereto, Magistrate Cantrell argues that Plaintiffs instead are seeking a "writ of mandamus" against him. He then asserts that this court lacks jurisdiction over a mandamus action. Magistrate Cantrell misunderstands both Plaintiffs' complaint and the nature of a writ of mandamus.

Federal courts have recognized the general availability of a writ of mandamus to compel a public official to perform a ministerial duty since *Marbury v. Madison*. *See Louisiana v. McAdoo*, 234 U.S. 627, 633–34 (1914) (citing *Marbury v. Madison*, 5 U.S. 137 (1803)). It is a bedrock principle that the writ is appropriate only where "there is a refusal to perform a ministerial act involving no exercise of judgment or discretion." *Secretary v. McGarrahan*, 76 U.S. 298, 302 (1869). The writ is inapplicable here for two reasons. First, Plaintiffs have raised a federal constitutional claim seeking only declaratory relief; they are not asking this Court to order Defendant Cantrell to perform his duties.  Second, the Defendant Cantrell's conduct at issue in this case is not ministerial in nature. It involves the exercise of judgment, including the evaluation of evidence and the application of facts to legal principles, resulting in a free-standing constitutional violation that Plaintiffs unequivocally have the right to challenge under §1983.

Plaintiffs' complaint is a class civil rights action seeking declaratory relief for violations of federal law that this Court has the power to declare unconstitutional. There is no question that declaratory relief is available against state judicial actors when the Constitution is violated. Plaintiffs request an order declaring that Magistrate Cantrell's practices "violate the named Plaintiffs' and Class members' constitutional rights by promulgating and enforcing policies that result in jailing Plaintiff and Class members and keeping them in jail solely because they are poor and cannot afford to pay an amount of money to secure release." (ECF No. 1 at 26.) The Supreme Court has held that declaratory relief under § 1983 is precisely the appropriate vehicle to challenge systemic constitutional deficiencies in the post-arrest pretrial practices of judges. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103 (1975). Simply put, this Court has the authority to issue declaratory relief on federal constitutional claims concerning widespread and systemic constitutional violations in the setting of bail.

This also is not a writ of mandamus because Plaintiffs are not asking this Court to compel completion of a state-law duty. Plaintiffs' complaint seeks only declaratory relief. (ECF No. 1 at 26.)  Magistrate Cantrell argues, however, that Plaintiffs' pleading should be construed as a request for mandamus because "when a plaintiff wants a federal court to compel a state judicial officer to do something, it is a request for mandamus and the federal court lacks the power to oblige." (ECF No. 120 at 2.) This is a misstatement of the law, and the authorities relied upon by Magistrate Cantrell do not support it.  The point of declaratory relief is that it is a statement of the law, not an injunction requiring the judicial officer to "do something."  Acceptance of Magistrate Cantrell's argument would mean that declaratory relief could *never* be available in federal court against a state judicial officer, a result contrary to the express text of § 1983, which expressly provides for "declaratory relief" against a "judicial officer." 42 U.S.C. § 1983.

Magistrate Cantrell relies on an Idaho district court case for the proposition that "a request for injunctive or declaratory relief, which asks a court to order a state officer or agency to perform certain duties, is not a request for injunctive or declaratory relief—it is a request for a writ of mandamus." (ECF No. 120 at 2 (quoting *Kress v. Copple-Trout*, No. CV-07-261-S-BLW, 2008 WL 2095602 at *2 (D. Idaho May 16, 2008).)  *Kress* is irrelevant for several reasons. First, *Kress* did not involve a federal cause of action.  It arose from a claim in Idaho's state courts that challenged the legislature's underfunding of public education. *Kress v. Copple-Trout*, No. CV-07-261-S-BLW, 2008 WL 352620 (D. Idaho Feb. 7, 2008) (detailing the procedural history of the state-court claim). The Idaho Supreme Court affirmed a judgment granting declaratory judgment in the plaintiffs' favor, but the court did not remand the case to the trial court for further proceedings. Instead, the Idaho Supreme Court issued an order retaining its jurisdiction over the case pending a legislative fix. When the legislature failed to adequately fund schools in the following year, the plaintiffs moved the Idaho Supreme Court to release its hold on the case and remand to the trial court for further proceedings on remedy. When the Idaho Supreme Court denied this motion, the plaintiffs filed suit in federal court, *requesting a writ of mandamus* or, in the alternative, declaratory judgment that the Idaho Supreme Court violated plaintiffs' rights through their failure to remand the case to the state trial court. At oral argument, the plaintiffs abandoned their request for mandamus and proceeded only on a request for declaratory relief. The state of Idaho, however, contended that an eventual injunction to enforce a declaratory judgment would be akin to a mandamus. The court agreed and dismissed the case.  *Kress* was about a plaintiff trying to use the federal courts to order a state court to take a ministerial action

to enforce a state court judgment based on state law.  It simply did not involve a federal cause of action for declaratory relief and is therefore irrelevant.[1]

