**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ADRIAN CALISTE and BRIAN GISCLAIR, individually and on behalf of all others similarly situated, <br><br>     Plaintiffs, <br><br> v. <br><br> HARRY E. CANTRELL, Magistrate Judge of Orleans Parish Criminal District Court, <br><br>     Defendant. | Case No. 2:17-cv-06197-EEF-MBN |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

Plaintiffs move this Court for injunctive relief to ensure Defendant Judge Cantrell's compliance with the Court's declaratory judgment as to Count I of Plaintiffs' Complaint. (ECF No. 131 at 21). As explained below, Judge Cantrell has directly and repeatedly violated this Court's declaratory judgment setting forth the basic substantive findings and procedural safeguards required for bail-setting, and he has stated on the record that he need not follow this Court's order.

On August 13, 2018, this Court entered a declaratory judgment on Count I of Plaintiffs' Complaint, which Judge Cantrell chose not to appeal. Since then, Judge Cantrell has failed to comply with this Court's order setting forth the minimum constitutional requirements of a bail hearing. Judge Cantrell's failure to follow the Constitution causes ongoing, irreparable injuries to the Plaintiff Class. Injunctive relief is now appropriate.

I.      **Statement of Facts**

   A.  **The Court's declaratory judgment on Count I set out three Constitutional requirements for bail hearings.**

On August 6, 2018, this Court granted summary judgment to the Plaintiff Class on their claim that Judge Cantrell's bail practices violate Plaintiffs' Fourteenth Amendment rights. (ECF No. 131 at 21.) The following week, this Court rendered its judgment:

> Evidence in the record demonstrates that Judge Cantrell's procedure does not include an inquiry into ability to pay or consideration of alternative conditions of release prior to his setting bail.
> . . . .
>
> In the context of hearings to determine pretrial detention Due Process requires:
>
> 1)  an inquiry into the arrestee's ability to pay, including notice of the importance of this issue and the ability to be heard on this issue;
>
> 2)  consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release; and
>
> 3)  representative counsel.

(ECF No. 132 at 2.)

   B.  **Judge Cantrell waived appellate review of the declaratory judgment on Count I.**

Judge Cantrell subsequently appealed this Court's judgment, but only as to Count II, Plaintiffs' separate challenge to his financial conflict of interest.  As Judge Cantrell explained to the Fifth Circuit: "Judge Cantrell accepts the Count I declaratory judgment regarding his bail procedures and has already instituted new bail procedures in response." *Caliste v. Cantrell*, 18-30954, Appellant's Brief at 4 (5th Cir. Nov. 15, 2018).[1]

---

[1] Similarly, in support of his motion for summary judgment, Judge Cantrell swore under oath that he had changed his bail practices. (ECF No. 121-2 (Affidavit of Magistrate Harry E. Cantrell).)

### C.  Judge Cantrell has not changed his bail practices to conform with the three requirements of this Court's declaratory judgment on Count I.

In the months since this Court's declaratory judgment, transcripts from Judge Cantrell's First Appearance hearings[2] make clear that his bail procedures continue to violate constitutional rights, notwithstanding this Court's order. Indeed, Judge Cantrell has recently stated on the record in open court that he does not believe himself to be bound by this Court's judgment on Count I. On Jan. 14, 2019, Mr. Karsten Oliver's attorney appeared before Judge Cantrell and sought a bail reduction, noting that neither she nor Mr. Oliver were present at a hearing in which Judge Cantrell set a $10,000 secured bail[3] in Mr. Oliver's case. Mr. Oliver's attorney cited this Court's declaratory judgment for the proposition that defense counsel must be present at bail hearings. Judge Cantrell responded:

```
13   THE COURT:
14           No, that's not true.  You're absolutely wrong
15   there, okay.  That lawsuit was filed -- first of all, I
16   don't think that's what it says, okay.  Second of all,
17   that is not the law of the land because it's up on
18   appeal with the Fifth Circuit and, okay, I think that
19   those issues eventually are going to go to the Supreme
20   Court because the Eleventh Circuit has ruled just the
21   opposite, okay.  So we have a long ways to go in this
22   case.  But that is not the law.  It's on appeal at this
23   point, okay.  And when it's on appeal, that means that
24   that's not the law, that's not the law of the case.  So
25   that's not the law in the case.
```

---

[2] These transcripts are attached as Exhibits 1 to 9.

[3] Under Louisiana law, secured bails are financial conditions of release satisfied by either a deposit of cash in the full amount of bail, a commercial surety bond, or a pledge of property either by the arrestee or a third party. La. Code Crim. Proc. art. 321(B). "Secured bail," "money bail," and "bond" are used interchangeably in this memo and the attached transcripts.

(Ex. 1, First Appearance Hr'g Tr., *Louisiana v. Oliver*, Jan. 14, 2019, at 4.)

