# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ADRIAN CALISTE and BRIAN
GISCLAIR, individually and on behalf of all
others similarly situated,

     Plaintiffs,

v.

HARRY E. CANTRELL, Magistrate Judge
of Orleans Parish Criminal District Court,

     Defendant.

Case No. 2:17-cv-06197-EEF-MBN

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCOVERY AND RULE TO SHOW CAUSE WHY DEFENDANT CANTRELL SHOULD NOT BE HELD IN CONTEMPT

Plaintiffs move this Court for leave to conduct post-judgment discovery and an order for Judge Cantrell to show cause why he should not be held in contempt of the Court's previous order entering a consent judgment. (ECF No. 158.)

## I.     Background

On August 6, 2018, this Court granted summary judgment to the Plaintiff Class on both counts of their complaint.  As to Count I, the Court issued a declaratory judgment that Judge Cantrell's bail practices violate Plaintiffs' equal protection and due process rights.  (ECF No. 131 at 21.)  The Court's judgment stated:

> Evidence in the record demonstrates that Judge Cantrell's procedure does not include an inquiry into ability to pay or consideration of alternative conditions of release prior to his setting bail. . . .

> In the context of hearings to determine pretrial detention Due Process requires:

1) an inquiry into the arrestee's ability to pay, including notice of the importance of this issue and the ability to be heard on this issue;

2) consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release; and

3) representative counsel [at such hearings].

(ECF No. 132 at 1–2.)

Judge Cantrell appealed this Court's judgment, but only as to Count II of Plaintiffs' complaint—a challenge to Judge Cantrell's financial conflict of interest when determining conditions of pretrial release.  As Judge Cantrell explained to the Fifth Circuit: "Judge Cantrell accepts the Count I declaratory judgment regarding his bail procedures and has already instituted new bail procedures in response."  Appellant's Brief at 4, *Caliste v. Cantrell*, 18-30954, (5th Cir. Nov. 15, 2018).[1]

Plaintiffs subsequently moved for injunctive relief pursuant to Count I because of Judge Cantrell's noncompliance with the declaratory judgment.  (*See* ECF No. 138.)  The parties agreed on a consent judgment requiring compliance with detailed provisions based on the substance of this Court's declaratory judgment on Count One, and this Court entered that order on June 13, 2019.  (ECF No. 158.) The consent judgment provides a six-step process for Judge Cantrell to follow whenever determining conditions of pretrial release. If, as part of this process, Judge Cantrell seeks to impose a financial condition of release that the defendant cannot pay, Judge Cantrell "must explain by clear and convincing evidence on the record why the government has demonstrated that no other alternative conditions of release are sufficient to reasonably guard against the person's flight from prosecution or to reasonably ensure the safety of the community during the pretrial period." (*Id.* at 3.)

---

[1] Attached as Ex. 1.

In July 2019, after observing Judge Cantrell's post-consent-judgment First Appearance Hearings, Plaintiffs' counsel met with Judge Cantrell's counsel to convey their concerns with Judge Cantrell's violation of this Court's consent order. Plaintiffs also requested access to these hearing recordings, so as to better gauge compliance at hearings they were unable to attend in person. Defense counsel rejected the request for access to hearing audio, citing asserted conflicts with Louisiana's Public Records law, La. R.S. §§ 44:1–49.

## II.     Legal Standards for Post-Judgment Discovery and Contempt.

"Courts possess the inherent authority to enforce their own injunctive decrees" and "do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (internal citations and quotations omitted). District court judges therefore retain the power to enforce consent judgments entered in their cases. *See, e.g., Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.").

In addition to the Court's inherent power to enforce its judgments, the Federal Rules of Civil Procedure provide another basis for this Court to order post-judgment discovery. *See* Fed. R. Civ. P. 65, 69, 70; *Campaign for S. Equal. v. Bryant*, 197 F. Supp. 3d 905, 914 (S.D. Miss. 2016) ("Under Federal Rules of Civil Procedure 65 and 69, plaintiffs are entitled to reasonable discovery to enforce an injunction against the parties bound by that injunction.").

