## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ADRIAN CALISTE and BRIAN
GISCLAIR, individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.

HARRY E. CANTRELL, Magistrate Judge
of Orleans Parish Criminal District Court,

      Defendant.

Case No. 2:17-cv-06197-EEF-MBN

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR INJUNCTIVE RELIEF

Plaintiffs move this Court for injunctive relief to ensure Judge Cantrell's compliance with the Court's declaratory judgment. Doc. 131 at 21. As explained below, Judge Cantrell has repeatedly violated this Court's declaratory judgment on Count Two of Plaintiffs' Complaint by requiring secured financial conditions of release despite his unconstitutional financial conflict of interest in the collection of the resulting bail bond fees. His violations of the declaratory judgement continue unabated even though the Fifth Circuit has upheld this Court's declaratory judgment and issued its mandate.

Judge Cantrell's failure to implement constitutional pretrial detention practices causes ongoing, irreparable injuries to the Plaintiff Class. Injunctive relief is now appropriate. *See* 28 U.S.C. § 2002 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A

declaratory judgment can . . . be used as a predicate to further relief, including an injunction." (citing § 2202)); *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 570 (5th Cir. 2005) ("This court has held that under § 2202, 'the prevailing party [in a declaratory judgment action] may seek further relief in the form of damages or an injunction.'").[1] Plaintiffs hereby request injunctive relief against Judge Cantrell. Furthermore, Plaintiffs seek leave to conduct additional discovery against Judge Cantrell and relevant third parties, including the Judicial Administrator of the Orleans Parish Criminal District Court, in order to produce evidence in support of this motion.

## I.     Factual and Procedural Background

### A.  This Court's Declaratory Judgment

On August 6, 2018, this Court granted summary judgment to the Plaintiff Class on both counts of their complaint.  On Plaintiffs' first claim, the Court issued a declaratory judgment that Judge Cantrell's bail practices violate Plaintiffs' equal protection and due process rights.  Doc. 131 at 21.  The Court's judgment stated:

> Evidence in the record demonstrates that Judge Cantrell's procedure does not include an inquiry into ability to pay or consideration of alternative conditions of release prior to his setting bail. . . .
>
> In the context of hearings to determine pretrial detention Due Process requires:
>
> 1) an inquiry into the arrestee's ability to pay, including notice of the importance of this issue and the ability to be heard on this issue;
>
> 2) consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release; and
>
> 3) representative counsel [at such hearings].

---

[1] 42 U.S.C. § 1983 bars injunctive relief *in the first instance* against a "judicial officer" acting in his "judicial capacity" but excepts cases, like this one, in which a declaratory decree has been violated.

Doc. 132 at 1–2.

As to Plaintiffs' second claim, this Court further issued "a declaratory judgment that Judge Cantrell's institutional incentives create a substantial and unconstitutional conflict of interest when he determines their ability to pay bail and sets the amount of that bail." *Id*.

Judge Cantrell subsequently appealed this Court's judgment, but only as to the second claim—Plaintiffs' separate challenge to his financial conflict of interest when determining conditions of pretrial release.  As Judge Cantrell explained to the Fifth Circuit: "Judge Cantrell accepts the Count I declaratory judgment regarding his bail procedures and has already instituted new bail procedures in response."  Appellant's Brief at 4, *Caliste v. Cantrell*, 18-30954, (5th Cir. Nov. 15, 2018).[2]

Plaintiffs subsequently filed a motion for injunctive relief pursuant to their first claim because of Judge Cantrell's noncompliance with the declaratory judgment.  *See* Docs. 138; 138-1.  The parties agreed on a consent decree requiring compliance with the substance of this Court's declaratory judgment on Count One, and this Court entered that injunction on June 13, 2019.  Doc. 158.

