UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADRIAN CALISTE AND BRIAN GISCLAIR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>v.<br><br>HARRY E. CANTRELL, MAGISTRATE JUDGE OF ORLEANS PARISH CRIMINAL DISTRICT COURT | CIVIL ACTION NO. 17-6197<br><br>(CLASS ACTION)<br><br>JUDGE FALLON<br><br>MAGISTRATE NORTH |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY AND RULE TO SHOW CAUSE WHY DEFENDANT CANTRELL SHOULD NOT BE HELD IN CONTEMPT**

**MAY IT PLEASE THE COURT:**

This memorandum is submitted by defendant, Magistrate Judge Harry E. Cantrell, in opposition to Plaintiffs' Motion for Discovery and Rule to Show Cause Why Defendant Cantrell Should Not Be Held In Contempt. For the several reasons discussed herein, Judge Cantrell submits that Plaintiffs' motion should be denied.

Preliminarily, it is important for this Court to understand the context underlying the parties' agreement to the June 13, 2019 Consent Order. *See* R. Doc. 158. Despite Plaintiffs' portrayal of the consent order, both in court and in the media, as something that they single-handedly drafted and forced upon Judge Cantrell, it was, in fact, the product of long and diligent work by **both** parties with the goal of agreeing upon a specific bail procedure that both parties agreed complied with the broader language of this Court's August 16, 2018 Declaratory Judgment. *See* R. Doc. 132. The parties began working on a mutually agreeable bail protocol in

March 2018 and reached an agreement on the final language that appeared in the consent order after months of revising and exchanging numerous drafts via email and at in-person meetings between counsel. The consistent portrayal of Judge Cantrell as someone who is ignoring judgments and orders of this Court is false. He has always expressed a willingness to comply with the Court's orders and a desire to work with Plaintiffs' counsel to address their never-ending complaints.[1] With this motion, it is clear that Plaintiffs' counsel will not stop until Judge Cantrell releases all Orleans Parish criminal court defendants without any money bail whatsoever.

## I. Plaintiffs' Requests for the Court Reporters' Audio Files is Unreasonable

Regarding Plaintiffs' request that they be allowed access to the court reporter's audio files for all of Judge Cantrell's hearings, this request is unreasonable. Audio recordings are tools that the court reporters use to ensure accuracy of the court transcripts. The transcripts constitute the official record of court proceedings and are readily available to Plaintiffs upon request. Plaintiffs initially complained that the turnaround on their transcript requests was too long, so Judge Cantrell spoke with his court reporters to ensure speedy production of any transcripts requested by Plaintiffs' counsel. Additionally, counsel for Judge Cantrell explained to Plaintiffs' counsel why the Court could not provide blanket access to audio recordings and again expressed a willingness to ensure that any requested transcripts are prepared on an expedited basis. *See* Exhibit 1.

## II. Judge Cantrell is Complying with the Court's Consent Order.

While Judge Cantrell undertook the work of developing a new protocol with the sincere goal of improving first appearance hearings in his courtroom, Plaintiffs seemingly agreed to the

---

[1] Judge Cantrell began revising his bail protocol even before this court entered its declaratory judgment and has continually worked to improve his bail protocol. *See* Doc. 121-1 at 7-8.

consent order for the sole purpose of setting a trap for Judge Cantrell, waiting and hoping for him to make any mistake that might support a motion for contempt. Since the entry of the consent order in June 2019, Judge Cantrell has conducted hundreds of bail hearings. In that time, Plaintiffs' counsel have been diligently searching for evidence that Judge Cantrell is not complying with the consent order. They claim to have conducted a "sampling" of Judge Cantrell's first appearance hearings, but they give no information or data regarding their alleged "sample." *See* R. Doc. 161 at 5. Instead, they have engaged in obvious cherry-picking, requesting hearing transcripts for very specific criminal defendants, presumably following ongoing monitoring of Judge Cantrell's first appearance hearings through personal observation and consultation with the public defenders present daily in Judge Cantrell's courtroom. And now, they present to the court their only and strongest proof, three first appearance transcripts, none of which demonstrate any violation of the consent order.

**A. Timothy Sparkman: The record supports Judge Cantrell's finding that the defendant was a flight risk.**

First, Plaintiffs argue that "Judge Cantrell made no findings as to why Sparkman would be a flight risk, apart from noting his out-of-state address," which they further argue violated the footnote in the consent order stating that "the location of the arrestee's primary residence cannot "standing alone . . . comprise clear and convincing evidence of . . . flight risk." *Id*. at 6; R. Doc. 158 at 3, fn. 1. However, a reading of the entire transcript reveals that Judge Cantrell based his flight risk finding on more than the defendant's primary residence.

