# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ADRIAN CALISTE ET AL | * | CIVIL ACTION |
| versus | * | No. 17-6197 |
| HARRY E. CANTRELL | * | SECTION "L" (5) |

## ORDER & REASONS

Before the Court is a Motion for Discovery and Rule to Show Cause Why Defendant Cantrell Should Not be Held in Contempt filed by Plaintiffs Adrian Caliste and Brian Gisclair. R. Docs. 160, 160-1. Considering the parties' arguments and the applicable law, the Court now rules as follows.

## I. BACKGROUND

On June 27, 2017, Adrian Caliste and Brian Gisclair filed suit against one Orleans Criminal District Court Judge: Magistrate Judge Harry Cantrell. This case arose from Defendant Magistrate Judge Cantrell's practice of imposing unreasonably expensive secured financial conditions of release upon arrestees without inquiring about their ability to pay. R. Doc. 1 at 1. Plaintiffs were two criminal defendants of the Orleans Parish Sheriff's Office. R. Doc. 1 at 2-3. Defendant Harry Cantrell, was, and remains, a Magistrate Judge for Orleans Parish Criminal District Court, where he is responsible for setting bail upon arrest and has a role in managing the expenditures of the Judicial Expense Fund. R. Doc. 1 at 3.

In the lawsuit, Plaintiffs challenged two aspects of Defendant's bail practices. First, Plaintiffs alleged that Judge Cantrell violated due process and equal protection when he systematically set bond for criminal defendants without first inquiring into their ability to pay the bond or considering satisfactory alternative, nonfinancial conditions of release ("Count I").

1

Plaintiffs contended that Judge Cantrell set bond without considering the facts of the case to determine whether a lower bond amount or an alternative condition of release might be appropriate. R. Doc. 1 at 6. Second, Plaintiffs alleged that Defendant again violated due process in his "dual role" of setting pretrial bond while also managing the finances of his court ("Count II"). According to Plaintiffs, this dual role created an unconstitutional conflict of interest because Louisiana law requires a portion of bond amounts collected from commercial surety to be allocated into a "judicial expense fund" which, except to pay judges' salaries, shall "be used for any purpose connected with, incidental to, or related to the proper administration or function of the court or the office of the judges thereof." La. Rev. Stat. §§ 13:1381.4(C), (D); R. Doc. 1 at 2.

## II. PROCEDURAL HISTORY

### A. District Court Order

The Court granted summary judgment on both counts and issued a Declaratory Judgment on August 6, 2018. R. Doc. 131. On Count I, the Court agreed that "[t]he Fourteenth Amendment requires an inquiry into ability to pay" bond and concluded that Defendant's failure to make this inquiry constituted a violation of procedural due process. R. Docs. 131 at 21, 132 at 1. On Count II, the Court likewise agreed that Defendant's role violated due process because Defendant both managed bond fee revenue and determined whether a pretrial detainee is able to pay bail and the amount of bail. R. Doc. 131 at 29. The Court explained that Defendant's role created a "possible temptation . . . not to hold the balance nice, clear, and true between the state and the accused." R. Doc. 131 at 29 (quoting *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 60 (1972)).

### B. Consent Decree

On Count I, Defendant entered into a consent decree on June 13, 2019, whereby Defendant agreed to voluntarily cure the violations found by this Court with respect to Defendant's bond

setting practices. R. Doc. 158. Specifically, Defendant agreed to amend his bail practice to consider an arrestee's finances before setting bail and whether nonfinancial conditions of release are available. R. Doc. 158. The consent decree further stipulated that the instant action would be "administratively closed subject to the continuing jurisdiction of this Court to enforce compliance with the terms of this Order." R. Doc. 158 at 4. The Court approved the Consent Decree when entered on June 13, 2019. R. Doc. 158.

### C. Appeal of Count II

On Count II, Defendant appealed this Court's judgment to the United States Court of Appeals for the Fifth Circuit. *Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019). The Fifth Circuit affirmed this Court's declaration that Defendant's dual role created a conflict of interest in violation of the Fourteenth Amendment. *Id.* at 532-33. The Fifth Circuit relied on the "average man as judge" standard, which accords with English Common law to hold that judges must not have any pecuniary interest in their rulings. *Id.* at 529. Among the cases applying the "average man" standard are two categories: (1) "one-off situations when the financial incentive is unique to the facts of the case," and (2) situations where "a court's structure creates [incentives] in every case." *Id.* at 530. The Fifth Circuit reasoned this case falls into the second category. *Id.* Even though Defendant does not personally receive remunerations from his bail decisions, he still receives "substantial non-monetary benefits" because the fees help pay for Defendant's court staff. *Id.* Hence, Defendant's role as both "the sole source of essential court funds and an appropriator of them" created a conflict of interest "that would make the average judge vulnerable to temptation." *Id.* at 532 (internal quotes omitted). The Fifth Circuit, accordingly, affirmed this Court's declaration that Defendant's role violated due process. *Id.* at 532-33.