Magistrate Cantrell also cites an unpublished decision, *Johnson v. Bigelow*, 239 Fed. App'x 865 (5th Cir. 2007), and similar cases for the proposition that "federal courts have no authority to direct state courts or their judicial officers in the performance of their duties." In *Johnson*, a pro se plaintiff sought an order from the federal district court to compel a state judge to "perform his delegated duties and reinstate the . . . writ of habeas corpus" by holding a hearing on the plaintiff's time-barred, post-conviction application for relief. Report and Recommendation, *Johnson v. Bigelow*, No. 2:05-cv-6647-SRD, ECF No. 4 at 3 (E.D. La. Jan. 23, 2006). The district court construed Johnson's request for injunctive relief ordering the state court to hold a hearing as a request for mandamus and noted that "a federal court has no power to direct a state court or its judicial officers in the performance of their duties when mandamus is the only relief sought." *Id.* at 6.  The Fifth Circuit upheld the district court's dismissal with a citation to *Moye v. Clerk, DeKalb Cnty. Sup. Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973), and no

---

[1] In addition to the irrelevance of a case asking a federal court to force a state court to issue a state law judgment, the language cited by Magistrate Cantrell from *Kress* relies on a number of cases in which plaintiffs sought to compel purely *ministerial* duties. *See Oliver v. Sup. Ct. of Plymouth Cnty.*, 799 F. Supp. 1273 (D. Mass. 1992) (holding that injunctive relief requesting clerk of court to serve process, submit a motion into the record, and supply plaintiff with copy of the docket was "a writ of mandamus that sought to direct a court to perform its duties."); *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917 (D.C. Cir. 1980) (holding that injunction seeking to compel President and cabinet members to produce statutorily-required budget reports and statements was a request for mandamus).

Magistrate Cantrell cites several other cases, similar to *Oliver*, in which plaintiffs sought to compel a court to produce trial transcripts or records, return deficient filings in a timely manner, expunge criminal records, and perform other administrative tasks; i.e. to perform ministerial, non-discretionary duties. *See In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001); *Lamar v. 118th Judicial Dist. Ct. of Tex.*, 440 F.2d 383, 384 (5th Cir. 1971); *Pearson v. Sup. Ct. of Douglas Cnty.*, No. 1:16-cv-02615-TWT-JCF, 2016 WL 5897786 (N.D. Ga. Sep. 7, 2016); *Jackson v. Prince*, No. 15-2674, 2015 WL 9672926 (E.D. La. Dec. 11, 2015); *Lavergne v. Peters*, No. 6:14-0185, 2014 WL 1339948 (W.D. La. April 2, 2014). This is not a case in which the Plaintiffs ask this Court to order Defendant Cantrell to perform a ministerial duty, and all of these cases are inapposite.

further explanation.[2] Johnson simply stands for the proposition that a Plaintiff cannot ask a federal court to order a state court judge to "perform his delegated duties" under state law where mandamus is the only relief sought and the plaintiff did not raise a freestanding federal constitutional claim.[3] Simply put, Plaintiffs do not seek a writ of mandamus from this Court, and Defendant Cantrell's attempts to make Plaintiffs' claims injunctive in nature are unsuccessful.

## II.   The Court Should Not Abstain from Granting Declaratory Relief

Magistrate Cantrell next argues that the Court should decline to grant declaratory relief under the *Brillhart-Wilton* line of cases. (ECF No. 120 at 3–5).  But those cases concern a federal court's discretion to issue a declaratory judgment on matters of state law in diversity jurisdiction cases.  Because those cases do not involve federal constitutional claims under Section 1983, Magistrate Cantrell is wrong to invoke them.