Later that day, Judge Cantrell set a secured bail for Matthew Aldous based, in part, upon "circumstances and facts that were mentioned . . . on television" rather than evidence in any record before him. (Ex. 2, First Appearance Hr'g Tr., *Louisiana v. Aldous*, Jan. 14, 2019, at 5.) Furthermore, in the week before Oliver's and Aldous's hearings, Judge Cantrell appeared to question whether the rule of law should control his bail decisions instead of "the will of the public against setting bonds and letting people out on serious offenses." (Ex. 3, First Appearance Hr'g Tr., *Louisiana v. Quinn*, Jan. 4, 2019, at 6–7.)

As the attached transcripts demonstrate, Judge Cantrell means what he said on the record in the *Oliver* hearing: this Court's declaratory judgment has had no effect on his bail practices. He typically begins each First Appearance hearing by reciting a boilerplate statement describing the purpose of the initial court appearance, including appointing counsel, determining probable cause, and setting bail. He states the factors he will "consider" when determining pretrial release or detention. (*See, e.g.*, Ex. 4, First Appearance Hr'gs Tr., Oct. 16, 2018, at 2–3.)  Judge Cantrell then conducts a colloquy with each arrestee to determine whether they are indigent for purposes of appointing the public defender. (*Id.*) The content of this colloquy remains unchanged from that which he conducted at the time suit was filed. As before, Judge Cantrell asks arrestees if they have a lawyer, if they are employed, their income, and the number of their dependents. (*Compare* ECF No. 116-2 at 9, *with* Ex. 4 at 3–10.)

Following the appointment of counsel, Judge Cantrell turns to the probable cause determination and bail setting for each arrestee. The Assistant District Attorney reads into the record the "gist" report of the arrest. The arrestee's defense attorney then makes arguments on probable cause and bail. Judge Cantrell then addresses the arrestee, repeating his boilerplate

recitation of the factors that he purports to consider in determining bail before announcing a

secured bail amount. The following excerpt of the First Appearance Hearing of Dillon Foster on

Oct. 16, 2018, is representative of Judge Cantrell's procedures:

```
 4    THE COURT:
 5         All right.  In setting this monetary bail the Court's
 6    going to take into consideration the representations made by the
 7    Public Defender and the factors found in Article 316 of the Code
 8    of Criminal Procedure.  I'll take into consideration that this is
 9    subject to what we call special statutory bail provisions where
10    he cannot be released on his own recognizance or personal
11    undertaking surety bond.  I'll take into consideration the
12    seriousness of the offense charged, including but not limited to
13    whether the offense is a crime of violence.  It's considered to
14    be a crime of violence under Revised Statute 14.2 Louisiana
15    Revised Statutes.  I'll take into consideration previous criminal
16    history, if any.
17    MR. HENN:
18         .  Not that I can see.  No convictions.
19    THE COURT:
20         Okay.  Take that into consideration, his ability to
21    give bail, the nature and seriousness of a danger to any other
22    person, the victim or the community that would be posed by his
23    release.  Take into consideration the amount and source of his
24    income, his employment status, recommendation of Pre-trial
25    Service, including New Orleans Public Safety Assessment Model
26    where he's a level one and will set the bond at $6,000.  Thank
27    you.
28                        *  *  *  *  *
```

(Ex. 4 at 27.) Notably, Judge Cantrell does not ask arrestees whether they can afford to pay the

secured bail that he requires. Nor does he make any evaluation on the record of suitable

alternatives to money bond. In the above example, arrestee Dillon Foster had told Judge Cantrell

that he was unemployed and had not worked in over a year. (*Id.* at 9.) Despite this knowledge,

Judge Cantrell did not ask Mr. Foster whether he could afford a $6,000 bond. Despite the arrestee having the lowest possible public safety assessment score, no failures to appear, and no prior criminal history, Judge Cantrell did not ask whether any alternative conditions of release would be appropriate.

The attached transcripts (Exs. 1–9) prove that Judge Cantrell fails to comply with the three requirements of the Court's declaratory judgment. First, the judge does not give notice of the importance of the inquiry into ability to afford a secured money bail and makes no actual inquiry into whether an arrestee can afford the money bail amount that Judge Cantrell proposes. Second, Judge Cantrell does not consider alternative conditions of release, and he makes no findings on the record as to why such alternatives would not serve any particular government interest. Third, Judge Cantrell fails to ensure that indigent arrestees are represented by counsel at the hearing.

### 1.  Judge Cantrell does not explain the importance of the inquiry into the arrestee's finances and does not inquire into the arrestee's ability to pay bond.