The reopening of a case and grant of discovery for purposes of confirming compliance with a consent judgment is a practice approved by multiple courts. *See Alopex Indus. Inc. v. Seibel*, 61 F.3d 919 (Fed. Cir. 1995) (upholding a district court's finding of contempt and noting

that plaintiffs had first moved the district court to reopen the case and grant them discovery to evaluate compliance with previously issued consent decree); *Sweeton v. Brown*, 944 F.2d 905 (table), 1991 WL 181751, at *3 (6th Cir. 1991) (noting that plaintiff class had been granted post-judgment discovery on compliance with consent judgment prior to moving for contempt); *Brumfield v. Dodd*, No. 71-1316, 2013 WL 360572 (E.D. La. Jan. 30, 2013) (compelling compliance with post-judgment discovery requests by U.S. Department of Justice to Louisiana Department of Education to determine compliance with consent decree in school desegregation matter); *La. Fish Fry Prods., Ltd. v. Corry*, No. 3:07-cv-1224-F-33TEM, 2010 WL 1544355, at *2 (M.D. Fla. Apr. 19, 2010) ("Plaintiff need only show good cause for the Court to allow discovery of any matter relevant to the subject matter of the action. Fed. R. Civ. P. 26(b)(1). Other courts faced with similar circumstances to the instant matter have granted motions to re-open discovery for the limited purpose of verifying compliance with consent judgments.").

In subsequent contempt proceedings, Plaintiffs, as movants, would bear "the burden of establishing by clear and convincing evidence: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)); *see also Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 422 (5th Cir. 2013). Clear and convincing evidence is the "weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct, weighty and convincing as to enable fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotes omitted).

In exercising its inherent authority to enforce a consent judgment, a court may order additional equitable relief to ensure that provisions of the parties' agreement are not violated. *See, e.g.*, *Berger v. Heckler*, 771 F.2d 1556, 1568–69 (2d Cir. 1985). The Court "has the discretion— indeed, the duty— to take immediate action in a manner coextensive with the degree of ongoing and persistent harm." *Plata v. Schwarzenegger*, No. 01-1351, 2005 WL 2932243, at *8 (N.D. Cal. May 10, 2005).

### III.   Argument

#### a.   Transcripts of bail hearings since entry of the consent judgment show that Judge Cantrell has failed to abide by the terms of the Court's order.

A sampling of transcripts from pretrial detention hearings in the six months since entry of the consent judgment indicate that Judge Cantrell is not complying with the terms of the agreement. He continues to impose secured money bail on defendants who cannot afford it, without first making findings—by clear and convincing evidence—that nonfinancial conditions of release would be insufficient to ensure appearance at future proceedings or the public's safety.

A few examples are illustrative of the broader problem.  Soon after the Court issued the consent judgment, Judge Cantrell presided over the First Appearance Hearing of Timothy Sparkman on June 25, 2019. (Ex. 2.) Mr. Sparkman was alleged to have been in illegal possession of a stolen automobile. When Judge Cantrell asked the Assistant District Attorney if the state had any argument as to Mr. Sparkman's flight risk, the ADA responded, "Only, Judge, is that there's an out-of-state address in Florida. Other than that[,] there doesn't seem to be any concerns on the part of the State." (*Id.*) Judge Cantrell went on to ask, "How about with respect to community safety at this point?" The ADA answered, "I don't see anything to be concerned about, Your Honor." Mr. Sparkman's public defender argued for a release on recognizance. Judge Cantrell read into the record Mr. Sparkman's financial declaration, stating that he had earnings of $1,600 per

month and no other income. Finding that Sparkman was a flight risk, Judge Cantrell set Sparkman's bail at $1,500. Sparkman's public defender objected that Judge Cantrell made no findings as to why Sparkman would be a flight risk, apart from noting his out-of-state address. Sparkman's public defender further argued that this determination violated the consent judgment, "specifically the exact language on page three that's in the footnote about an out-of-state address not being sufficient to find clear and convincing evidence that somebody is a flight risk." (*Id.* at 29 (citing ECF No. 158 at 3 n.2).) Furthermore, Judge Cantrell did not make any findings as to why nonfinancial conditions of release would be insufficient to guard against a risk of flight, violating paragraph 5 of the consent judgment. Over the public defender's objection, Judge Cantrell required a $1,500 secured money bond for Sparkman's release.