On August 29, 2019, the Fifth Circuit affirmed this Court's declaratory judgment on Plaintiffs' second claim regarding the financial conflict of interest.  The panel explained:

> [T]he Orleans Parish magistrate['s] dual role—the sole source of essential court funds and an appropriator of them—creates a direct, personal, and substantial interest in the outcome of decisions that would make the average judge vulnerable to the temptation . . . not to hold the balance nice, clear, and true.  The current arrangement pushes beyond what due process allows.

---

[2] Attached as Ex. 1.

*Caliste v. Cantrell*, No. 18-30954, Slip Op. at *12,  937 F.3d 525, 532 (5th Cir. Aug. 29, 2019)

(quotation and citation omitted).  Judge Cantrell sought rehearing en banc, which the Fifth

Circuit denied on October 1, 2019. The mandate issued on Oct. 9, 2019.

**B.  Judge Cantrell's Continued Imposition of Secured Financial Conditions**

Since this Court issued its declaratory judgment fifteen months ago, Judge Cantrell has

routinely and consistently required secured financial conditions of release in violation of this

Court's declaratory judgment.  He continues to do so on a daily basis. Monthly reporting by the

Orleans Criminal District Court's Pretrial Services demonstrates that in September 2019, 73% of

arrestees assessed by Pretrial Services had a secured financial condition of release imposed at

First Appearance.  *See* Ex. 2 at 2. And 71% of those assessed had a bond set at $500 or more. *Id.*

This report includes the results of First Appearance hearings conducted not only by Judge

Cantrell but also the Commissioners of the Magistrate section. Nonetheless, it is illustrative of

the degree to which the OPCDC continues to rely on secured money bond, despite this Court's

declaratory judgment. Indeed, a review of Judge Cantrell's First Appearance hearings over a

single week in November 2019 demonstrate Judge Cantrell's continuing use of secured money

bail. Ex. 3 (providing a sampling of the dockets in which secured money bails were set by Judge

Cantrell in First Appearance hearings from Nov. 18–22, 2019).

One recent example illustrates the continuing constitutional violations.  Class member

Miles Moran filed an emergency habeas petition after spending five weeks in jail following a

misdemeanor arrest alleging trespassing and shoplifting from Walgreen's.  *Moran v. Gusman*,

19-cv-13503 (E.D. La. filed Nov. 7, 2019).  Judge Cantrell initially required a secured financial

condition of release of $1,250.  At a subsequent hearing, he reduced the amount to $300, despite

uncontroverted evidence that Mr. Moran could not pay that amount either, and he did so without

making any of the inquiries or findings required by the Constitution or by this Court's previous consent decree.[3]

In a statutory amendment taking effect in August 2019, the Louisiana Legislature amended the statute that capped premiums that can be charged by commercial sureties. 2019 La. Sess. Law Serv. Act 54 (S.B. 108) (WEST). The amendment added this language to the law: "Notwithstanding any provision of law to the contrary, in no parish covered by the provisions of this Subsection shall the fee provided for in R.S. 22:822 be more than two dollars for each one hundred dollars['] worth of liability underwritten by the commercial surety. commercial surety fee." If enforced, this would negate the additional 1% fee that the Orleans Parish Criminal District Court had been allowed to collect for the commercial surety licensing fee. *See* La. R.S. § 22:822(A)(2) ("In the parish of Orleans, the fee shall be equal to three dollars for each one hundred dollars['] worth of liability underwritten….") Since Aug. 1, 2019, the OPCDC presumably has received a fee equal to 0.8% of every commercial surety bond issued in Orleans Parish. Applying this decrease to the OPCDC's revenue for 2017, the amount in bond fees collected would have dropped from $839,006 to $372,519. (*See* ECF No. 116-2 at 9 (presenting a table of the OPCDC's bond fee revenue as a percentage of the JEF.) Yet in that scenario, the bond fee would have accounted for 9% of OPCDC's operating budget through that year.