> THE COURT:
> I find that the defendant is a flight risk based upon the following reasons. He indicated to the court upon questioning regarding indigency that **he did in fact work for a company in Florida. He has listed on his arrest register an address of 1343 Bulls Bay**

> **(spelled phonetically) Highway, Jacksonville, Florida. Also, again his employer is in Jacksonville, Florida.** The allegation in the gist indicates that the officer conducted a traffic stop of a vehicle at the intersection of Simon Bolivar and Philip Street by activating the overhead lights and sirens of the NOPD unit, which signaled the driver of the vehicle later identified as Mr. Timothy Sparkman to pull to the shoulder of the roadway and Mr. Sparkman complied. While conducting his traffic stop the Officer conducted a license plate check of the vehicle, **Florida license plate bearing the number PG806C, and discovered that the license plate of the vehicle was listed as stolen.**

R. Doc. 160-4 at 6. Judge Cantrell explained that the defendant, (1) had a registered address in Florida, *and* (2) is employed in Florida by a Florida company, *and* (3) stole a vehicle with a Florida license plate. *Id*. Other than threaten Judge Cantrell with a footnote in the consent order, the public defender put forth no evidence that the defendant had even minimal or tenuous ties to New Orleans or Louisiana. *See generally Id*. The record before Judge Cantrell at Sparkman's First Appearance indicated that this Florida resident who worked in Florida and stole a Florida vehicle was arrested as he happened to be travelling through New Orleans. There is more than enough evidence in the record for Judge Cantrell to have exercised his judicial discretion to find that this defendant was a flight risk.

Next, plaintiffs argue that "Judge Cantrell did not make any findings as to why nonfinancial conditions of release would be insufficient to guard against a risk of flight, violating paragraph 5 of the consent judgment . . . [and] [o]ver the public defender's objection, Judge Cantrell required a $1,500 secured money bond for Sparkman's release." R. Doc. 161 at 6. Plaintiffs' accusation that Judge Cantrell violated Paragraph 5 of the consent order fails because there is no evidence that Sparkman could not afford to pay the $1,500 bail that Judge Cantrell set, a condition precedent to the requirement in paragraph 5. Paragraph 5 states:

{01023786 - v1}    4

> *If* the person cannot pay the financial condition that the court determines necessary, *then* the court must explain by clear and convincing evidence on the record why the government has demonstrated that no other alternative conditions of release are sufficient to reasonably guard against the person's flight from prosecution or to reasonably ensure the safety of the community during the pretrial period.

R. Doc. 158 at 3 (emphasis added). Following his finding that Sparkman was a flight risk, Judge Cantrell then considered the defendant's ability to pay bail before determining the amount of bail required to ensure his appearance in court for future criminal proceedings, noting that:

> I have before me a financial declaration that was completed by Mr. Sparkman, which indicates that he's employed at ABC Yard, that he earns $1600 per month, that he's not married, that he has no other sources of income, he does not receive public assistance, does not have any cash on hand, does not own any real estate, stocks, bonds or automobiles, also furnishings. He's single, he did not list any debts. Is there anything additional with respect to his ability to pay, State?
>
> MR. HENN:
> No.
>
> THE COURT:
> Public Defender, anything additional?
>
> MS. GARVEY:
> No.

R. Doc. 160-4 at 8. Judge Cantrell then set a bail at $1,500, well within Sparkman's ability to pay. *See Id*. at 10. We note that Judge Cantrell liberally appoints public defenders to criminal defendants appearing in his court for first appearances, so the mere fact that he was appointed a public defender does not indicate that he was unable to pay the bail set after Judge Cantrell specifically considered his ability to pay. Indeed, the public defender representing Sparkman never indicated to the court that the defendant could not afford the bail set nor did she propose a reduced bail amount or object to the amount of the bail set. *See Id*. The only objection she made

{01023786 - v1}  5

was to express her disagreement with Judge Cantrell's flight risk finding. *See* R. Doc. 160-4 at 10 As a result, Judge Cantrell was not even required to consider alternative conditions of release according to paragraph 5 of the consent order.

Nevertheless, Judge Cantrell still explored whether there was an alternative condition of release available. He inquired about whether the defendant had any property to use to secure a bond, which the public defender indicated that he did not. *Id*. at 7. In response to Judge Cantrell's inquiry to the public defender regarding any alternative conditions she might propose, the public defender again repeated her disagreement with Judge Cantrell's flight risk finding and suggested releasing him on his own recognizance. *Id*. at 7.