Defendant has since sought review of the Fifth Circuit's ruling to the United States Supreme Court where a writ of certiorari is pending. *White v. Cain*, 2019 WL 7403489 (U.S.).

### III. PRESENT MOTION

On Count I, Plaintiffs have filed a Motion for Discovery and Rule to Show Cause Why Defendant Cantrell Should Not be Held in Contempt.[1] R. Docs. 160, 160-1. Plaintiffs argue that "[a] sampling of transcripts from pretrial detention hearings in the six months since entry of the consent judgment" reveal that Defendant has violated the terms of the consent decree. R. Doc. 160-1 at 5. Specifically, Plaintiffs allege that Defendant "continues to impose secured money bail on defendants who cannot afford it" without first considering the adequacy of nonfinancial conditions of release. R. Doc. 160-1 at 5. In support of their allegations, Plaintiffs cite to three bond hearing transcripts. R. Doc. 160-1 at 5-9. This evidence, Plaintiffs aver, demonstrates Defendant has failed to abide by the terms of the consent decree. Despite Plaintiffs' access to these hearing transcripts, they request further discovery to obtain audio recordings from bond hearings held "from the entry of the consent judgment to present." R. Doc. 160-1 at 10. Plaintiffs claim that audio recordings are "the most efficient and cost-effective means for Plaintiffs to gauge compliance with the consent judgment." R. Doc. 160-1 at 9. Plaintiffs explain that requesting the transcript for each hearing would be "unnecessarily costly and time consuming, both for the Plaintiffs and the court reporters." R. Doc. 160-1 at 9.

Defendant counters that there are no violations of the Consent Decree present in the transcripts provided by Plaintiffs. R. Doc. 162 at 2-3. Instead, Plaintiffs "have engaged in obvious cherry-picking" by choosing to highlight three bond hearings among the "hundreds" Judge Cantrell has conducted since entry into the Consent Decree. R. Doc. 162 at 3. Defendant delves

---

[1] On Count II, Plaintiffs have contemporaneously filed a Motion for Injunctive Relief which the Court will address in a separate order. R. Docs. 161, 161-1.

4

into each transcript to argue why the decisions made at those hearings comport with the Consent Decree.[2] R. Doc. 162 at 3-14. Based on his purported compliance, Defendant argues that "Plaintiffs cannot meet their burden of proving that Judge Cantrell failed to comply with any order of this Court" and as such, no additional discovery is warranted. R. Doc. 162 at 14-15.

Further, based on the same preliminary evidence, Plaintiffs ask that this Court order Defendant "to show cause as to why he should not be held in contempt of the" Consent Decree. R. Doc. 160-1 at 10.

## IV. LEGAL STANDARD

### A. Post-Judgment Discovery

A federal district court possess the power to enforce its judgments, including consent decrees. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 432 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, that decree may be enforced."); *see also Jeff D. v. Kempthorne*, 365 F.3d 844, 853 (9th Cir. 2004) (noting "the strong