As an initial matter, "a federal court's obligation to hear and decide a case is virtually unflagging." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  Magistrate Cantrell does not cite a single case in which a federal court has declined to exercise its discretion to issue a declaratory judgment *on an issue of federal constitutional law*.  Indeed, Magistrate Cantrell has already attempted to get this court to abstain from issuing declaratory relief in this case, and this Court has rejected that argument because Plaintiffs do not have an adequate state law forum to

---

[2] *Moye v. Clerk, DeKalb Cnty. Sup. Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973) held that federal courts "lack the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties *where mandamus is the only relief sought*."

[3] Indeed, such a freestanding federal claim would likely have been barred in federal habeas for other reasons: because it had not yet been ruled on in state court.  Mr. Johnson's remedy to force the state judge to "perform his delegated duties" would perhaps have been a writ of mandamus to a higher state court. Additional authority cited by Magistrate Cantrell for this proposition are similarly flawed. The remaining cases cited by Magistrate Cantrell are ones, like *Johnson*, in which pro se prisoners brought suit seeking an order compelling a state court to consider an application for post-conviction relief: *Santee v. Quinlan*, 115 F.3d 355 (5th Cir. 1997); *Russell v. Knight*, 488 F.2d 96 (5th Cir. 1973) (recasting a petition for mandamus to compel a state court to allow the filing of an untimely appeal as a petition for habeas corpus); *White v. Stricklin*, No. 3:02-cv-688-D, 2002 WL 1125747 (N.D. Tex. May 23, 2002).

vindicate their important federal constitutional rights before suffering the very violation about which they complain.  (ECF No. 44 at 6–8); *see also* Memorandum and Opinion on Preliminary Injunction Order, *ODonnell v. Harris Cnty., Tex.*, No. H-16-1414, ECF No. 426 at 18–19 (S.D. Tex. June 29, 2018) (rejecting abstention under well-established precedent).

     Nonetheless, Magistrate Cantrell now invokes cases pertaining to a federal court's discretionary decision to issue a declaratory judgment in diversity jurisdiction cases involving state law.  In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court reaffirmed and expanded its decision in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), that the Declaratory Judgment Act provides federal courts with discretion as to whether to grant declaratory relief in such cases. Both *Brillhart* and *Wilton* arose from diversity cases adjudicating state-law claims brought by insurance companies in anticipation of litigation in a state court.  As the *Wilton* Court noted, where a suit was pending between the parties in state court that would allow for "ventilation of the same state law issues," a federal district court might be "indulging in 'gratuitous interference'" by entering a declaratory judgment. *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495.) The Court, however, was quick to limit that test to the facts before it:

> We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, *cases raising issues of federal law or cases in which there are no parallel state proceedings*.

*Wilton*, 515 U.S. at 290 (emphasis added).

     Prior to *Wilton*, the Fifth Circuit had settled on a seven-factor test to be employed when deciding whether to abstain from issuing declaratory judgment. *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994). Following *Wilton*, the Fifth Circuit affirmed that, in addition to the "*Trejo* factors,"

> [t]he presence of federal law questions, their relationship to state law questions, the ability of the federal court to resolve state law issues, and the ability of a state court to resolve the federal law issues are important to deciding whether a state or

federal court should be the one to decide the issues raised in the federal court
declaratory judgment action. "The presence of federal law issues must always be
a major consideration weighing against surrender" of federal jurisdiction.

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 396 (5th Cir. 2003) (quoting *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)). The Sixth Circuit has

found that the presence of a federal question rendered *Brillhart-Wilton* abstention inapplicable:

"[The plaintiff's] claim presents an issue of federal law. Thus, the reasoning of *Brillhart*, which

expressly applies only to declaratory judgment actions 'not governed by federal law,' does not

support abstention in this case." *United States v. Kentucky*, 252 F.3d 816, 826 (6th Cir. 2001)

(citations omitted).

It is inappropriate to abstain under *Brillhart-Wilton* because this is not a diversity case

seeking a declaration of rights guaranteed by state law. Plaintiffs instead seek a declaration that

Magistrate Cantrell's actions violate their federal Constitutional rights. And, as this Court has

recognized, there is no parallel state proceeding in which the Plaintiff class can vindicate those

rights. (*See* ECF No. 44 at 7 ("While these Plaintiffs have various procedural mechanisms available

to challenge the bonds set by Defendant, the delay required by these appeals is problematic because

the damage is done by the time the appeal is perfected. Named Plaintiffs and members of the

proposed class will suffer irreparable harm via incarceration and/or the financial burden of the bonds

even if their appeals are eventually successful. Additionally, any appeals would not abrogate denial

of due process during initial bond hearings. *See Ward*, 409 U.S. at 61.")) 