As evidenced in the attached transcripts, Judge Cantrell does not give notice to arrestees of the importance of an inquiry into their ability to pay a secured bail amount, nor does he take the next step of inquiring into the individual's ability to pay. None of the transcripts attached, which encompass multiple hearings from October 2018 through January 2019, record Judge Cantrell asking a single arrestee whether they could afford to pay the secured bail amount he imposed. This inquiry is essential to ensuring that people are not unlawfully detained solely on the basis of wealth. The Court's opinion left no uncertainty on this point: "To satisfy the Due Process principles articulated by Supreme Court precedent, Judge Cantrell must conduct an inquiry into criminal defendants' ability to pay prior to pretrial detention." (ECF No. 131 at 17.)

Yet Judge Cantrell's unconstitutional practices persist, unaffected by the Court's declaratory judgment. He announces a category of factors that he will take into "consideration" when determining bail, but he does not actually apply those factors to the person standing before him. Judge Cantrell tells arrestees that he will "consider" factors like ability to give bail, their income, and employment status, but he makes no findings as to those factors or as to the necessity of pretrial detention given alternative means of serving the government's interests in any individual case.

### 2. Judge Cantrell makes no substantive findings about the necessity of pretrial detention or the suitability of alternatives to secured money bail.

Most importantly, in case after case, Judge Cantrell fails to make any substantive finding regarding the necessity of pretrial detention, as required by this Court's order.

On Oct. 15, 2018, Ms. Tayari Gant appeared before Judge Cantrell for a bail determination, during which her public defender noted that she was supporting eight children—four of whom have disabilities—and had only just started a job at a fast food restaurant, having not yet received a paycheck, "so she has very little means for a bond." (Ex. 5, First Appearance Hr'gs Tr., Oct. 15, 2018, at 12–13). Judge Cantrell imposed a $6,000 total secured bail in Ms. Gant's case, without the constitutionally mandated inquiries and findings concerning ability to pay or alternative conditions of release. (*Id.* at 14–15.) Judge Cantrell raised, sua sponte, Ms. Gant's competency—despite her public defender's protests that there was no indication she was currently incompetent—and ordered that Ms. Gant return for a lunacy hearing. (*Id.* at 13–14.) She remained incarcerated for over a week because she could not pay the bail amount he required.

On October 16, 2018, Judge Cantrell set a $2,500 secured bail for the release of Mr. Jay Kaizer on charges stemming from alleged theft of a bicycle. (Ex. 4 at 33–34.) Judge Cantrell did

not ask whether Mr. Kaizer could afford this amount, he did not make any findings as to danger or flight risk, and he did not consider or make any findings concerning alternatives to secured bail. (*Id.*)  On that same day, Judge Cantrell presided over a bail hearing for Ms. Angel Crockett and set her bail at $3,500. He did so despite representations from the public defender that Ms. Crockett supported herself and four children on a wage of $10/hr, had no prior criminal history, had the lowest risk score for the Public Safety Assessment, and "lack[ed] ability to give a sizeable bail." (*Id.* at 28–29.) Judge Cantrell did not ask Ms. Crockett if she could afford the $3,500 secured bail he set, he did not consider alternative conditions of release, nor did he make record findings of why detention would be necessary. (*Id.*)

On Nov. 2, 2018, Judge Cantrell set a $15,000 bail for Mark Charlot after being informed by his public defender that Mr. Charlot had recently become homeless, was unemployed, and had no history of failures to appear. (Ex. 6, First Appearance Hr'gs Tr., Nov. 2, 2018, at 13.) Judge Cantrell made no inquiry into his ability to pay that amount, consideration of alternatives, or a record finding concerning whether pretrial detention was necessary. (*Id.* at 14–15.)

On that same day, a public defender argued that Centrell Picard was unemployed, receiving SSI, and "[did] not have much money at all to make a bond." (*Id.* at 28.) The public defender requested a "reasonably low bond" because "[Mr. Picard] would be relying on his family." (*Id.*) Judge Cantrell set a total secured bail of $12,000 without any inquiry into Mr. Picard's ability to pay and no findings on the record as to the necessity of pretrial detention or the suitability of alternative conditions of release to serve any government interest. (*Id.* at 30.)

Michael McClain appeared before Judge Cantrell, and his public defender argued for "[a bond] around $2,000 total" noting that Mr. McClain was a cook making $9/hour while supporting his two minor children. (*Id.* at 5 (hourly wage), 17 (employment), 18 (requested bond

amount)). Judge Cantrell set a total bail of $10,000, without any inquiry as to whether Mr.
McClain could afford to pay that amount, consideration of suitability of alternative conditions, or
record findings concerning the necessity of pretrial detention. (*Id.* at 19.)

Even when an arrestee's attorney explicitly states on the record that an arrestee cannot
afford to pay the secured bail Judge Cantrell has proposed, Judge Cantrell fails to make findings
as to why alternatives to secured bail are insufficient or why the arrestee presents such an
immitigable danger or flight risk that he must be deprived of liberty.