On October 2, 2019, Judge Cantrell presided over the First Appearance Hearing of Miles Moran, who had allegedly shoplifted from a convenience store. (Ex. 3.) When Judge Cantrell asked the ADA whether he had any argument on safety or flight risk, the ADA replied only that Mr. Moran had a single misdemeanor conviction for shoplifting and had a Mississippi address on his license. (*Id.* at 3.) Mr. Moran's public defender countered that Moran had no failures to appear, and that he was currently a resident of New Orleans and was staying in a homeless shelter. (*Id.*) She requested that Moran be released on recognizance. Judge Cantrell ruled that Moran was a flight risk and danger to the community, presumably because "The cashier at Walgreen's says that he has been in there on several occasions and committed several thefts." (*Id.* at 4.) Judge Cantrell made no finding at all as to why Moran would have been a flight risk, much less one based upon clear and convincing evidence. Judge Cantrell read into the record a financial declaration from Mr. Moran, in which he represented that he was unemployed—having last worked nearly a year prior—and had no other income or assets. (*Id.* at 5.) Judge Cantrell required a $1,250 secured money bail for Mr. Moran's release. Critically, Judge Cantrell made

no factual findings as to why nonfinancial conditions of release, like pretrial services or a simple stay-away order from Walgreen's, were insufficient to safeguard the government's interest safety and future appearance at court.

Mr. Moran could not afford the money bail, and he remained incarcerated. So, the public defender's office moved for a bond reduction. At the hearing on that motion, two weeks after the first appearance hearing, Judge Cantrell denied Moran's request for a release on recognizance. Instead, he reduced the total bail amount to $300. The Assistant District Attorney provided no argument for why Mr. Moran's continued detention was necessary. He stated only, "I see one conviction from '17 from Mississippi, no failures to appear. I don't know what his current address situation is now." (Ex. 4 at 2.) Judge Cantrell made no finding as to flight risk, and no finding as to danger. He summarized the contents of the arrest warrant and noted that a store employee claimed that Mr. Moran had previously shoplifted from the store. Mr. Moran's counsel reiterated that he was indigent and "would be unable to afford any amount of bond." (*Id.* at 4.) His counsel further represented that she had secured a bed for Mr. Moran at Odyssey House, a residential addiction treatment program (*id.*), and that Mr. Moran was willing to participate in pretrial services (*id.* at 2). Judge Cantrell made no findings as to why pretrial services and rehabilitation would have been insufficient to ensure Mr. Moran's appearance or safeguard the public, thus violating the terms of the consent judgment.[2]

On October 25, 2019, Gerard Taylor appeared in Judge Cantrell's courtroom for his First Appearance hearing. Commissioner Albert Thibodeaux substituted for Magistrate Cantrell that

---

[2] Mr. Moran, who is also represented by undersigned counsel, has filed a class action in this Court against the judges of the Orleans Parish Criminal District Court, seeking a judgment declaring his rights in pretrial release determinations after the District Attorney's acceptance of charges and allotment to a section of court. *Moran v. Landrum-Johnson*, No. 2-19-cv-13553 (E.D. La. filed Nov. 11, 2019). That case has been allotted to Judge Barbier. In compliance with Local Rule 3, Mr. Moran filed a notice that his claims are related to those in the case at bar.

morning.  Mr. Taylor had been arrested on allegations that he had stolen scooters, a motorcycle, and a bicycle. Commissioner Thibodeaux neither inquired into Mr. Taylor's ability to pay a money bond nor considered nonfinancial conditions of release before ordering that Mr. Taylor be on a secured money bond of $2,000. (Ex. 5.) Mr. Taylor could not afford to pay this amount and remained imprisoned.

Mr. Taylor's public defender moved for a bond reduction and argued that motion on Nov. 18, 2019. Mr. Taylor's counsel argued that he was unable to afford the $2,000 money bail that had previously been set and, as a result, he had been jailed for nearly a month at that time. (Ex. 6 at 4.) Furthermore, she presented that Mr. Taylor had been accepted into the "La[A]rk Recovery Program." (*Id.* at 2.) Finally, Mr. Taylor's counsel argued that his Pretrial Service Report assessed him as, "a Risk Level Three, eligible for standard supervision. And factoring into that decision is the fact that he has zero prior incidents of failures to appear." (*Id.* at 3.)

The Assistant District Attorney merely read into the record past charges in other jurisdictions, (Ex. 6 at 2.) Judge Cantrell denied Taylor's request for release on recognizance after reading the arrest "gist" into the record and stating, "I think he's a danger to the community; four auto burglaries, auto thefts." (*Id.* at 4.) He maintained Mr. Taylor's $2,000 secured money bond. (*Id.* at 4.) Judge Cantrell did not make findings by clear and convincing evidence as to why the alternative conditions released proposed by the public defender, specifically an in-patient rehabilitation program and pretrial services, were insufficient to mitigate any danger to the community. In addition, the "clear and convincing evidence" relied upon by Judge Cantrell for a finding of dangerousness appears to be merely the alleged statutory crime. This is prohibited by the consent judgment: "The following factors, standing alone, cannot comprise clear and convincing evidence of dangerousness or flight risk:  (a) the statute for which the arrestee's alleged violation resulted in their arrest . . . ." (ECF No.