---

[3] Notably, when Mr. Moran's detention order was brought before this Court on his petition for a writ of habeas corpus, the Orleans Parish District Attorney's Office refused the charges against him. *Moran v. Gusman*, No. 19-cv-13503-EEF-MBN, ECF No. 13-1 (E.D. La. filed Nov. 20, 2019). Instead the District Attorney charged Mr. Moran in municipal court for violations of city ordinances, resulting in Mr. Moran's release without any satisfaction of financial conditions.

## II.     Argument

The Plaintiff Class suffers irreparable injury on a daily basis because of Judge Cantrell's unconstitutional financial conflict of interest in requiring secured financial conditions of pretrial release, and injunctive relief is needed to protect their fundamental constitutional rights.

In this case, Plaintiffs followed the dictates of Section 1983 by first seeking declaratory relief.  *See* 42 U.S.C. § 1983 (barring injunctive relief *in the first instance* against a "judicial officer" acting in his "judicial capacity" but providing for injunctive relief in cases, like this one, in which a declaratory decree has been violated).  As the Fifth Circuit panel explained, this approach gives "state and local officials, like Judge Cantrell, the first crack at reforming their practices to conform to the Constitution."  *Caliste*, Slip Op. at *13.

Because Judge Cantrell has continued requiring secured financial conditions of release, and because state law still requires that the money from those conditions be deposited in the Judicial Expense Fund that finances his court, he has failed to conform his practices to the Constitution in light of this Court's declaratory judgment.  This Court should now order him to do so, as the equitable requirements for injunctive relief are easily satisfied here.

### A.  Judge Cantrell's Use of Secured Money Bail Causes Irreparable Injury to the Plaintiff Class.

The violation of a constitutional right is an "irreparable injury as a matter of law." *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507, 515 (M.D. La. 2001) (citing *Elrod v. Burns*, 427 U.S. 347 (1976)); *see also* 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary."). Here, class members have a due process right to pretrial release determinations that are free of financial conflicts of

interest. Doc. 132; *Caliste*, 937 F.3d at 532. The OPCDC continues to receive a percentage fee on every commercial surety bond in Orleans Parish. And this fee represents a substantial part of the court's budget. Judge Cantrell's continued use of secured money bail therefore violates the class members' due process rights—an irreparable harm.

But the violation of a Constitutional right is not the only harm that results from the continued use of secured money bail. Judge Cantrell's noncompliance with this Court's declaratory judgment and subsequent consent judgment on Count I regularly causes class members to be unconstitutionally deprived of liberty. *See* Pls.' Mot. for Disc. and Rule to Show Cause Why Def. Cantrell Should Not be Held in Contempt, Doc. 160. The OPCDC's continuing receipt of a percentage fee on bonds provides an ongoing temptation for the average person as a judge to ignore constitutional standards in determining conditions of pretrial release. A temptation therefore exists to default to financial conditions of release, regardless of a person's ability to immediately pay that amount. So, the harm caused by the financial conflict of interest includes the deprivation of pretrial liberty. Multiple courts have found unconstitutional deprivations of pretrial liberty to be irreparable injuries that call for injunctive relief. *See McNeil v. Cmty. Probation Servs., LLC*, No. 1:18-CV-00033, 2019 WL 633012, at *16 (M.D. Tenn. Feb. 14, 2019); *Schultz v. Alabama*, 330 F. Supp. 3d 1344, 1374 (N.D. Ala. 2018); Preliminary Injunction Order, *Schultz v. Alabama*, No. 5:17-cv-00270-MHH, ECF No. 164 (N.D. Ala. Sept. 13, 2018); *ODonnell v. Harris Cnty., Tex.*, 251 F. Supp. 3d 1052, 1157–58 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018); *Rodriguez v. Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758, 771 (M.D. Tenn. 2015); *Cooper v. City of Dothan*, No. 1:15-CV-425-WKW[WO], 2015 WL 10013003 (M.D. Ala. June 18, 2015) (granting temporary restraining order).  Indeed, this Court has already issued a consent decree in this case requiring Judge

Cantrell's compliance with other requirements of the Fourteenth Amendment's Equal Protection and Due Process Clauses. *See* Doc. 158.