> Does he have any property that he can use to secure this bond?
>
> MS. GARVEY:
> No.
>
> THE COURT:
> Do you have any recommendations, Public Defender, for alternative conditions of release that you would propose to the court at this time?
>
> MS. GARVEY:
> No, Judge. I ask that he be released on his own recognizance. There's nothing that the court has put on the record to indicate that he is a flight risk. An out-of-state address is very specifically and directly mentioned on page three of the Caliste order as not being grounds to find flight risk.

*Id*. at 7.

Judge Cantrell understands that other courts, including this federal court, may have more resources at their disposal presenting additional alternative conditions of release. But as expressed both to this Court and to Plaintiffs' counsel, the Orleans Parish Criminal District Court does not have many viable alternative conditions of release available to it. In prior discussions between

counsel addressing this very specific difficulty regarding alternative conditions of relief (and searching for solutions and suggestions), Plaintiffs' counsel have suggested that Judge Cantrell does not only have to consider alternative conditions actually available, but that he must ask whether there is any possible alternative condition in the world that might mitigate the defendants' danger to the community or flight risk. Judge Cantrell can only respond to this impractical suggestion to point out that the alternative condition considered must, according to paragraph 3 of the consent order, actually satisfy his concerns for danger or flight risk, something that a hypothetically possible alternative condition not available to his court would never do. *See* R. Doc. 158 at 2.

In Sparkman's case, the record supports Judge Cantrell's finding that by clear and convincing evidence there was no alternative non-financial condition of release that would satisfy his concern that this transient defendant was a flight risk.

**B. Miles Moran: The record supports Judge Cantrell's finding that the defendant was a danger to the community and a flight risk.**

Plaintiffs dispute Judge Cantrell's findings that Miles Moran was a flight risk and a danger to the community. They presume that Judge Cantrell made these finding purely because, "[t]he cashier at Walgreen's says that he has been in there on several occasions and committed several thefts." R. Doc. 160-1 at 6. However, neither Plaintiffs nor this Court need to presume why Judge Cantrell found this defendant to be a flight risk and danger because the hearing transcript and record in the case explain why this defendant was both.

First, regarding Judge Cantrell's finding that Moran was a flight risk, the hearing transcript reveals that he had a Mississippi address and no community ties other than his recent residence in a shelter on Canal Street.

> THE COURT:
> He's got a Bay St. Louis address.
>
> MS. DUNN:
> I know, Judge, and that's what I was going to address because I know that probably would be one of your concerns, that he is now in New Orleans.
>
> THE COURT:
> Does he have any other community ties?
>
> MS. DUNN:
> Judge, he's currently in a shelter on Canal Street, residing in New Orleans.
>
> * * *
>
> THE COURT:
> Let me hear from the Public Defender, flight risk and community safety.
>
> MS. DUNN:
> Judge, I would argue that he doesn't have any felony convictions. His assessment report is only showing one misdemeanor from 2017, no failures to appear, and as Mr. Moran stated he is staying in a shelter here in New Orleans and has been in New Orleans for the past few months.

R. Doc. 160-5 at 2-3. Judge Cantrell exercised his Judicial discretion to find that a defendant with an out-of-state address *and* no ties to the community other than being in New Orleans a few months and recently taking up residence in a homeless shelter was a flight risk, and his finding is supported by and explained on the record.

Regarding his finding that Moran was a danger to the community, Judge Cantrell consulted Moran's criminal record and expressed that he was a repeat offender, committing several thefts in the same store, a concern that he felt presented a danger to both the store clerk and the public in general. *See generally Id*. Indeed, Moran does not appear to be deterred by arrest

or prosecution. Prior to his October 1, 2019 arrests for unauthorized entry and theft, Moran's criminal record shows a prior history of theft and battery in September 2019, indicating not only that he is an undeterred repeat offender, but also that he is capable of violence in conjunction with his recurring theft. *See* Exhibit 2. The record supports Judge Cantrell's concern that Moran was likely to commit the same crime against the same victim with the potential that the severity of his crimes might escalate to the level of battery and finding that Moran was a danger to the community.