---

[2] First, Plaintiffs cite the bond hearing of Timothy Sparkman who was alleged to have been in possession of a stolen automobile. R. Doc. 160-1 at 5-6. According to Plaintiffs, Defendant ordered Sparkman to pay a $1,500 secured money bond for his release after a spurious and unexplained finding as to why Sparkman posed a flight risk. R. Doc. 160-1 at 5-6; *see* R. Doc. 160-4 (transcript of the Sparkman hearing). Defendant counters that the transcript reflects a factual finding that Sparkman constituted a flight risk. R. Doc. 162 at 3. Further, Defendant argues that he considered nonfinancial conditions of release for Sparkman by inquiring into personal property Sparkman could use to secure a bond and by asking Sparkman's public defender for proposed alternatives. R. Doc. 162 at 6.
Second, Plaintiffs cite to the bond hearing of Miles Moran who had allegedly shoplifted from a convenience store. R. Doc. 160-1 at 6. Defendant required a $1,250 secured money bail for Moran's release after determining, without a factual finding, that Moran posed a flight risk and did not qualify for nonfinancial conditions of release. R. Doc. 160-1 at 7; *see* R. Doc. 160-5 (transcripts of the Moran first appearance hearing). After two weeks in which Moran remained incarcerated due to his inability to pay the bail amount, Defendant reduced the bail amount to $300—again without considering the adequacy of nonfinancial release conditions. R. Doc. 160-1 at 7; R. Doc. 160-6 (transcript of the Moran bond reduction hearing). Defendant counters that a proper finding was made as to why Moran was a flight risk. R. Doc. 162 at 7-8. Defendant concedes that he reduced Moran's bail to an amount objected to by Moran's attorney. R. doc. 162 at 11.
Third, Plaintiffs cite to the bond hearing of Gerard Taylor who had allegedly stolen a motorcycle and mechanical vehicles. R. Doc. 160-1 at 8. Defendant again appears not to have considered nonfinancial release conditions and further declined to reduce the $2,000 bail; as a result, Plaintiffs claim that Taylor remains imprisoned as of this motion's filing. R. Doc. 160-1 at 8-9. Defendant responds that he merely applied the bond amount previously set by the Commissioner who made factual findings and issued a report as to the basis of Taylor's bail amount. R. Doc. 162 at 12-14.

federal interest in ensuring that the judgments of federal courts are meaningful and enforceable"). One tool with which the Court may enforce its judgments is discovery. Pursuant to Rule 69(a)(2) of the Federal Rules of Civil Procedure, "In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person— including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Post-judgment discovery serves as an important tool to monitor a party's compliance with the court's order. *See Brumfield v. Dodd*, No. CIV.A. 71-1316, 2013 WL 360572, at *3 (E.D. La. Jan. 30, 2013). A district court judge, accordingly, has the discretion to allow further discovery after resolution of a matter. *See Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138-39 (2014) ("The rules governing discovery in postjudgment execution proceedings are quite permissive.").

### B. Finding of Contempt

"[D]istrict courts have the power and ordinarily must hold parties to the terms of a consent decree." *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008); *see also United States v. City of Jackson, Miss.*, 359 F.3d 727, 732 (5th Cir. 2004) ("A consent decree embodies an agreement of the parties and is also an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." (quoting *Frew*, 540 U.S. at 437)). District courts have wide discretion in how to enforce consent decrees and implement remedies for their violation. *Alcoa*, 533 F.3d at 286.

"The movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos*

*Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). Clear and convincing evidence is defined as the "weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *In re Medrano*, 956 F.2d 101, 102 (5th Cir.1992)).

## V. DISCUSSION

As discussed at length in this Court's previous declaration, the method in which Judge Cantrell conducted his bond hearings constituted a violation of due process. R. Doc. 131. The Consent Decree was designed to cure the constitutional deficiency. Now, the questions before this Court are whether: (1) additional discovery is necessary to ensure Defendant's compliance with the Consent Decree and (2) Defendant should be held in contempt for violating an order of this Court. The Court will address each in turn.

### A. Post-Judgment Discovery

This Court is "not reduced to approving consent decrees and hoping for compliance." *Frew*, 540 U.S. at 432. In fact, there is a "strong federal interest in ensuring that" the decree here is followed. *See Kempthorne*, 365 F.3d at 853. Discovery is merely a means by which to achieve that goal. *See, e.g.*, *Brumfield*, 2013 WL 360572 at *1-3 (compelling additional discovery decades after entry into a consent decree to enforce compliance).

Here, granting Plaintiffs additional discovery would "aid [in] the judgment or execution" of the Consent Decree. Fed. R. Civ. P. 69(a)(2). The Court passes no judgment on the veracity of Plaintiffs' allegations except to note they implicate this Court's "strong federal interest" in enforcing the Consent Decree. *Kempthorne*, 365 F.3d at 853. At the same time, having read