To the extent that a motivating factor of *Brillhart-Wilton* abstention is comity, this

analysis is duplicative of *Younger* abstention analysis, a defense that this Court has previously

considered and rejected. (ECF No. 44 at 6–8.) Apart from comity, the Fifth Circuit considers the

remaining *Trejo* factors to address fairness in forum selection between parties and the avoidance

of duplicative or piecemeal litigation. *Sherwin-Williams*, 343 F.3d at 390–91. These concerns

were uniquely present in cases arising from commercial disputes like *Brillhart* and *Wilton*, in which federal courts were concerned with a race to the courthouse and parties somehow achieving an unfair advantage by first-filing a declaratory judgment action. *See id.*; *see also* Robert T. Sherwin, *Shoot First, Litigate Later: Declaratory Judgment Actions, Procedural Fencing, and Itchy Trigger Fingers*, 70 Okla. L. Rev. 793 (2018).

Section 1983 cases in federal court are entirely different.  The text of § 1983 itself requires a declaratory judgment in the first instance against a state judicial officer before other equitable relief can be ordered. Vindicating federal constitutional rights being violated by state officials was so important to Congress that, where declaratory relief is "unavailable," the plaintiff may proceed to seek injunctive relief in the first instance.  42 U.S.C. § 1983.[4] Thus, if Magistrate Cantrell were correct that declaratory relief should be deemed unavailable here, then Plaintiffs would be entitled to injunctive relief to cease Magistrate Cantrell's violation of their constitutional rights.  Plaintiffs have properly acted with restraint and sought only declaratory relief in the first instance.

It is for all of these reasons that federal courts, such as the Supreme Court in *Gerstein*, do not undertake a *Brillhart* abstention analysis before resolving claims for declaratory relief in constitutional civil rights cases brought under Section 1983. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 463 (1974) (emphasizing import of availability of declaratory relief in federal courts even in the absence of injunctive relief and conducting no *Brillhart* analysis).

Even if the *Trejo* factors applied to an action under Section 1983, which they do not, those factors would counsel against abstention here. The only argument made by Magistrate

---

[4] The specific language of Section 1983 is "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Cantrell is that his purported voluntary cessation resolves the Class's claims. But this is not a *Trejo* argument—it is an argument that the case is moot.  Plaintiffs address this meritless mootness argument separately in the following section. For now, Plaintiffs note that none of the *Trejo* factors weigh in favor of abstention. There is no pending state court action in which the matters may be fully litigated without the Plaintiff class first suffering irreparable damage.[5] The Plaintiffs did not file suit in anticipation of a claim in which Magistrate Cantrell would litigate this issue in a state court. Indeed, the Plaintiffs' claim is that Magistrate Cantrell routinely employs procedures that *prevent* a person from raising these arguments. Similarly, no forum shopping concerns are present in this case. As to judicial economy, these issues have now been fully briefed in this Court and considerable federal judicial resources have already been expended in their resolution. Magistrate Cantrell's argument that this Court should decline to exercise jurisdiction over this declaratory action is wholly without merit.

## III.    Magistrate Cantrell's Alleged Voluntary Cessation Does Not Moot Plaintiffs' Claim.

Magistrate Cantrell argues, as he has in the past (ECF No. 87), that this case should be dismissed as moot on the basis of purported changes that he has made to his behavior. He asserts that his affidavit submitted in support of his briefing (ECF Nos. 120-1; 121-2) meets his "heavy burden" in proving voluntary cessation of the challenged practices. This argument is baseless.

---

[5] While members of the Plaintiff class may have ongoing criminal cases, these are not "parallel proceedings" for purposes of *Brillhart-Wilton*:

> This circuit has clearly held that in order to consider the propriety of a stay pending disposition of state court actions, the federal and state cases must be parallel, meaning that they involve the same parties **and the same issues**. As Exxon notes, there are no parallel state court proceedings where the issues of coverage, policy interpretation, and bad faith are being litigated.

*Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997) (citations omitted).  The issue in this case is not the merits of Plaintiffs' state court trial, or even the merits of their bail hearings.  This case concerns what constitutional framework must govern the setting of bail for the Plaintiff class.