On January 4, 2019, a public defender objected that an arrestee would not be able to
afford the $15,000 secured bail that Judge Cantrell set for his release without first making the
required factual findings on the record.

```
17   MS. GARVEY:
18            And Judge, just as to Mr. Quinn, as I
19   previously stated, he makes $10 an hour.  So that means
20   he will gross $1,600, so that's prior to taxes.
21   Obviously he has to pay taxes, living expenses and
22   support three daughters.  The bond that the Court set
23   through a bondsman would cost $1,950.  So I do believe
24   it is highly likely that Mr. Quinn will remain detained
25   due to his inability to pay this bond.
26   THE COURT:
27            Okay.  And based upon the events of this week
28   and review of comments regarding the public in the
29   setting of bonds in this bail reform, okay, that I'll
30   have to take that into consideration.  It appears as
31   though the will of the public is against the policy of
32   setting bonds and letting people out on serious
```

```
1    offenses and this is considered to be a serious and
2    violent offense, okay.  Let the record so reflect that.
3    MS. GARVEY:
4            But Judge, I would just ask that you take the
5    law into consideration rather than political pressure.
6    THE COURT:
7            Rather than the will of the people; is that
8    what you're saying?
9    MS. GARVEY:
10           I believe that the rule of law is what should
11   apply in court at all times.
12   THE COURT:
13           And I applied Article 316 in the Code of
14   Criminal Procedure, okay.
15   MS. GARVEY:
16           Yes, sir.
```

(Ex. 3 at 6–7.)

On that same day, Judge Cantrell set a secured bail of $20,000 for the release of a high school student charged with various drug and weapon possession charges. He had no prior criminal history and only a part-time job making $8.25 per hour. His public defender objected:

```
28           Judge, just as to Mr. Paul, I would like to
29   note an objection as to the amount of the bond given
30   that he's a high school student who isn't working full
31   time.  I do believe that there is a high likelihood
32   that he will remain incarcerated due to his inability
```

```
1   to make this bond.
2   THE COURT:
3        Okay.  And let the record reflect that the
4   bond was set in accordance with the Code of Criminal
5   Procedure Article 316.  Okay.
```

(Ex. 7, First Appearance Hr'g Tr., *Louisiana v. Paul*, Jan. 4, 2019, at 7–8.)

Judge Cantrell considered no alternatives to secured bail for Mr. Paul. He heard no evidence as to dangerousness or flight risk, and no evidence of whether alternative conditions of release could mitigate any such risk, much less evidence that would satisfy the clear-and-convincing standard upon which he could make a factual finding.

On January 22, 2019, Judge Cantrell set a secured bail of $6,400 for Maurice Motton, who was charged with drug possession and had been unemployed for the two months prior to his arrest.

```
13   MS. GARVEY:
14        Judge, I do think that based on the fact that Mr.
15   Motton is currently not employed, that there is a chance that he
16   will remain incarcerated due to his inability to give bail in
17   violation of his state and federal constitutional rights.
18   THE COURT:
19        All right.  In setting this bond the Court took into
20   consideration the representations made by the Public Defender
21   earlier, the factors found in Article 316 of the Code of Criminal
22   Procedure.  I took into consideration that this offense is
23   subject to what we call special statutory bail provisions where
24   he cannot be released on his own recognizance.  The Court
25   considers him to be a danger to the community, as concerned
26   citizens called in and allegedly said that he was selling drugs
27   and I set the bond accordingly.
28                    * * * * * * * * * *
```

(Ex. 8, First Appearance Hr'g Tr., *Louisiana v. Motton*, Jan. 22, 2019, at 5.)

Here too, Judge Cantrell did not make a finding as to Mr. Motton's ability to pay the secured bail amount, consider alternatives to secured bail, or make a finding on the record as to why alternatives would not serve the government's interest in Mr. Motton's return to court or the safety of the community. Instead, Judge Cantrell found Mr. Motton was a danger to the community based solely on the police report's allegation that "concerned citizens called in and allegedly said that he was selling drugs." (*Id.*)

On January 29, 2019, Judge Cantrell set a $6,000 secured bail for the release of Desean Jefferson, a high school student charged with burglary of a vehicle and who at the time of his hearing already had already been imprisoned for a week on a $10,000 secured bail that he could not pay:

```
 3   MS. GARVEY:
 4          And Judge, just note an objection on Mr.
 5   Jefferson's behalf given the fact that he's in high
 6   school and currently already cannot make his bond.
 7   It's certain that he will remain incarcerated due to
 8   his inability to make bond in violation of his rights
 9   under the State and Federal Constitution.
10   THE COURT:
11          This Court feels as though it's not a
12   violation of his rights setting this bond at $6,000.
13   The Court further feels that the bond was set in
14   accordance with the factors found in Article 316 of the
15   Code of Criminal Procedure.  Court also finds that the
16   arrestee is a danger to New Orleans community, okay.
```

(Ex. 9, First Appearance Hr'g Tr., *Louisiana v. Jefferson*, Jan. 29, 2019, at 7)

In this hearing, Judge Cantrell made no factual findings of dangerousness or flight risk and no findings concerning alternative conditions of release, let alone findings supported by clear and convincing evidence.