8

158 at 3 n.2.) Mr. Taylor has not been able to pay this $2,000 financial condition of release and remains imprisoned at the Orleans Justice Center as of the filing of this motion.[3]

> **b. Plaintiffs should be granted leave to conduct discovery because Judge Cantrell holds all relevant records through which Plaintiffs can meet their burden.**

Contempt of a federal court order is a serious matter, especially when it involves the fundamental rights the bodily liberty that this Court vindicated in its judgments in this case. Both Plaintiffs and this Court should have as complete and rigorous understanding as possible of the nature of Judge Cantrell's violations before considering appropriate relief.

The Court should grant Plaintiffs leave to conduct discovery because access to the audio recordings of the First Appearance Hearings is the most efficient and cost-effective means for Plaintiffs to gauge compliance with the consent judgment. First, while Plaintiffs disagree with Judge Cantrell's assertion that the recordings are not "public records" within the meaning of Louisiana's Public Records Law, challenging that designation through a mandamus action in state court will cost Plaintiffs considerable time and money.

Similarly, the process of requesting a transcript for each of Judge Cantrell's First Appearance Hearings will also be unnecessarily costly and time consuming, both for the Plaintiffs and the court reporters. This was, in part, the rationale behind Judge Cantrell's previous production of audio files to Plaintiffs earlier in this case.

---

[3] Mr. Taylor exhausted his state-court appeals of Judge Cantrell's denial of his bond-reduction, and he filed a habeas petition in this Court under § 2241 on January 8, 2020. *Taylor v. Gusman*, No. 2:20-cv-00062 (E.D. La. filed Jan. 8, 2020). His petition alleges that Judge Cantrell's conduct of his bond-reduction hearing violated his constitutional rights as declared by this Court. That case was allotted to Judge Vitter. Mr. Taylor filed the required Local Rule 3 statement, noting the relation between his constitutional claims and the claims advanced by the Plaintiff Class in the case at bar.

Mr. Taylor has also joined Mr. Moran's suit against the judges of the OPCDC as a putative representative plaintiff. *Moran v. Landrum-Johnson,* No. 2:19-cv-13553, ECF Nos. 10, 11 (Amended Complaint and Motion to join Plaintiff Miles Moran's Motion to Certify a Class Action).

The risk of continuing harm to class members counsels in favor of providing Plaintiffs with the quickest means of evaluating compliance with the consent judgment. Providing Plaintiffs with the requested audio recordings is the fastest way to achieve this goal. Furthermore, Plaintiffs have expended considerable resources, to date, in monitoring Judge Cantrell's pretrial detention practices. It is in the interests of justice that Judge Cantrell not unduly increase these costs by refusing to provide copies of existing audio of his hearings, which comes at minimal cost to him.

## IV.     Requested Relief

Plaintiffs ask this Court to order Judge Cantrell to show cause as to why he should not be held in contempt of the Court's consent judgment (ECF No. 158).  Plaintiffs also ask the Court to grant them leave to conduct discovery in aid of their motion, specifically a request for production of audio recordings of Judge Cantrell's First Appearance hearings from the entry of the consent judgment to present.  Once the Plaintiffs have reviewed this evidence and Judge Cantrell responds to the order to show cause, Plaintiffs will be in a position to advocate more specific relief tailored to the nature of the violations.

Respectfully submitted,

/s/ Eric A. Foley
Eric A. Foley, La. Bar No. 34199, T.A.
James W. Craig, La. Bar No. 33687
Roderick & Solange MacArthur Justice
Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
eric.foley@macarthurjustice.org
jim.craig@macarthurjustice.org

*Counsel for Plaintiffs*

/s/ Alec Karakatsanis
Alec Karakatsanis, D.C. Bar No. 999294
(admitted *pro hac vice*)
CIVIL RIGHTS CORPS
1601 Connecticut Avenue NW, 8th Floor
Washington, DC 20009
(202) 681-2409
alec@civilrightscorps.org