For indigent people in the Plaintiff class, Judge Cantrell's use of secured financial conditions results in their confinement to a jail cell. Imprisoning a person in a jail cell in violation of her constitutional rights inflicts irreparable harm on her body and mind. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

Even one additional night in jail is a harm to a person that cannot be later undone. *See, e.g.*, *United States v. Bogle*, 855 F.2d 707, 710–11 (11th Cir. 1988) (holding that the "unnecessary deprivation of liberty clearly constitutes irreparable harm"); *Wanatee v. Ault*, 120 F. Supp. 2d 784, 789 (N.D. Iowa 2000) ("[U]nconstitutional incarceration generally constitutes irreparable harm to the person in such custody."); *SEC v. Bankers Alliance Corp.*, No. 95-0428, 1995 WL 317586, *3 (D.D.C. 1995) ("As for the question of irreparable harm in the absence of a stay, clearly Mr. Lee will be harmed by being incarcerated."); *Lake v. Speziale*, 580 F. Supp. 1318, 1335 (D. Conn. 1984) (granting preliminary injunction requiring court to inform child support debtors of their right to counsel because unlawful incarceration would be irreparable harm); *Cobb v. Green*, 574 F. Supp. 256, 262 (W.D. Mich. 1983) ("There is no adequate remedy at law for a deprivation of one's physical liberty. Thus the Court finds the harm asserted by plaintiff is substantial and irreparable.").

Even a few days in jail can have devastating consequences in a person's life, such as the loss of a job or the inability to arrange safe alternate care for minor children.[4]  It also exposes arrestees to the risk of medical and safety emergencies prevalent in the Orleans Justice Center.[5]

### B.  There Is No Adequate Remedy at Law for the Loss of Liberty and Imposition of Imprisonment Suffered by the Plaintiff Class.

This ongoing violation of constitutional rights presents a quintessentially equitable case under § 1983.  No remedy at law can redress the harms that result from subjecting Plaintiffs to an impartial tribunal or to some of the attendant effects, including orders of pretrial conditions that lack sufficient integrity and the imprisonment of indigent Plaintiffs; that is the very meaning of "irreparable injury."  Moreover, the doctrine of absolute judicial immunity may preclude the standard remedy of damages against Judge Cantrell by the Plaintiff class.

---

[4] Recent scholarship details the multiple deleterious effects of pretrial detention.  *See* Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J.L. Econ. & Org. 511 (2018), available at https://academic.oup.com/jleo/article/34/4/511/5100740#124816631; Dobbie Will, et al., *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108 Am. Econ. Rev. 201 (2018); Paul Heaton, et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stanford L. Rev. 711 (2017) (finding that misdemeanor pretrial defendants detained in Harris County, Texas, were 25% more likely to plead guilty, 43% more likely to be sentenced to jail, and had sentences more than twice as long as those defendants who were released pretrial); Emily Leslie & Nolan G. Pope, *The Unintended Impact of Pretrial Detention on Case Outcomes: Evidence from New York City Arraignments*, 60 J.L. & Econ. 529 (2017); Arpit Gupta, et al., *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 45 J. Legal Stud. 471, 472, 487 (2016) (finding a 12% increase in the likelihood of conviction when money bail is imposed); *The Hidden Costs of Pretrial Detention* at 3, 19 (Nov. 2013), available at http://www.pretrial.org/download/research/ The%20Hidden%20Costs%20of%20Pretrial%20Detention%20-%20LJAF%202013.pdf (studying 153,407 defendants and finding that "when held 2–3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Arnold Foundation, *Pretrial Criminal Justice Research Summary* 5 (2013), *available at*: http://www.arnoldfoundation.org/sites/default/files/ pdf/LJAF-Pretrial-CJ-Research-brief_FNL.pdf (finding that "low-risk defendants held 2–3 days were 17 percent more likely to commit another crime within two years" and that those detained "4–7 days yielded a 35 percent increase in re-offense rates.").