The New Orleans community does not have to look long or hard to identify safety threats posed by repeat offenders. On December 10, 2019, a defendant reportedly out on bond for criminal trespass and criminal damage was detained for second-degree murder after stabbing someone at Walmart. *See* Exhibit 3. And on January 8, 2020, a "habitual offender" in the process of stealing an automobile attempted to run over an officer, which led to gunfire, school lockdowns, warnings for residents to stay indoors, and cordoning off of large sections of Lakeview with attendant searches for suspects conducted by helmeted, flak-jacketed SWAT teams carrying automatic weapons. *See* Exhibit 4.

Regarding Plaintiffs' "critical" complaint that "Judge Cantrell made no factual findings as to why nonfinancial conditions of release, like pretrial services or a simple stay-away order from Walgreen's, were insufficient to safeguard the government's interest safety and future appearance at court," we again note that paragraph 5 of the consent order requires Judge Cantrell to explain why no alternative conditions of release are available ***only if***, ***after*** considering the defendants ability to pay and setting bail, there is some indication that the defendant cannot afford the bail set. R. Doc. 160-1 at 6-7; *see* R. Doc.158 at 3. And once again, the record is devoid of any valid objection to the amount of bail set, here $500 for theft and $750 for unauthorized entry. *See* R.

{01023786 - v1}	9

Doc. 160-5 at 6-7. In fact, after the Court clarified for the public defender that the bail for unauthorized entry was $750 and not $7,050, the public defender withdrew her objection to the bail set at the first appearance hearing.

> [O]n the theft we will set that at $500 and on the unauthorized entry of an inhabited dwelling - excused me, unauthorized entry of a business we'll set that at $750.
>
> MS. DUNN:
> Judge, I'd ask that you note my objection for the record.
>
> THE COURT:
> All right.
>
> MS. DUNN:
> You said 700 and -
>
> THE COURT:
> $750.
>
> MS. DUNN:
>  Oh, I thought you said seven thousand. I'm sorry.
>
> THE COURT:
> okay. so you don't have an objection?
>
> MS. DUNN:
> No, sir. withdraw the objection.
>
> THE COURT:
> Okay.

R. Doc. 160-5 at 6-7. Nevertheless, as in the Sparkman case, Judge Cantrell still explored alternative conditions of release before setting the bail:

> THE COURT:
> Public Defender, does he have any property that he can use to make a bond?
>
> MS. DUNN:
> No, sir.
>
> THE COURT:

>Do you have any recommendations to alternative conditions of release?
>
>MS. DUNN:
>Judge, I proposed one for the court earlier. Other than that, no other alternative conditions. The ROR.

R. Doc. 160-5 at 4-5.

For the first time, at the defendant's bond reduction hearing on October 15, 2019, Judge Cantrell heard an assertion that the defendant could not pay the $500 and $750 bail amounts previously set. *See* R. Doc. 160-6. He considered the public defender's new assertions first that "we are working currently to secure treatment for him through social work services at my office" then later that "we do have a bed for him tomorrow at Odyssey House." R. Doc. 160-5 at 2, 4. He also considered new details about how the defendant was not only arrested for the same prior crime against the same victim but that, according to the victim, he allegedly committed the same crime ***multiple*** times on the day of his arrest, but was only caught on video once. *See Id*. at 2-3. In light of this new evidence and considering that Moran was still detained, Judge Cantrell reduced his bail to $300 total. *Id*. at 4.

Though the public defender objected to the reduced bail amount, claiming that Moran was unable to pay it, the record shows that Moran must have posted bail because he was out of jail in time to get arrested for criminal damage to property on November 26, 2018, and for criminal trespass and disturbing the peace on January 6, 2020, and for criminal trespass and theft on January 8, 2020, and for criminal trespass and theft on January 20, 2020. *See* Exhibit 2.

### C. Gerard Taylor: The record supports Judge Cantrell's decision not to reduce the bail amount previously determined by a commissioner.

Judge Cantrell first encountered defendant Gerard Taylor at a bond reduction hearing at which the public defender requested that Judge Cantrell reduce Taylor's $2,000 bond, which was initially determined by Commissioner Thibodaux. *See* R. Doc. 160-8; *see also* R. Doc. 160-7. The transcript reflects that Judge Cantrell believed at the bond reduction hearing that he initially set Taylor's bond, and the public defender confirmed Judge Cantrell's mistaken belief. *See* R. Doc. 160-8 at 2.

> THE COURT:
>
> He has four counts of theft of a motor vehicle. I set the bond at $500 on each one.
>
> MS. JENNINGS:
>
> Yes, your Honor, and he still hasn't been able to bond out.