Defendant's detailed defenses of the transcripts, the Court cannot conclusively rule that additional discovery is unnecessary. R. Doc. 162 at 3-14. The rule governing post-judgment discovery is "quite permissive," and a finding of "good cause" will suffice to reopen a case for further discovery. *Republic of Argentina*, 573 U.S. at 138-39; *Louisiana Fish Fry Prod., Ltd. v. Corry*, No. 3:07-CV-1224J33TEM, 2010 WL 1544355, at *2 (M.D. Fla. Apr. 19, 2010) (finding "requisite good cause exists to re-open discovery so that Plaintiff may determine whether the Consent Judgment has been violated" (citation omitted)). Plaintiffs' allegations meet that low burden. Defendant effectively argues that additional discovery is not warranted absent poof that the Consent Decree has been violated. *See* R. Doc. 162 at 2-3. However, this is exactly what Plaintiffs seek to prove through additional discovery. The preliminary evidence advanced by Plaintiffs is sufficient to show "good cause" in their efforts to enforce compliance with the Court's order—an interest shared by this Court. *See Frew*, 540 U.S. at 432; *Kempthorne*, 365 F.3d at 853; *Corry*, 2010 WL 1544355, at *2. Although the parties offer starkly contrasting portrayals of the transcript, the Court need not resolve any factual discrepancies at this time or determine the accuracy of the transcripts. Instead, this Court merely exercises its inherent authority to enforce its own orders. *See Alcoa*, 533 F.3d at 287.

"While post-judgment discovery is broad, it is not without limits." *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 259 (5th Cir. 2019). Plaintiffs' requests, however, seem measured and reasonable; they seek audio recordings from bond hearings held since entry into the Consent Decree. R. Doc. 160-1 at 10. Although Defendant characterizes the request for audio recordings as "unreasonable," he does not explain why granting the request would prove burdensome to his court. R. Doc. 162 at 2. Further, an email conversation between Plaintiffs' and Defense Counsel attached to Plaintiffs' motion suggests that Defendant objects to

the production of audio recordings "for several reasons involving public records laws." R. Doc. 162-1 at 1. However, this argument appears nowhere in Defendant's memorandum in opposition, nor does the attached email chain cite any statutory provision that would purportedly restrict Plaintiffs' access to this material. For this reason and because "[t]he right of the public to have access to public records is fundamental and must be construed liberally in favor of free and unrestricted access to the public records," *First Commerce Title Co. v. Martin*, 38,903 (La. App. 2 Cir. 11/17/04), 887 So. 2d 716, 718, *writ denied*, 2004-3133 (La. 3/11/05), 896 So. 2d 66, the Court declines to consider this argument here.

Plaintiffs' requests are reasonable and cost-efficient. Defendant has already volunteered several written transcripts, so the Court finds no issue with him producing audio records of the same. The Court will limit discovery, at this time, exclusively to audio transcripts from bond hearings held before Judge Cantrell since entry into the Consent Decree on June 13, 2019.

As this Court has stated in the past, it commends Judge Cantrell for his expressed intentions to reform his bail practices. R. Doc. 131 at 21. However, Defendant's intentions do not excuse stalled progress. The Court finds no issue with Plaintiffs monitoring his continued compliance through discovery. Access to audio transcripts would promote openness and transparency to Judge Cantrell's court—which, in light of his previous violations, this Court finds warranted.

**B. Finding of Contempt**

Lastly, in the same motion for additional discovery, Plaintiffs also move this Court to hold Defendant in contempt for violating the terms of the Consent Decree. R. Doc. 160-1 at 10. Having now granted Plaintiffs' discovery request, the Court declines to hold Defendant in contempt at this time. Instead of granting both requests at once, a more sensible approach is to allow discovery in order to determine whether a contempt finding is warranted. While the Court maintains broad

authority to enforce the Consent Decree and order remedies for violations of it, *Alcoa*, 533 F.3d at 286 ("[D]istrict courts have the power and ordinarily must hold parties to the terms of a consent decree."), a finding of contempt would be premature until more conclusive evidence emerges. *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979) ("The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." (citing *Int'l Longshoreman's Assoc. v. Phila. Marine Trade Assoc.*, 389 U.S. 64, 76, 88 (1967)). Nevertheless, the Court reserves the authority to issue a contempt finding in the event evidence emerges that a party "failed to comply with the court's order." *Petroleos*, 826 F.2d at 401.

## VI. CONCLUSION

Therefore, Plaintiffs' Motion for Discovery and Rule to Show Cause Why Defendant Cantrell Should Not be Held in Contempt, R. Doc. 160, is **GRANTED** in part and **DENIED** in part.

The Court **GRANTS** Plaintiffs' request for additional discovery. It is **ORDERED** that Defendant produce the audio transcripts of bond hearings held before his court since entry of the parties' Consent Decree on June 13, 2019, as requested by Plaintiffs. Theses records must be produced within one month of this Order's issuance.

The Court **DENIES** Plaintiffs' request to find Defendant in contempt for violation of the Consent Decree without prejudice to Plaintiffs' right to refile the motion in light of new evidence that may emerge through the limited discovery ordered above.

New Orleans, Louisiana this 18th day of February 2020.

Eldon E. Fallon
United States District Judge