In order to moot a case, a defendant asserting voluntary cessation must point to "subsequent events [that] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" so that there is no remaining case or controversy between the parties. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). A defendant who does not cease the challenged conduct cannot, by definition, claim mootness.

Even if a defendant ceases the challenged behavior, a defendant cannot defeat jurisdiction by claiming a sudden policy shift. The Supreme Court has held that "voluntary cessation of a challenged practice rarely moots a federal case." *City News and Novelty v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001); *see also Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307–08 (2012); *Parents Involved v. Seattle Sch. Dist.*, 551 U.S. 701, 719 (2007). A defendant who asserts mootness on the basis of voluntary cessation "bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190; *Parents Involved*, 551 U.S. at 719 (holding that municipal government defendant failed to meet "heavy burden" to show mootness). A claim of voluntary cessation calls for close examination to rule out the possibility that the alleged voluntary cessation is merely "litigation posturing" and to confirm that the challenged practice will not recur in the future. *Fontenot v. McCraw*, 777 F.3d 741, 747–48 (5th Cir. 2015).

To prevail in a voluntary-cessation defense, the defendants "must offer more than their mere profession that the conduct has ceased and will not be revived." *Hall v. Bd. of Sch. Comm'rs of Conecuh Cnty.*, 656 F.2d 999, 1000–01 (5th Cir. 1981) (holding that public school board's representation that it had ceased its unconstitutional practices was not sufficient to moot plaintiff's claims); *see also Donovan v. Cunningham*, 716 F.2d 1455, 1461 (5th Cir. 1983) (holding that "bare assurances" were "clearly insufficient to meet the [defendants'] burden of

persuasion" on mootness by voluntary cessation); *Morrow v. Washington*, 277 F.R.D. 172, 199–

200 (E.D. Tex. 2011) (holding that "heavy burden" to prove mootness not satisfied where

municipal "defendants simply claim that the challenged policy no longer exists and they have no

intention of reviving it"). Furthermore, the timing of a defendant's voluntary cessation must also

be considered when measuring the likelihood that they will repeat their conduct. *See Hall*, 656

F.2d at 1000 (noting that defendants disputed the constitutionality of their conduct until the day

of trial, when they first indicated that they had ceased their practices); *Harrell v. The Florida*

*Bar*, 608 F.3d 1241, 1267 (11th Cir. 2010) (holding that "a defendant's cessation before

receiving notice of a legal challenge weighs in favor of mootness . . . while cessation that occurs

'late in the game' will make a court 'more skeptical of voluntary changes that have been

made'"). And a defendant who does not acknowledge the unconstitutionality of the challenged

behavior but continues to defend it cannot meet their "heavy burden." *See Knox*, 567 U.S. at 307

("[S]ince the union continues to defend the legality of the Political Fight–Back fee, it is not clear

why the union would necessarily refrain from collecting similar fees in the future."); *Parents*

*Involved*, 551 U.S. at 719 (holding that challenge to race-based school admissions program was

not moot where "the district vigorously defends the constitutionality of its race-based program,

and nowhere suggests that if this litigation is resolved in its favor it will not resume using race to

assign students.").

      Magistrate Cantrell's arguments fail for a simple threshold reason: his affidavit does not even

purport to adopt practices that comply with what Plaintiffs allege the Constitution requires.  Thus, he

has not even purported to terminate the conduct that Plaintiffs challenge.  For example, Magistrate

Cantrell has not contested a single of Plaintiffs' uncontested material facts. Not only has he not

contested them, but he has also adopted those facts as his own. (ECF No. 121-7.) Critically,

Magistrate Cantrell concedes that he

does not determine whether the financial condition of release that he imposes will
result in pretrial detention. As a result, he does not inform arrestees that the
existence of alternative conditions of release will be a critical issue at the hearing,
does not consider or make findings concerning alternative conditions of release
when he requires secured financial conditions, and does not make any findings
that pretrial detention is necessary to serve any particular government interest if a
secured financial condition will result in detention.