### 3. Judge Cantrell conducts bail hearings in violation of the arrestee's right to the assistance of counsel.

The attached transcripts further reveal several instances in which arrestees were effectively denied assistance of counsel because Judge Cantrell conducted bail hearings without the arrestees present in the courtroom and without attorneys having been able to speak to clients, much less being able to provide argument. Anthony Day was initially placed on the docket for October 15, 2018, but the Sheriff did not bring him to court because he was detoxing. (Ex. 5 at 3.) On the following day, October 16, the Sheriff again failed to produce Mr. Day for a hearing. The A.D.A. read Mr. Day's arrest report into the record, noting that Mr. Day "was asking for money and then stated that they can give you whatever they feel like giving, I'm homeless." (Ex. 4 at 32.) State Troopers searched Mr. Day because he was allegedly panhandling and arrested him for possession of heroin and cocaine. Mr. Day's public defender argued that Mr. Day was not present, and he therefore had no opportunity to present argument as to probable cause or bail. Given the nonviolent nature of the charges and the fact that the "gist [wa]s really based on . . . aggressive panhandling[,]" the public defender sought a release on recognizance. (*Id.*) Judge Cantrell instead set bail at $2,500. (*Id.* at 33.) Mr. Day remained incarcerated for two weeks until he was released on his own recognizance.

Similarly, on Nov. 2, 2018, Judge Cantrell set a money bail of $2,000 for Milton Durel, who was not brought to court because he was "on suicide watch." His public defender stated,

20     MS. NEW:

21         For the record, I have not spoken with Mr. Durel.

22     THE COURT:

23         He's on suicide watch.

24     MS. NEW:

25         I don't have mitigation other than his risk level is

26    two, which means the recommendation is release.  It does not

27    appear he is on any type of probation or parole and his most

28    recent conviction is from 2010.  His failures to appear are from

29    2008, so ten years old at this point and we'd ask for release on

30    his own recognizance or a low bond and ask that he be set for

31    Monday.

(Ex. 6 at 19.)

Judge Cantrell set a secured bail, citing only that Mr. Durel was suicidal and "just got off parole for a similar offense." (*Id.* at 20.) There was no consideration of or findings made concerning alternatives, such as discharge to a proper mental health facility or emergency room better equipped to care for a person exhibiting suicidality than the Orleans Justice Center, Orleans Parish's pretrial detention facility.[4]

On Jan. 14, 2019, Matthew Aldous was docketed to appear before Judge Cantrell for a bail hearing on charges stemming from his having drawn in magic marker on the wall of a CVS store, but he was not brought to court because he was detoxing.[5] (Ex. 2.) Aldous's attorney

---

[4] *See* Report No. 9 of the Independent Monitors, Aug. 29, 2018, *Jones v. Gusman*, No. 2:12-cv-00859, ECF No. 1188 at 74,  (E.D. LA. Aug. 29, 2018) ("Inmates in mental health crises continue to be housed in OJC units that do not have adequate numbers of suicide resistant cells nor the physical space or corrections staffing support necessary to provide adequate psychotherapeutic programming for inmates . . . . There is insufficient and inconsistent observation of inmates who are at increased risk for suicide and / or self-harm, as well as inadequate supervision by deputies for extended time periods. . . . [I]nmates continue to gain access to materials that can be used for self-harm or suicide.")

[5] *See id.* at 85 (noting that "substantial improvement is needed" in detox services at OJC and "a focused review of patients monitored for withdrawal from drugs and / or alcohol indicated that most were seen every 12 hours instead of every eight hours," and that "there is no curriculum . . . for corrections staff recognition of urgent medical