[5] *See Jones v. Gusman*, 296 F.R.D. 416 (E.D. La. 2013) (approving consent judgment to remedy unconstitutional conditions of confinement in Orleans Parish Prison, addressing rapes, beatings and a lack of healthcare leading to suicides and deaths); Report No. 9 of the Independent Monitors, Aug. 29, 2018, *Jones v. Gusman*, No. 2:12-cv-00859, ECF No. 1188 at 1 (E.D. LA. Aug. 29, 2018) ("Based on objective review of data, the facility has shown improvement in inmate and staff safety, *but still remains critically unsafe for inmates and staff*." (emphasis added)).

**C.  Any Hardship to Judge Cantrell Is Outweighed by the Harm to Plaintiff Class from the Continued Use of Unconstitutional Bail Hearings.**

Judge Cantrell will not suffer any hardship by refraining from imposing secured financial conditions of release so long as the structural financial conflict of interest created by the relevant statutes persists.  To the extent that conducting bail hearings that comply with the Constitution may cause Judge Cantrell and his court to incur greater financial burdens, this is insufficient justification to continue violating Plaintiffs' due process rights.  *See Smith v. Sullivan*, 611 F.2d 1039, 1043–44 (5th Cir. 1980) ("It is well established that inadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement, nor will an allegedly contrary duty at state law."); *Jones v. Gusman*, 296 F.R.D. 416, 458 (E.D. La. 2013); *Advocacy Ctr. for the Elderly and Disabled v. La. Dep't. of Health and Hosps.*, 731 F. Supp. 2d 603, 626 (E.D. La. 2010) ("A state's constitutional duties toward those involuntarily confined in its facilities does not wax and wane based on the state budget.").  The harm to Plaintiffs, by contrast, is an ongoing deprivation of fundamental pretrial liberty.

Moreover, while Judge Cantrell awaits a legislative remedy to remove the structural conflict linking secured financial conditions to the Judicial Expense Fund, he and the other judges remain free to seek other sources of funding for their court.

**D.  An Injunction Is in the Public Interest.**

The vindication of constitutional rights is always in the public interest.  *See Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (holding that injunction preventing implementation of unconstitutional statute would serve the public interest); *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 93 (5th Cir. 1992) (holding that "the public interest is always served when public officials act within the bounds of the law and respect the rights of the citizens they serve"); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)

("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotations omitted)); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

## III.    Requested Relief

Plaintiffs ask this Court to order Judge Cantrell to follow the terms of its Declaratory Judgment.  Specifically, they ask the Court to order Judge Cantrell not to require a secured financial condition of pretrial release so long as state law provides for a portion of fees paid based on that financial condition to be deposited into a Judicial Expense Fund whose statutory function is to fund the operations of Judge Cantrell's court. Plaintiffs also seek leave to conduct discovery on the collection and disposition of the commercial surety licensing fee.

Respectfully submitted,

| | |
|---|---|
| */s/ Eric A. Foley* | */s/ Alec Karakatsanis* |
| Eric A. Foley, La. Bar No. 34199, T.A. | Alec Karakatsanis, D.C. Bar No. 999294 |
| James W. Craig, La. Bar No. 33687 | (admitted *pro hac vice*) |
| Roderick & Solange MacArthur Justice Center | CIVIL RIGHTS CORPS |
| 4400 S. Carrollton Ave. | 1601 Connecticut Avenue NW, 8th Floor |
| New Orleans, La 70119 | Washington, DC 20009 |
| (504) 620-2259 (p) | (202) 681-2409 |
| (504) 208-3133 (f) | alec@civilrightscorps.org |
| eric.foley@macarthurjustice.org | |
| jim.craig@macarthurjustice.org | |

*Counsel for Plaintiffs*