R. Doc. 160-8 at 2.

Plaintiffs complain about the protocol used by the Commissioner at the bond determination hearing, but this complaint does not concern Judge Cantrell. *See* R. Doc. 160-1 at 7-8. In fact, at the bond reduction hearing, Judge Cantrell was asked to consider one new proposed condition of release, not reconsider facts and arguments made at the initial bond determination, which Judge Cantrell believed he presided over using the bond protocol in the consent order. *See generally* R. Doc. 160-8. The public defender requested that Taylor be released to the LaArk Drug and Alcohol Addition Treatment Program but did not complain to Judge Cantrell about the protocol used by the commissioner at the initial bond determination. *Id.* Nor

was there any objection at the first appearance hearing to the initial bail amount. *See generally* R. Doc. 160-7.

Judge Cantrell properly considered the public defender's new request for release on recognizance and the record supports his use of judicial discretion to deny that request. We note that the Louisiana Fourth Circuit Court of Appeals denied Taylor's writ challenging Judge Cantrell's decision. *See* Exhibit 5. The Pretrial Services Report, which is part of the record and electronically available to the Court, revealed that Taylor was arrested for four counts of theft of a motor vehicle occurring on four separate dates. *See* Exhibit 6. In also revealed that Taylor had seven prior convictions from three separate states, including: (1) disorderly conduct from North Carolina on January 17, 2013, (2) breaking and entering/larceny from North Carolina on April 30, 2013, (3) second-degree trespass from North Carolina on December 3, 2013, (4) second-degree trespass from North Carolina on July 3, 2014, (5) assault and battery from North Carolina on September 3, 2014, (6) assault causing bodily injury to a family member from Texas on June 21, 2016, and (7) pandering from Jefferson Parish from July 6, 2017. *Id*. It further noted that the defendant had additional arrests in Georgia and North Carolina with an unknown disposition. *Id*. Plaintiffs' claim that the basis for Judge Cantrell's finding that the defendant was a danger to the community, "appears to be merely the alleged statutory crime." R. Doc. 160-1 at 8. But again, a reading of the transcript reveals that Judge Cantrell's finding was based upon information concerning the defendant's criminal history, specifically noting recent assault and battery convictions from 2014 and 2016, and the circumstances surrounding Taylor's pending charges. *See* R. Doc. 160-8.

Plaintiffs also complain that, "Judge Cantrell did not make findings by clear and convincing evidence as to why the alternative conditions released proposed by the public

{01023786 - v1} 13

defender, specifically an in-patient rehabilitation program and pretrial services, were insufficient to mitigate any danger to the community." *Id*. Judge Cantrell's response to this allegation is two-fold.

First, the pre-trial services report was available to the Court for Taylor's initial bond determination and the availability of pre-trial services was not a new circumstance being proposed as a reason for the requested bond reduction. Judge Cantrell is entitled to, and must for the sake of judicial efficiency, rely upon the previous findings of the court during the initial bail determination, especially when, as here, there was no objection to the bail at the initial setting nor any complaint to Judge Cantrell at the bond reduction hearing that the initial bail determination was improperly conducted.

Second, the only new consideration for Judge Cantrell was the public defender's proposal that the defendant be released on his own recognizance to the LaArk recovery program. However, as the record reflects, this was not an alternative condition to release at all, because the defendant would have been immediately picked up by Jefferson Parish for an outstanding warrant, not released to LaArk. R. Doc. 160-8 at 2. In addition, Judge Cantrell notes that while he does release some defendants on their own recognizance to the LaArk program, Taylor was not facing any drug or alcohol-related charges nor does the record reflect any history of drug or alcohol addiction.

## CONCLUSION

"The movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). For the

{01023786 - v1}                                   14

reasons discussed herein, Plaintiffs cannot meet their burden of proving that Judge Cantrell failed to comply with any order of this Court. As such, Judge Cantrell respectfully requests that this Court deny Plaintiffs' Motion for Discovery and Rule to Show Cause Why Defendant Cantrell Should Not Be Held In Contempt.

Respectfully submitted,

/s/ Mindy Nunez Duffourc

**Burglass and Tankersley, LLC**
Dennis J. Phayer (#10408)
dphayer@burglass.com
Mindy Nunez Duffourc (#33618)
mnunezduffourc@burglass.com
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0412
Fax: (504) 287-0452
Attorneys for Magistrate Judge Harry E. Cantrell

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of January, 2020, a copy of the foregoing pleading has been forwarded to all counsel of record via CM/ECF filing through the United States District Court system, email and/or United States Mail.

/s/ Mindy Nunez Duffourc