(ECF No. 121-7 at 9 ¶ 19.) This admission defeats any suggestion of mootness.   Indeed,

Magistrate Cantrell's affidavit does not even claim that he makes a determination of whether

secured money bonds he sets will result in a person being detained; i.e., whether a person can

afford to pay the amount set. Furthermore, his affidavit does not state that he makes the

constitutionally required substantive finding that pretrial detention is necessary because

alternative less restrictive conditions of release do not adequately meet the government's

interests in public safety or court appearance. He makes no statement that any findings he does

make would be made on the record, and he makes no claim that he applies any legal standard at

all, let alone the "clear and convincing" evidence standard that the Constitution requires.  Instead

he makes only a general assertion that he will state on the record his reasons for denying a

release on recognizance. He makes the vague assertion that a person "unable to afford the

amount set … will be entitled to an adversarial hearing" at some undetermined future date to

present and traverse evidence concerning the factors Magistrate Cantrell has sworn that he will

"consider." Because he commits neither to making the substantive finding of necessity that the

Constitution requires nor to providing the procedural safeguards necessary to ensure the accuracy

of that finding, Magistrate Cantrell's affidavit, and the practices he now purportedly follows, do

not moot Plaintiffs' Complaint.

Even if Magistrate Cantrell's new practices fully and unambiguously addressed the

merits of Plaintiffs' claims, Plaintiffs' claims should not be dismissed. First, Magistrate

Cantrell's affidavit is dated June 26, 2018, over a year after Plaintiffs filed their Complaint, nearly two weeks *after* Plaintiffs moved for summary judgment, and on the same date Magistrate Cantrell submitted his opposition to Plaintiffs' motion for summary judgment.  The timing of the purported changes, the fact that they were made on the same day that Magistrate Cantrell filed his opposition to Plaintiffs' summary judgment motion—a year after Magistrate Cantrell had continued to employ the same practices challenged in this case—suggests that any purported changes are litigation posturing and "merely an attempt to manipulate the Court's jurisdiction." *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000).

Moreover, the language of Magistrate Cantrell's affidavit is prospective—"When assessing and setting the amount of bail *in the future* for defendants who come before me . . . I *will* consider . . . ."—and when read in conjunction with Magistrate Cantrell's concession to Plaintiffs' Statement of Uncontested Facts, the affidavit can be read only as a statement of his future practices. No formal policy exists and no evidence has been provided of Magistrate Cantrell's compliance with this new policy. As such, Magistrate Cantrell cannot meet his formidable burden to prove that it is "absolutely clear" that his behavior could not reasonably be expected to recur. The swearing of this affidavit two weeks following Plaintiffs' motion for summary judgment, its prospective nature, and the lack of other supporting evidence of changed practices, push this assertion firmly into the sphere of litigation posturing to which the voluntary cessation doctrine does not apply. In addition, the non-binding nature of the affidavit leaves no assurance that Magistrate Cantrell will not resume his practices at the conclusion of this litigation. *See, e.g., Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1048 (5th Cir. 1993) (holding, in residents' suit to prevent demolition of

public housing, that HUD's refusal of a challenged demolition application did not prevent it from approving a subsequent demolition application).[6]

Local Rules 56.1 and 56.2 require that motions for summary judgment and oppositions to summary judgment be accompanied by statements of uncontested and contested facts, respectively. Those facts not contested by parties are deemed admitted. Magistrate Cantrell's affidavit has not been deemed a material fact by Magistrate Cantrell, since neither his statement of uncontested facts (ECF No. 121-6) nor his statement of contested facts (ECF No. 120-5) reference his affidavit in any manner. Plaintiffs agree, for the reasons outlined in the preceding paragraphs, that Magistrate Cantrell's affidavit presents no material facts over which a genuine dispute could exist. To the extent that the Court might deem Magistrate Cantrell's affidavit to contain material facts, Plaintiffs contest such facts and rely upon their own statement of uncontested facts, to which Magistrate Cantrell has stipulated. Thus, even if the Court were not to grant Plaintiffs' motion for summary judgment at this time, it would be improper to grant Magistrate Cantrell's cross-motion for summary judgment because it would necessarily imply a factual dispute. Since Magistrate Cantrell's affidavit does not allege a change in procedures that