objected to the court's proceeding without Mr. Aldous present: "There's been representations that he is detoxing, but no sort of documentation or anything like that to justify his lack of appearance at this hearing." (*Id.* at 2.) He went on to note that the charged offense qualified for release on recognizance. "[C]learly[,] since he's not here, I cannot make any sort of personal or individualized remarks given the nature of the charge . . . , given the nature of the prior convictions or lack thereof that the state has represented. I would ask for an ROR in this matter, your Honor." (*Id.* at 3.) The A.D.A. then stated, "[a]s far as the bond is concerned, it looks like marker on CVS. I don't believe he's a threat to the community." (*Id.*) Judge Cantrell then set a $10,000 secured money bail, citing two supposed failures to appear on municipal charges as evidence that Mr. Aldous was a flight risk—despite a low risk assessment score. Mr. Aldous's attorney objected:

```
22   │  MR. MILLER:
23   │          And your Honor, please note our objection.
24   │  This is not a crime of violence.  His failure to
25   │  appear, his level is still two out of six.  Your Honor,
26   │  this is a de facto detention order that, while I have
27   │  no individual argument because I, again have not been
28   │  able to speak with Mr. Aldous, this is most like going
29   │  to be a detention order just based on the amount that
30   │  he will most likely be unable to make.
31   │  THE COURT:
32   │          Okay.  Let the record reflect.  Let the record
```

4

---

conditions"); Matt Sledge, *'Avoidable'? New Orleans woman's death in jail cell raises questions about care in final hours*, The New Orleans Advocate, May 30, 2018 (reporting on death of Kentrell Hurst, who was detoxing in OPSO custody while awaiting a bond hearing); Matt Sledge, *Coroner identifies man who died in New Orleans jail last month*, The New Orleans Advocate, Jan. 3, 2018 (reporting on the death of Dennis Edwards, who died while detoxing in OPSO custody).

```
1    further reflect this is set in accordance with Article
2    316 of the Code of Criminal Procedure.  Also the Court
3    finds that he is a danger to the community.  There were
4    other circumstances and facts that were mentioned to
5    the Court earlier and on television, okay.  So I'll
6    take all of that into consideration and also take into
7    consideration again that he's a danger to the community
8    and also against public policy at this time.  Okay.
```

(*Id.* at 4–5.)

The record is devoid of any mention of television, an explanation of how such inadmissible evidence could be regarded as clear and convincing evidence that Mr. Aldous's alleged graffiti was a danger to the community, or findings as to why Mr. Aldous's release would be "against public policy." Despite mentioning things he had seen "on television," Judge Cantrell made no substantive finding that pretrial detention was the only way to protect the public from a person charged with vandalizing a CVS store with a marker. His attorney persisted:

```
9    MR. MILLER:
10           Just to be clear, your Honor, I believe the
11   State conceded that he wasn't a danger to the
12   community.
```

```
13    THE COURT:
14           Well, I think he is a danger to the community
15    based upon the things that I've heard.
16    MR. MILLER:
17           Judge, just please note our objection.
18    THE COURT:
19           All right.
20
21
22           (END OF BOND SETTING FOR MATTHEW ALDOUS)
```

(*Id.* at 5.)

## II.    Standard for Injunctive Relief

Plaintiffs seeking an injunction must demonstrate that: (1) they have suffered or will

suffer an irreparable injury; (2) remedies at law, like money damages, cannot adequately

compensate the injury; (3) when balancing the conveniences and injuries to the parties, an

injunction is warranted; and (4) an injunction would not disserve the public interest. *eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Weinberger v. Romero-Barcelo*, 456 U.S. 305

(1982).

## III.    Argument

Since this Court's declaratory judgment, Judge Cantrell has failed to follow the minimum

constitutional requirements announced by this Court. The Plaintiff Class suffers irreparable

injury on a daily basis, and injunctive relief is required to protect their fundamental constitutional

rights. *See* 28 U.S.C. § 2002 ("Further necessary or proper relief based on a declaratory

judgment or decree may be granted, after reasonable notice and hearing, against any adverse

party whose rights have been determined by such judgment."); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can . . . be used as a predicate to further relief, including an injunction." (citing § 2202)); *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 570 (5th Cir. 2005) ("This court has held that under § 2202, 'the prevailing party [in a declaratory judgment action] may seek further relief in the form of damages or an injunction.'").[6]

### A. Judge Cantrell's failure to hold constitutional bail hearings causes irreparable injury to the Plaintiff Class.

The violation of a constitutional right is an "irreparable injury as a matter of law." *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507, 515 (M.D. La. 2001) (citing *Elrod v. Burns*, 427 U.S. 347 (1976)); *see also* 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary."). Multiple courts have found unconstitutional deprivations of pretrial liberty to be irreparable injuries that call for injunctive relief. *See McNeil v. Cmty. Probation Svcs., LLC*, No. 1:18-CV-00033, 2019 WL 633012, at *16 (M.D. Tenn. Feb. 14, 2019); *Schultz v. Alabama*, 330 F. Supp. 3d 1344, 1374 (N.D. Ala. 2018); Preliminary Injunction Order, *Schultz v. Alabama*, No. 5:17-cv-00270-MHH, ECF No. 164 (N.D. Ala. Sept. 13, 2018); *ODonnell v. Harris Cnty., Tex.*, 251 F. Supp. 3d 1052, 1157–58 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018); *Rodriguez v.*

---

[6] 42 U.S.C. § 1983 bars injunctive relief *in the first instance* against a "judicial officer" acting in his "judicial capacity" but excepts cases, like this one, in which a declaratory decree has been violated. Moreover, the Fifth Circuit has held that a losing party's appeal from a federal district court's entry of declaratory judgment does not divest the district court of jurisdiction to consider a prevailing party's motion for further relief, under 28 U.S.C. § 2202, concerning issues not involved in the appeal. *United Teacher*, 414 F.3d at 572 (citing cases). Judge Cantrell has not appealed the part of the declaratory judgment that forms the basis for this motion.

*Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758, 771 (M.D. Tenn. 2015); *Cooper v. City of Dothan*, No. 1:15-CV-425-WKW[WO], 2015 WL 10013003 (M.D. Ala. June 18, 2015) (granting temporary restraining order).

Imprisoning a person in a jail cell in violation of her constitutional rights inflicts irreparable harm on her body and mind. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

Even one additional night in jail is a harm to a person that cannot be later undone. *See, e.g.*, *United States v. Bogle*, 855 F.2d 707, 710–11 (11th Cir. 1988) (holding that the "unnecessary deprivation of liberty clearly constitutes irreparable harm"); *Wanatee v. Ault*, 120 F. Supp. 2d 784, 789 (N.D. Iowa 2000) ("[U]nconstitutional incarceration generally constitutes irreparable harm to the person in such custody."); *SEC v. Bankers Alliance Corp.*, No. 95-0428, 1995 WL 317586, *3 (D.D.C. 1995) ("As for the question of irreparable harm in the absence of a stay, clearly Mr. Lee will be harmed by being incarcerated."); *Lake v. Speziale*, 580 F. Supp. 1318, 1335 (D. Conn. 1984) (granting preliminary injunction requiring court to inform child support debtors of their right to counsel because unlawful incarceration would be irreparable harm); *Cobb v. Green*, 574 F. Supp. 256, 262 (W.D. Mich. 1983) ("There is no adequate remedy at law for a deprivation of one's physical liberty. Thus the Court finds the harm asserted by plaintiff is substantial and irreparable.").

Even a few days in jail can have devastating consequences in a person's life, such as higher rates of conviction and recidivism, the loss of a job, loss of housing, or the inability to

care for dependent family members.[7] *See Schultz*, 330 F. Supp. 3d at 1374–75; *ODonnell*, 251 F.

Supp. 3d at 1157–58. It also exposes arrestees to the risk of medical and safety emergencies

prevalent in the Orleans Justice Center.[8]

      Judge Cantrell does not provide the substantive findings required for an order of pretrial

detention or the minimum procedural safeguards necessary to ensure the accuracy of such

determinations. (*See* ECF No. 131 at 20–21.)  As a result, Plaintiff Class members languish in

jail solely because they do not have enough money to buy their release. The Plaintiff Class asks

this Court to enjoin Judge Cantrell from continuing to violate their constitutional rights.

      **B.  There is no adequate remedy at law for the loss of liberty and imposition of imprisonment suffered by the Plaintiff Class.**

      This is a quintessentially equitable case under § 1983 involving the ongoing violation of

constitutional rights. No remedy at law is adequate to redress the loss of liberty and the infliction

---

[7] Recent scholarship details the multiple deleterious effects of pretrial detention. *See* Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J.L. Econ. & Org. 511 (2018), available at https://academic.oup.com/jleo/article/34/4/511/5100740#124816631; Dobbie Will, et al., *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108 Am. Econ. Rev. 201 (2018); Paul Heaton, et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stanford L. Rev. 711 (2017) (finding that misdemeanor pretrial defendants detained in Harris County, Texas, were 25% more likely to plead guilty, 43% more likely to be sentenced to jail, and had sentences more than twice as long as those defendants who were released pretrial); Emily Leslie & Nolan G. Pope, *The Unintended Impact of Pretrial Detention on Case Outcomes: Evidence from New York City Arraignments*, 60 J.L. & Econ. 529 (2017); Arpit Gupta, et al., *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 45 J. Legal Stud. 471, 472, 487 (2016) (finding a 12% increase in the likelihood of conviction when money bail is imposed); *The Hidden Costs of Pretrial Detention* at 3, 19 (Nov. 2013), available at http://www.pretrial.org/download/research/ The%20Hidden%20Costs%20of%20Pretrial%20Detention%20-%20LJAF%202013.pdf (studying 153,407 defendants and finding that "when held 2–3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Arnold Foundation, *Pretrial Criminal Justice Research Summary* 5 (2013), *available at*: http://www.arnoldfoundation.org/sites/default/files/ pdf/LJAF-Pretrial-CJ-Research-brief_FNL.pdf (finding that "low-risk defendants held 2–3 days were 17 percent more likely to commit another crime within two years" and that those detained "4–7 days yielded a 35 percent increase in re-offense rates.")