---

[6] Magistrate Cantrell contends that, as a government official, his assertion of voluntary cessation should be held to a more solicitous standard. (ECF No. 120 at 6.) But the doctrine Magistrate Cantrell cites depends upon the proposition that government actors will be accorded a "presumption of good faith because they are public servants, not self-interested private parties." (ECF No. 120 at 6 (citing *Valley v. Rapides Parish. Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997).) In this case, however, Plaintiffs Magistrate Cantrell suffers from an unconstitutional conflict of interest occasioned by the fees his court receives as a percentage of the amount of secured bonds that he sets. Thus, even if such a presumption of good faith existed, it would not apply here. Furthermore, the Fifth Circuit precedent relied on by Magistrate Cantrell has been abrogated by the Supreme Court. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (holding that Governor's announcement that state agency would change its challenged practices did not meet "heavy burden of making 'absolutely clear' that it could not revert to its policy"); *Parents Involved*, 551 U.S. at 719 (declining to provide a municipal government entity a more favorable standard for its voluntary cessation); *see also Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004) (applying stringent standard to claim of voluntary cessation by state agency and denying mootness defense); *Advocacy Ctr. for Elderly and Disabled v. La. Dep't of Health and Hosps.*, 731 F. Supp. 2d 583, 598 (E.D. La. 2010) (same).

would remedy Plaintiffs' ongoing injuries and cannot support a claim of mootness, this Court should grant summary judgment in Plaintiff's favor.

**IV.    The Fifth Circuit's Decision in *Broussard v. Parish of Orleans* has no bearing on Plaintiffs' Claim of Magistrate Cantrell's Conflict of Interest**

Magistrate Cantrell does not seriously dispute this Court's prior holding that the undisputed facts in this case state a constitutional violation concerning his financial conflict of interest in setting secured financial conditions of release. (ECF No. 81 at 6.)

Instead, he first makes several irrelevant arguments concerning the Judicial Expense Fund, his own lack of personal bias, and collections of fees by United States Attorneys in federal court. (ECF No. 120 at 8–15.) Each of these arguments clearly fails. The issue in this case is not the collection of court costs generally (which, as Magistrate Cantrell notes, the United States also does) or an allegation that Plaintiffs can prove that Magistrate Cantrell is personally biased in any given case.  This case involves the conflict created when the judicial officer performs both the function of determining conditions of release and the function of collecting and administering the budget of the court when that budget is significantly dependent on the decisions of the judge who sets financial conditions of release.

Magistrate Cantrell next asserts that *Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir. 2003), controls this case. Magistrate Cantrell made this argument previously in support of his motion to dismiss (ECF No. 77 at 2–3) and the Court rejected it (ECF No. 81). *Broussard* is irrelevant to Plaintiffs' claims for several reasons: (1) *Broussard* was not a claim against judicial officers or alleging judicial bias; (2) claims of judicial bias are not limited to determinations of guilt or innocence; and (3) the substantive due process claim that the *Sheriff* was biased because of fees paid to the Sheriff in *Broussard* has not been raised in this case.

The plaintiffs in *Broussard* never made any claim of judicial bias, which is the core of Count Two of the Complaint in this case. The plaintiffs in *Broussard* brought suit against multiple Louisiana sheriffs and the Orleans Parish Clerk of Court, alleging, among other constitutional claims, that certain fees "[gave] *sheriffs* the partisan incentive to make unnecessary charges to maintain sufficient funding for their respective departments." *Broussard*, 318 F.3d at 661 (emphasis added).  Thus, the claim in *Broussard* was that *sheriffs* were biased to stack charges because of the fees that the *sheriffs* might collect.  This fact alone suffices to reject Defendant Cantrell's arguments.

In fact, the Fifth Circuit upheld the District Court's dismissal of the conflict-of-interest claim precisely because that claim was *not* about judicial bias; the cases of *Tumey v. Ohio*, 273 U.S. 510 (1972), and *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), were inapplicable to the sheriffs "because the focus of those cases was on the individuals who exercised a judicial function." *Broussard*, 318 F.3d at 662. Thus, the *Broussard* panel's upholding of dismissal of conflict-of-interest claims against the defendant sheriffs in that case is inapplicable to this case, and the Fifth Circuit's reasoning to distinguish *Tumey* and *Ward* actually *supports* Plaintiffs' claims. Plaintiffs Caliste and Gisclair explicitly allege and submit evidence that Magistrate Cantrell has an institutional financial bias in the exercise of his judicial function.  As Plaintiffs have explained, overwhelming precedent condemns precisely this kind of financial conflict of interest. (ECF No. 111-3 at 30–36.)

Nevertheless, relying only on *Broussard*, Defendant Cantrell argues that: "(1) *Ward* and *Tumey* had no application because the plaintiffs' guilt or innocence was not at issue, (2) per the Supreme Court decision in *Schilb v. Kuebel* the bail bond fees at issue were nothing more than administrative costs imposed upon those who take advantage of the state's bail bond system, and

(3) there existed no authority, Fifth Circuit or otherwise, that had invalidated bail bond fees on due process grounds." (ECF Nos. 77 at 5; 120 at 17–18).  None of these points has merit.