[8] *See Jones v. Gusman*, 296 F.R.D. 416 (E.D. La. 2013) (approving consent judgment to remedy unconstitutional conditions of confinement in Orleans Parish Prison, addressing rapes, beatings, and a lack of healthcare leading to suicides and deaths); Report No. 9 of the Independent Monitors, Aug. 29, 2018, *Jones v. Gusman*, No. 2:12-cv-00859, ECF No. 1188 at 1 (E.D. LA. Aug. 29, 2018) ("Based on objective review of data, the facility has shown improvement in inmate and staff safety, *but still remains critically unsafe for inmates and staff*." (emphasis added)); *supra* notes 4 and 5.

of imprisonment on Plaintiffs; that is the exact meaning of "irreparable injury." *See Dresser -Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004) ("For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages."). Moreover, the doctrine of absolute judicial immunity may preclude a damages remedy against Judge Cantrell.

### C. Any inconvenience to Judge Cantrell is outweighed by the harm to Plaintiff Class from the continued use of unconstitutional bail hearings.

This Court has already held that the harm to Plaintiffs' liberty interests outweighs any potential inconvenience to Judge Cantrell. (ECF No. 131 at 19).  And Judge Cantrell has never articulated an interest in continuing to conduct bail hearings in the manner this Court found unconstitutional. (*See, e.g.*, *id.* at 17 ("Judge Cantrell has not suggested any government interest that would prevent or discourage an inquiry into the ability to pay.").) Indeed, he has represented to the Fifth Circuit that he is already in compliance with this Court's order. *Caliste v. Cantrell*, 18-30954, Appellant's Brief at 4 (5th Cir. Nov. 15, 2018).

### D. An injunction is in the public interest.

The vindication of constitutional rights is always in the public interest. *See Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (summarily holding that injunction preventing implementation of unconstitutional statute would serve the public interest); *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 93 (5th Cir. 1992) (holding that "the public interest is always served when public officials act within the bounds of the law and respect the rights of the citizens they serve"); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotations omitted)); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir.

2002); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

**IV.    Requested Relief**

Plaintiffs ask this Court to order Judge Cantrell to comply with the terms of its declaratory judgment on Count I. (*See* ECF No. 132 (declaratory judgment); ECF No. 131 (opinion setting forth the Court's reasoning).) The Court should order that Judge Cantrell shall comply with the three requirements that this Court declared are mandated prior to an order of pretrial detention:

    1)    a meaningful inquiry into the arrestee's ability to pay, including notice of the importance of this issue and the opportunity to be heard on this issue;

    2)    consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release; and

    3)    representative counsel.

(ECF No. 132 at 2.)

Specifically, to effectuate this relief, this Court should:

A.    Enjoin Judge Cantrell from requiring financial conditions of release (including but not limited to secured bail) from any Plaintiff class member without first:

1)  Ensuring the presence of both the arrestee and counsel at an adversarial hearing at which the arrestee may be heard and submit and confront evidence.

2)  Giving notice to the arrestee of the importance of the inquiry into the person's ability to pay a proposed secured bail amount, and informing of them of their right to be heard on that issue.

3)  Inquiring into the arrestee's immediate ability to pay the secured bail amount proposed by Judge Cantrell and making record findings, supported by clear and convincing evidence, of the ability to pay.

B.    Enjoin Judge Cantrell from requiring a secured bail that an arrestee cannot afford to pay or otherwise entering an order of pretrial detention **unless**:

1) Judge Cantrell makes findings on the record supported by clear and convincing evidence—following an adversarial hearing at which the person, represented by counsel, may present and confront evidence—that no alternative conditions of pretrial release can reasonably satisfy the government's interest in court appearance or public safety. The findings must set forth the clear and convincing evidence relied on to conclude that the person is a danger to the community or a risk of flight and to conclude that no other alternative condition or combination or conditions of release short of pretrial incarceration is available to reasonably mitigate that identified concern.

In the absence of the procedures outlined above, an arrestee must not be detained prior to trial, either through an order of detention or through the imposition of secured bail that functions as a de facto order of pretrial detention because the person cannot pay it.

Respectfully submitted,

*/s/ Eric A. Foley*
Eric A. Foley, La. Bar No. 34199, T.A.
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, La 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
eric.foley@macarthurjustice.org

*/s/ Alec Karakatsanis*
Alec Karakatsanis, D.C. Bar No. 999294
(admitted *pro hac vice*)
Founder and Executive Director
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
(202) 681-2409
alec@civilrightscorps.org

*Counsel for Plaintiffs*