First, the Fifth Circuit did not hold in *Broussard* that a determination of guilt or innocence by a judicial officer was a necessary element of a judicial bias claim under the *Ward* line of cases.  Nor could it have: the United States Supreme Court has held exactly the opposite. *See Connally v. Georgia*, 429 U.S. 245 (1977) (applying the financial conflict of interest principle to the issuance of warrants).  Indeed, it is blackletter law that the due process prohibition on judicial financial conflicts of interest applies outside the criminal context altogether because of its importance to the functioning of a neutral judiciary even in the civil context. *Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 617 (1993); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986); *Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n*, 426 U.S. 482 (1976); *Gibson v. Berryhill*, 411 U.S. 564 (1973).  In *Connally,* to take just one example, the Court found a judicial conflict of interest in violation of due process when justices of the peace in Georgia received a fee on each search warrant they issued. The Court cast the inquiry not in terms of determination of guilt or innocence but of "judicial action." *Id.* at 250; *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 878–79 (2009) (finding conflict of interest in appellate review of civil judgment).

Second, Magistrate Cantrell's reference to *Schilb v. Kuebel*, 404 U.S. 357 (1971), is also misguided. *Broussard* referenced *Schilb* only because the plaintiffs there complained that charging them an administrative processing fee at the time of posting bail was a violation of their substantive due process rights. Plaintiffs here make no such claim.  They have never contended that the mere existence of a bail bond fee, no matter who earns money from that fee, is a freestanding violation of their due process rights.  Nor have Plaintiffs ever argued that the bare

imposition of a premium on commercial sureties violates Plaintiffs' substantive due process rights. Rather, their claim is that a judge, when determining their conditions of pretrial release, could be tempted by the knowledge that fees on those financial conditions fund a significant portion of his court's operating budget, which he controls and administers.

Finally, Magistrate Cantrell's claim that "there existed no authority, Fifth Circuit or otherwise, that had invalidated bail bond fees on due process grounds" is, again, a reference to the unrelated challenge brought by the *Broussard* plaintiffs. Magistrate Cantrell's statement is also misleading in the extreme because the only time that the claims raised by *this* lawsuit have ever been resolved in this Court, this Court held that a judicial conflict of interest was created under materially indistinguishable circumstances by a predecessor bail-fee statute. *See Augustus v. Roemer*, 771 F. Supp. 1458, 1473 (E.D. La. 1991). Neither the District Court opinion nor the Fifth Circuit panel opinion in *Broussard* disturbed the ruling on judicial conflict of interest in *Augustus*, although other unrelated parts of the opinion were overruled. This Court's motion to dismiss opinion was correct, and the undisputed facts in this case create a due process violation. Plaintiffs are entitled to summary judgment.

## V.     Conclusion

No genuine issue of material fact exists between the parties, and Magistrate Cantrell makes no colorable challenge to the merits of Plaintiffs' claims. The Plaintiff class suffers a daily, ongoing harm as a result of Magistrate Cantrell's unconstitutional First Appearance hearings. Their conditions of pretrial release are determined by Magistrate Cantrell without regard for their constitutional rights, resulting in their unlawful detentions. Magistrate Cantrell's financial conflict of interest when determining secured bond amounts renders all of his money-

bail orders constitutionally deficient. In light of these serious violations of Constitutional rights,

Plaintiffs are entitled to a judgment declaring their rights.


Respectfully submitted,


*/s/ Eric A. Foley*
Eric A. Foley, La. Bar No. 34199, T.A.
Katie M. Schwartzmann, La. Bar No. 30295
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, La 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
katie.schwartzmann@macarthurjustice.org
eric.foley@macarthurjustice.org

*/s/ Alec Karakatsanis*
Alec Karakatsanis, D.C. Bar No. 999294
(admitted *pro hac vice*)
Founder and Executive Director
Civil Rights Corps
910 17th Street NW, Fifth Floor
Washington, DC 20006
(202) 681-2409
alec@civilrightscorps.org

*Counsel for Plaintiffs*


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being filed using the Court's CM/ECF system, which provides notice to all parties.

*/s/ Eric A. Foley*
Eric A. Foley