# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ADRIAN CALISTE and BRIAN
GISCLAIR, individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.

HARRY E. CANTRELL, Magistrate Judge
of Orleans Parish Criminal District Court,

      Defendant.

Case No. 2:17-cv-06197-EEF-MBN

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR RULE TO SHOW CAUSE WHY DEFENDANT CANTRELL SHOULD NOT BE HELD IN CONTEMPT

Plaintiffs, having completed review of the discovery produced by Defendant, renew their previously filed motion for contempt (ECF No. 160) and seek an order from this Court enforcing the existing Consent Judgment (ECF No. 158).

## I.      Procedural Summary

On August 6, 2018, this Court granted summary judgment to the Plaintiff Class on both counts of their complaint.  As to Count I, the Court issued a declaratory judgment that Judge Cantrell's bail practices violate Plaintiffs' equal protection and due process rights.  (ECF No. 131 at 21.)  The Court's judgment stated:

> Evidence in the record demonstrates that Judge Cantrell's procedure does not include an inquiry into ability to pay or consideration of alternative conditions of release prior to his setting bail. . . .
>
> In the context of hearings to determine pretrial detention Due Process requires:

1) an inquiry into the arrestee's ability to pay, including notice of the importance of this issue and the ability to be heard on this issue;

2) consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release; and

3) representative counsel [at such hearings].

(ECF No. 132 at 1–2.)

Judge Cantrell appealed this Court's judgment, but only as to Count II of Plaintiffs' complaint—a challenge to Judge Cantrell's financial conflict of interest when determining conditions of pretrial release.  As Judge Cantrell explained to the Fifth Circuit: "Judge Cantrell accepts the Count I declaratory judgment regarding his bail procedures and has already instituted new bail procedures in response." Appellant's Brief at 4, *Caliste v. Cantrell*, 18-30954, (5th Cir. Nov. 15, 2018).[1]

Plaintiffs subsequently moved for injunctive relief pursuant to Count I because of Judge Cantrell's noncompliance with the declaratory judgment.  (*See* ECF No. 138.)  The parties agreed on a consent judgment requiring compliance with detailed provisions based on the substance of this Court's declaratory judgment on Count One, and this Court entered that order on June 13, 2019.  (ECF No. 158.) The consent judgment provides a six-step process for Judge Cantrell to follow whenever determining conditions of pretrial release. If, as part of this process, Judge Cantrell seeks to impose a financial condition of release that the defendant cannot pay, Judge Cantrell "must explain by clear and convincing evidence on the record why the government has demonstrated that no other alternative conditions of release are sufficient to reasonably guard against the person's flight from prosecution or to reasonably ensure the safety of the community during the pretrial period." (*Id.* at 3.)

---

[1] Attached as Ex. 1.

On Jan. 10, 2020, Plaintiffs moved this Court to hold Defendant Judge Cantrell in contempt for his failure to comply with the Consent Judgment. (ECF No. 160.) The Court denied Plaintiffs' contempt motion without prejudice but granted their request for additional discovery in the form of audio recordings of Judge Cantrell's First Appearance Hearings conducted since the entry of the Consent Judgment in June 2019. (ECF No. 168.) Having reviewed the audio files, Plaintiffs now renew their motion for contempt.

## II.     Legal Standards for Contempt.

"Courts possess the inherent authority to enforce their own injunctive decrees" and "do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (internal citations and quotations omitted). District court judges therefore retain the power to enforce consent judgments entered in their cases. *See, e.g.*, *Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.").

In subsequent contempt proceedings, Plaintiffs, as movants, bear "the burden of establishing by clear and convincing evidence: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)); *see also Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 422 (5th Cir. 2013). Clear and convincing evidence is the "weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct,

weighty and convincing as to enable fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotes omitted).

In exercising its inherent authority to enforce a consent judgment, a court may order additional equitable relief to ensure that provisions of the parties' agreement are not violated. *See, e.g.*, *Berger v. Heckler*, 771 F.2d 1556, 1568–69 (2d Cir. 1985). The Court "has the discretion—indeed, the duty—to take immediate action in a manner coextensive with the degree of ongoing and persistent harm." *Plata v. Schwarzenegger*, No. 01-1351, 2005 WL 2932243, at *8 (N.D. Cal. May 10, 2005).

### III.     Analysis of Discovery Received from Judge Cantrell.

Plaintiffs received audio recordings of 148 First Appearance Hearings between June 13, 2019, and March 10, 2020. Not all of those hearings were presided over by Judge Cantrell. The Commissioners for Orleans Parish Criminal District Court presided over some hearings while Judge Cantrell was on leave at various points in that nine-month period. After eliminating those hearings from consideration, Plaintiffs chose a random subset of 35 First Appearance Hearings to review.[2] Those recordings documented First Appearance and Bond Reduction Hearings for 298 class members. Of that number, 194 hearings (65%) ended with Judge Cantrell imposing a secured financial condition on a class member's release from pretrial custody. Review of those 194 cases supports Plaintiffs' allegations in their first motion for contempt and their present motion for renewal.

---

[2] Plaintiffs analyzed all recordings of First Appearance Hearings for the following days: June 14, 17, 20, and 26, 2019; July 1, 2, 17, 29, 30, and 31, 2019; August 2, 22, 23, and 28, 2019; October 1, 7, and 31, 2019; November 4, 12, 20, and 27, 2019; December 3, 6, 9, and 13, 2019; January 3 and 6, 2020; February 27 and 28, 2020; and March 2, 3, 5, 6, 9, and 10, 2020.

**a. Judge Cantrell Consistently Fails to Make Required Findings of the Sufficiency of Alternative Conditions of Release, in Violation of the Consent Judgement.**

Prior to detaining someone because they cannot pay a money bond, Magistrate Cantrell must make findings that alternative conditions of release are insufficient to satisfy the government's interest in that person's future attendance at court or in protecting the community. (Consent Judgment, ECF No. 158; Decl. Judgment, ECF No 132.) He must not only make these findings but also *support* them with clear and convincing evidence. (*Id.*)

In the 190 cases reviewed, Plaintiffs found no case in which a specific finding was made as to why an alternative condition was insufficient. Instead, Judge Cantrell simply uses boilerplate language to pronounce that "alternative conditions do not satisfy my concern for flight risk and danger to the community and the victim" or some variation thereof. Most often, the alternative conditions proposed were restraining orders ("stay-away orders") and supervision through the Criminal District Court's pretrial services division.[3] But Judge Cantrell provides no explanation or finding as to why those measures would be insufficient in a particular case. As part of boilerplate language recited at the end of each hearing in which he imposes a secured money bond, Judge Cantrell broadly states that that alternative conditions are insufficient because of the allegations of the arrest report. But Judge Cantrell makes no finding of *why* the particular allegations surrounding the arrest render an alternative condition of release insufficient.  Crucially, Judge Cantrell makes no attempt to find any of the predicate facts by clear and convincing evidence.

In many cases, Judge Cantrell imposed an alternative condition, like supervision by pretrial services, in addition to a secured money bond. Yet he made no findings as to why the

secured money bond safeguarded the public more than the alternative condition alone. In these cases, the only justification for setting an unaffordable bond offered by Judge Cantrell is that the arrestee posed a significant risk of flight or danger to the community that could not be mitigated by the terms of a release order. Thus, requiring an unaffordable bond order and pretrial services supervision are contradictory conditions. Put another way, if the interest in the arrestee's continued appearance and the protection of the community can be satisfied by means of supervision, it would violate the Constitution, this Court's declaratory judgment, and the Consent Judgment to impose an unaffordable secured money bond that keeps the arrestee in jail. Moreover, such a finding would be irrational, because the obligation to pay money that is not forfeited upon commission of a crime cannot logically respond to a concern about danger to the community.[4]

Similarly, in cases in which an arrestee told Judge Cantrell that they could afford a lower bond amount than what he had set, Judge Cantrell made no findings as to why that lower amount was insufficient.   Logically, if the reason for setting an unaffordable money bond is to detain someone, then there would be no sense in bothering with alternative conditions of release. Clearly, these are people who could be safely released.

Finally, in some hearings Judge Cantrell seems to consider the affordability of a bond to be the amount of a bondsman's premium that a person could pay, which is statutorily set at 12%

---

[4] *See, e.g.*, *ODonnell v. Harris Cnty., Tex*, 251 F. Supp. 3d 1052, 1109 (S.D. Tex. 2017) ("The incentive argument fares no better with respect to deterring new criminal activity during pretrial release. The evidence is that neither a secured nor unsecured bond is subject to forfeiture for new criminal activity. . . The record establishes that requiring secured money bail provides no incentive to law-abiding behavior during pretrial release that is not equally provided by unsecured personal bonds—*the main incentive, of course, being the threat of re-arrest and extended sentences for new criminal activity, incentives that apply equally across all classes of released defendants*. . . . Secured money bail ensures better results than unsecured appearance bonds only when the secured money bail operates as an order of detention because the defendant cannot pay. Those who are detained because they cannot pay secured money bail necessarily make their court appearances and do not re-offend. But that success is because of the detention, not because of the financial security. And it applies only to those who cannot pay the secured financial conditions of release.") (internal citations omitted) (emphasis added).

of a bond. It is unclear why the prospect of paying an unrecoverable premium to a bondsman would incentivize appearance at future hearings or disincentivize dangerous behavior more than directly paying a bond and being able to recover it at a criminal matter's conclusion.

### b. Judge Cantrell fails to make findings about whether arrestees can afford the secured bonds that he requires, in violation of the consent judgment.

Judge Cantrell's failure to make the proper findings on alternative conditions of release is compounded by his failure to inquire into the affordability of the secured money bonds he sets. Because an unattainable financial condition of release is a de facto order of pretrial detention, the Consent Judgment requires Judge Cantrell to inquire into the "amount of bail defendant states he can afford." (ECF No. 158 at 3.) Since the entry of the consent judgment, Judge Cantrell has been using a financial declaration form to comply with the consent judgment's requirement that he inquire into an arrestees' income, assets, and expenses. At some point soon after the entry of the consent judgment, the form also asked the arrestees to provide a specific amount of money bail that they could afford to pay. In some of the examples of hearings that are provided in the next section, Judge Cantrell reads into the record an arrestee's response to this section of the form. At some point, however, the form was revised and no longer solicits this critical piece of information.[5] Plaintiffs would not object to its removal from the form if Judge Cantrell instead asked each arrestee orally whether they could afford the amount of secured bond he was imposing. But in recent hearings, no inquiry is made into an amount that the arrestee could afford.

---

[5] On information and belief, the financial declaration form currently used by Judge Cantrell does not ask defendants the maximum amount of bond that they could afford. *See, e.g.*, Financial Declaration of Miles Moran, *Moran v. Gusman*, 2:19-cv-13503, ECF No. 1-4 at 43 (E.D. La. filed Nov. 7, 2019).

IV.     **Examples of Hearings that did not Comply with the Consent Judgment.**

Plaintiffs provide the Court with following examples to illustrate the contempt discussed in general terms in the preceding section.

a.   **Calvin McGee, 3/10/20, 10:12–10:19 a.m.**[6]

Mr. Calvin McGee appeared before Judge Cantrell on allegations of distribution of and possession with intent to distribute cocaine. Judge Cantrell found that Mr. McGee presented a danger to the community, solely based on the New Orleans Police Department's preliminary arrest report or "GIST", which alleged that Mr. McGee had been observed in a hand-to-hand drug transaction. There were no allegations of violent conduct as part of this arrest. The prosecutor pointed to no history of violent conduct. Mr. McGee's public defender noted his ties to the community, having been born and raised in New Orleans, and his family living here. Judge Cantrell asked the public defender if Mr. McGee had property that could be used as collateral or alternative conditions of release. The public defender responded that he had neither.  "I have concerns for the safety of the community . . . the public safety of New Orleans so I'm going to consider the defendant's ability to pay and set a monetary bail in this case."  Judge Cantrell then read into the record the details of Mr. McGee's financial declaration form: he was employed, single, received public assistance, had no money in checking or savings accounts, had no property, and had no dependents. He did not state Mr. McGee's income or whether the form had solicited a specific amount that he could afford to pay. Earlier in the hearing, during the colloquy for appointment of counsel, Mr. McGee responded to Judge Cantrell's request that he provide his hourly wage. The answer is inaudible in the recording, but the figure was low enough to justify

---

[6] Plaintiffs manually attach to this memorandum an audio recording in MP3 format of each of the relevant hearings. Mr. McGee's hearing is attached as Ex. A.

the appointment of counsel. After entering the financial declaration into the record, Judge

Cantrell continued:

> Based upon that, this court finds by clear and convincing evidence that if there
> were alternative conditions of release, they would not be sufficient to ensure
> the safety of this community or to protect this community. I described in great
> detail why I consider him to be a danger to this community, including the fact
> that this is a crime that he cannot be released on his own recognizance by
> personal undertaking or surety bond. Also taking into consideration his prior
> criminal history, including the fact that he's on probation from Section B of
> this court for felony drugs. And considering the evidence presented before the
> Court today by both parties to this bail hearing regarding the seriousness of the
> offense charged, the weight of the evidence against the defendant, the
> defendant's prior criminal history as represented by the State, his ability to
> give bail as represented by the financial disclosure, the nature and seriousness
> of the danger to any other person or community posed by his release, his
> voluntary participation in pretrial or drug testing program, the absence or
> presence in the defendant of any controlled substance. He isn't currently out on
> bail, but he is on probation as I mentioned earlier. His ability to pay bail. Based
> upon his financial declaration. The availability of alternative conditions or
> release and recommendation of pretrial services report, where he is a level 2.
> And again based up on the financial disclosure and his ability to pay bail, I'll
> set the bail at $4,500. Alright, have a seat sir.[7]

The justification for imposing secured conditions of release in this case is woefully

inadequate. At no point did Judge Cantrell state what the danger he referred to was.  Mr. McGee

was accused of a nonviolent drug crime. Mr. McGee's prior criminal history stated during the

hearing is also nonviolent. The report from Pretrial Services rates him at a level 2, meaning he

was clear to be released with minimal conditions.[8]  Judge Cantrell's reference to "the fact that

this is a crime that he cannot be released on his own recognizance by personal undertaking or

surety bond," is an accurate reading of La. Code of Crim. Proc. art. 321(C)(20), but that has no

---

[7] Judge Cantrell concludes each hearing with a substantially similar address in which he declares the amount of secured bail. Plaintiff will refrain from reproducing this language in the additional examples in the pages that follow. The full address is included in the attached audio recordings.
[8] An explanation of the Court's PSA scoring is available at https://nola.gov/office-of-criminal-justice-coordination/resources/. A copy of the rubric has also been previously filed into the docket at (ECF No. 165-2).

bearing on whether the underlying offense poses a danger to the community.[9] That statutory provision prohibits release on recognizance for multiple offenses that are not violent crimes. However, that statute does not prevent from imposing only a nominal secured condition. This Court has previously ruled that judges' ability to set such a nominal bond amount is the reason that saves the statute from being facially unconstitutional. *Faulkner v. Gusman*, No. 13-6813, 2014 WL 1876213, at *3 (E.D. La. May 9, 2014) (Vance, J.). And, in any event, that state statute would not be a defense to violating this consent decree, even if its invocation made sense in this context to justify the unaffordable financial condition required by Judge Cantrell.

These inadequate findings of danger led directly to the failure to make findings of the sufficiency of alternative conditions of release to mitigate it. Judge Cantrell stated, "if there were alternative conditions of release, they would not be sufficient to ensure the safety of this community or to protect this community." But this lip service to legal standards is devoid of any factual content and any reasonable relationship to any evidentiary record. Judge Cantrell provided no reasoning why nominal bond, supervision by pretrial services, home detention, electronic monitoring, drug testing, or a combination of these or any other conditions would be insufficient to safeguard the community from whatever generalized "danger" he perceived. The consent judgment requires that he "explain by clear and convincing evidence on the record why the government has demonstrated that no other alternative conditions of release are sufficient." (ECF No. 158 at 3). In this case, the government itself made no argument that the defendant was too dangerous to be released, and the court's own pretrial services division recommended his release.

---

[9] Article 321(C) reads, "Any defendant who has been arrested for any of the following offense shall not be released on his personal undertaking or with an unsecured personal surety. . . . (20) The production, manufacturing, distribution, or dispensing or the possession with intent . . . a controlled dangerous substance."

10

In the face of this nonexistent evidentiary record, Judge Cantrell imposed a $4,500 condition of pretrial release on Mr. McGee without asking whether this was an amount he could afford. Paragraph 4 of the Consent Judgment explicitly requires that Judge Cantrell "inquire into . . .Amount of bail defendant states he can afford." (ECF No. 158 at 3.) While the Consent Judgment anticipates that this information could be solicited via a form, there's no indication that the declaration used by Judge Cantrell includes that question.  This failure is a separate violation of this Court's judgment.

### b.  Chansity Seales, 3/9/20 at 9:37–9:53 a.m.[10]

Chansity Seales appeared before Magistrate Cantrell on allegations of home invasion, battery, aggravated burglary, and simple criminal damage to property. The NOPD gist report described a dispute between Mr. Seales, his ex-domestic partner, and his ex's new partner. Mr. Seales's public defender—after noting that the home was his residence and thus probable cause for home invasion and burglary could not stand—argued that her client had no prior criminal history, much less violent history, and was rated by pretrial services as a risk level "1"—meaning he could be released without supervision and posed the lowest level of risk. Indeed, the District Attorney presented no argument on Mr. Seales's danger to the victims or the community, much less clear and convincing evidence supporting that argument. The public defender further noted that Mr. Seales was employed as a family services supervisor at Children's Hospital while pursuing a degree at Delgado Community College, and she argued that a nominal bond would be appropriate in this case.

Judge Cantrell found Mr. Seales was not a flight risk but determined that he was a danger to the community based solely on the allegations of the gist. He proceeded to read the financial

---

[10] Ex. B.

declaration into the record, noting that Mr. Seales earned $3,000 per month, had $600 in a savings account, owned a car valued at $13,000, received no public assistance, and had monthly bills of approximately $800.

After reading an address similar to that read to Mr. McGee, Judge Cantrell set a total secured bail of $17,500. Mr. Seales's public defender objected, noting that the Mr. Seales would be unlikely to afford that bail amount and so the order "would act as a detainer." She noted that stay-away orders had been signed by Judge Cantrell, which would protect the victims. Judge Cantrell countered, without any basis in the record, that he believed Mr. Seales could afford the bail amount.

As with Mr. McGee's case, Judge Cantrell made no findings of fact as to why a stay-away order or any other condition was insufficient to safeguard the public. Judge Cantrell made no inquiry into an amount that Mr. Seales *could* afford to pay, much less an explanation of why an affordable amount would not also serve to protect the community. Instead, Judge Cantrell imposed a secured bond in an amount at over five times Mr. Seales's monthly salary. The purpose of the consent judgment's procedures was to ensure that Judge Cantrell would set an unaffordable bail amount only for those defendants for whom release would be too dangerous or for whom there was too great a likelihood that they would not return to court; i.e. those persons who could be legitimately detained without bail. This is in accordance with the Court's opinion granting declaratory relief, which held that the 14th Amendment required findings by clear and convincing evidence prior to a deprivation of pretrial liberty based on danger or flight risk. (ECF No. 131 at 17–19.)  Here, Judge Cantrell stated that Mr. Seales was not a flight risk. So, the only justification to detain Mr. Seales on an unaffordable bond could be an unmitigable danger to the public. Yet Judge Cantrell concluded the hearing by saying that he thought that Mr. Seales could

afford the $17,500 bond he had set. It is indisputable, then, that Judge Cantrell did not consider Mr. Seales to be such a danger that he must be detained until trial. These plain facts themselves establish a violation of the judgment.

Indeed, the terms of the release order are entirely contradictory and preclude the conclusion that Judge Cantrell made the findings required by this Court's judgment. Nor is it the case that Judge Cantrell simply did not accept Mr. Seales's testimony on the maximum amount he could afford. The judge had made no findings as to the veracity of Mr. Seales's declaration or provided any reason to why it should be doubted.

### c.   Javonne Williams, 3/6/20, 12:44–12:56 p.m.[11]

Ms. Javonne Williams appeared before Judge Cantrell on March 6, 2020, on allegations of possession of marijuana with intent to distribute, illegal carrying of a weapon with a controlled dangerous substance, and possession with intent to distribute a controlled dangerous substance within 2000 feet of a school, following a search of her alleged residence.

Her public defender reported that Ms. Williams was an eighteen-year-old college freshman, unemployed, with no prior criminal history. She was rated by pretrial services with a risk level of "1"—release without supervision—and the prosecutor presented no evidence beyond the allegations in the NOPD gist report to suggest that Ms. Williams was a danger or flight risk. As her public defender stated, "She's not a flight risk or danger, and it seems like the State agrees." Judge Cantrell proceeded to find Ms. Williams to be a "danger" based solely upon the allegations in the NOPD Gist report.

Judge Cantrell then asked Ms. Williams's attorney if Ms. Williams had property to secure a bond or had other alternative conditions to propose. Her attorney responded that she would be

---

[11] Ex. C.

willing to participate in pretrial services. Judge Cantrell replied, with no elaboration, that he would not be "completely satisfied" with pretrial services as a condition of release, saying he would set financial conditions. He then read Ms. Williams's financial declaration into the record. She was currently unemployed, being a full-time student, and had last worked in January 2020, earning $400 per month. She had no money in bank accounts, held no property, and received no public assistance or other income. Judge Cantrell did not state whether the form inquired into an amount of bail that would be affordable. Ms. Williams's attorney, however, argued, "Judge I think it's pretty clear from what's on the form that she can't afford bail." Judge Cantrell responded by saying, "I find by clear and convincing evidence that the community would not be protected." He went on to recount the allegations in the gist as his reasoning for thinking alternative conditions would be insufficient. He concluded by setting a $3,000 bail.

Again, this record demonstrates an absence of findings by clear and convincing evidence as to why nonfinancial alternatives, like pretrial services, would be insufficient to mitigate any danger Ms. Williams might present to the public. Indeed, there was no such evidence even offered by the government, and the government made no argument that Ms. Williams was "dangerous." Judge Cantrell merely stated that his "concerns would not be completely satisfied," without making findings why pretrial services or any other alternative condition would be unsuitable for Ms. Williams.  These evidence-free statements that result in the pretrial detention of a presumptively innocent person without rigorous explanation and finding about why the evidence requires it are precisely the kind of arbitrary pretrial detention that this Court's consent judgement was entered to prohibit.

### d.   Angelica Molizone, 3/3/20 10:23–30 a.m.[12]

On March 3, 2020, Angelica Molizone appeared before Judge Cantrell on allegations of aggravated battery and simple criminal damage. According to the allegations of the arrest warrant, the charge arose from a dispute with Ms. Molizone's domestic partner, in which she had slashed his tires with a box cutter and also stabbed him with the box cutter, though his injuries were able to be treated on scene without more serious medical attention.

Ms. Molizone's Public Defender suggested pretrial services as an alternative condition of release, in light of her only criminal history consisting of one assault conviction in Texas 12 years in the past and her pretrial risk score of "3"—equating to release with standard supervision.

Judge Cantrell agreed that "when [Ms. Molizone] is released I want her to report to pretrial services. . . . But that does not completely satisfy my concern for this defendant's danger to the victim or to the community, so I'm going to consider the defendant's ability to pay and set a minimum monetary bail."   Again, Judge Cantrell's contradictory findings preclude the conclusion that he followed this Court's judgment: he stated that she should be released, but justified a further financial condition solely based on concerns about danger, even though a monetary bond cannot be forfeited on the basis of the commission of a new crime.

Having made these statements, Judge Cantrell proceeded to read Ms. Molizone's financial declaration into the record, noting that her only income was Supplemental Security Income ("SSI"),[13] she held no property, had no cash in bank accounts, supported three dependent children, and had monthly bills of $500. He required a $5,500 bail as condition of her release.

---

[12] Ex. D.

[13] The 2020 maximum benefit amount for SSI is $783 per month. *See SSI Federal Payment Amounts for 2020*, Social Security Administration, *available at* https://www.ssa.gov/OACT/COLA/SSI.html (last accessed June 4, 2020).

As with the preceding cases, Judge Cantrell made no factual findings of the sufficiency of pretrial services or other nonfinancial conditions of release. Nor did he ask whether the amount he imposed was affordable.  Both of these failures are explicit violations of this Court's order. In fact, his reference to wanting Ms. Molizone to participate in pretrial services when she was released suggested the he did not think she was so dangerous that she could not be released.

### e.   Christopher Foret, 3/2/20, 12:09–12:18 p.m.[14]

Mr. Christopher Foret appeared before Judge Cantrell on March 2, 2020, on allegations of illegal carrying of a weapon with controlled dangerous substances and possession of marijuana, methamphetamine, and drug paraphernalia. The charges arose from a traffic stop. His only prior criminal history was disturbing the peace conviction in 1981. There were no allegations of violence relating to his arrest. And Mr. Foret's pretrial report listed his risk level as "1"—eligible for unsupervised release.

The District Attorney had no argument beyond the allegations of the NOPD arrest gist to suggest that Mr. Foret presented a danger or flight risk, and likewise presented no attempt to proffer clear and convincing evidence to support such an argument. Mr. Foret's public defender argued that Mr. Foret was neither a defender nor a flight risk, noting that he was the primary caretaker for his 84-year-old mother, had strong ties to the community, and had no violent criminal history. Judge Cantrell proceeded to find Mr. Foret to be a "danger," again based only upon the gist report.

Mr. Foret had no property to secure a bond. His public defender suggested that pretrial services would mitigate Judge Cantrell's concerns for public safety. And, as with the cases discussed above, Judge Cantrell replied, "That does not completely satisfy my concern for the

---

[14] Ex. E.

safety of this community." Judge Cantrell made no findings as to why the alternative conditions were insufficient in Mr. Foret's case, let alone a finding supported by clear and convincing evidence.

Judge Cantrell proceeded to review the financial declaration form. Mr. Foret was unemployed and had last worked in 2017. He had no cash in bank accounts, did not receive public assistance, and owned no property to secure a bond. Judge Cantrell did not state whether Mr. Foret had provided an amount of money that he could afford.  Judge Cantrell imposed a $5,000 condition on Mr. Foret's release.

There was no explicit inquiry into whether Mr. Foret could afford that amount, but given the details in his declaration, there was no evidence to show that $5,000 was affordable to a person of his means. Nor was there a finding by Judge Cantrell of why a man with such a remote, nonviolent criminal history, now accused of nonviolent crimes, would present a "danger to the community."

### f.   Nathaniel Williams, 2/28/20, 11:46–11:58 a.m.[15]

Nathaniel Williams appeared before Judge Cantrell on Feb. 28, 2020, on allegations of distribution of marijuana. Judge Cantrell found Mr. Williams to be a danger based on the fact Mr. Williams was on parole and the allegation that he'd engaged in a hand-to-hand marijuana sale. The prosecutor's argument as to danger had been that Mr. Williams was on parole for violent felonies. The public defender requested a nominal bond, pretrial services, or any other programming in lieu of a secured money bond, arguing that Mr. Williams had no failures to appear and the alleged crime, marijuana distribution, was not a violent crime that could implicate a danger to the community. She also noted he was unemployed and trying to raise two children,

---

[15] Ex. F

and stated, "I do not believe that he can make a bond in regards to this—or a very high bond for that matter."

Judge Cantrell replied that "those recommendations do not satisfy my concerns for the danger to the community, so I am going to consider his ability to pay and set a monetary bail." Judge Cantrell read from Mr. Williams's financial declaration, stating that he was unemployed, had no other income, no public assistance, no money on hand in bank accounts, and owned no property. Furthermore, he noted that Pretrial Services had assessed Mr. Williams's risk level at 2, which calls for release with administrative supervision. Judge Cantrell set bond at $2,000, to which Mr. Williams's public defender objected and reiterated that he was unemployed and supporting two children.

Judge Cantrell made no findings as to why the alternative conditions proposed were insufficient to safeguard the community or asked Mr. Williams if he could afford a specific amount of bail.

### g.   Kia Allen, 2/28/20 11:58–12:09[16]

Ms. Kia Allen appeared before Judge Cantrell on Feb. 28, 2020, on allegations of distribution of marijuana and possession of paraphernalia. Her criminal history consisted of only a misdemeanor conviction for theft in 2018. The prosecutor made no arguments as to Ms. Allen's danger to the community, let alone any argument tied to clear and convincing evidence. Ms. Allen's attorney argued that Ms. Allen presented no danger to the community and had no felony convictions or history of violence. Recognizing the statutory bar on releases on recognizance for drug distribution charges, Ms. Allen's attorney also requested a nominal bond.

---

[16] Ex. G.

18

Judge Cantrell found that Ms. Allen was a "danger to the community" solely based on the following allegations of the NOPD gist report:

> Ms. Allen allegedly was holding a bag that [co-defendant] used to transact a drug transaction and then put the bag back in her pocket, which to the court indicates that she was a participant in this alleged legal action. So, based upon that and based upon the fact that she cannot be released on her own recognizance or personal surety bond by law, I must now set conditions of release that satisfy my concern for her danger to the community.

Notwithstanding this unexplained finding, Ms. Allen's public defender requested that the court consider alternative pretrial services conditions and a nominal bond. In the subsequent inquiry into her finances, Judge Cantrell established that Ms. Allen was unemployed, received no public assistance, and had $70 in a bank account. He made no explicit inquiry of her as to what amount she could afford to pay either before or after the bond amount was set. Judge Cantrell proceeded to find that Pretrial Services was insufficient to address his concerns for community safety and set a $1,500 secured bond. But Judge Cantrell made no findings as to why pretrial services or even a nominal bond amount would not have satisfied his unarticulated concerns for public safety, particularly where the alleged conduct was nonviolent and the arrestee had no history of violence.  Nor, as a result, did Judge Cantrell explain such a finding or articulate the clear and convincing evidence supporting it.

### h.  Andrew Taylor, 12/6/19 11:32–48 a.m.[17]

On Dec. 6, 2019, Judge Cantrell found probable cause for allegations against Mr. Andrew Taylor of illegal carrying of a weapon, possession of marijuana, and resisting an officer. The prosecutor's arguments to community safety were limited to the allegations of the gist, namely that Mr. Taylor had attempted to flee arrest and had been in possession of a gun. Mr. Taylor's

---

[17] Ex. H.

public defender noted his lack of criminal record and proposed pretrial services as an alternative condition of release.  As in previous examples, Judge Cantrell stated, without explanation, that pretrial services did not satisfy his concerns and proceeded to consider secured financial conditions.  He made no findings concerning alternative conditions of release, let alone findings supported by any clear and convincing evidence that he identified.

Judge Cantrell then read into the record Mr. Taylor's financial declaration. Taylor reported that he was employed at a temp agency, making $12 per hour and had no other source of income. He received no public assistance, had no cash on hand or in bank accounts, and had no other property. After noting that Mr. Taylor had a pretrial risk assessment score of "1," Judge Cantrell set a bail of $4,500. He did not inquire into whether Mr. Taylor could afford that amount.

### i.  Tyson Doughty, 11/4/19, 12:36–47[18]

On November 4, 2019, Tyson Doughty appeared before Judge Cantrell on allegations of domestic abuse battery. Mr. Doughty was employed as an Uber driver and caretaker, earning $300 per month, though his earnings were inconsistent, had $300 in a bank account, and had no valuable property. Mr. Doughty had no previous criminal history or history of violent conduct. As a result, he was assessed as Risk Level 1. Based entirely on the allegations in the gist, Judge Cantrell found Mr. Doughty to be a danger to the victim and the community.

Mr. Doughty's public defender argued that a stay-away order would be a sufficient condition for Mr. Doughty's release. Judge Cantrell made no findings, however, of why the stay-away order and pretrial services supervision were insufficient before requiring a secured bail of

---

[18] Ex. I.

$2,000. Nor did he inquire whether Mr. Doughty could afford to pay that amount, all in violation of this Court's judgment.

### j.   Delive Jones, 10/31/19, 1:36–1:45 p.m.[19]

Delive Jones appeared before Judge Cantrell on Oct. 31, 2019, on allegations of possession of Tramadol and illegal carrying of a weapon with a controlled dangerous substance. He was arrested in a traffic stop in which two pills of tramadol and a firearm were recovered. Mr. Jones's public defender explained that he was an eighteen-year-old high school student, he cooperated with the police, lacked any criminal history, had a pretrial services risk assessment score of 1, and was not accused of a violent crime. The prosecutor made no arguments as to Mr. Jones's flight risk or danger to the community.

Nonetheless, Judge Cantrell found Mr. Jones to be a danger to the community, imposing a secured bond of $4,500. Mr. Jones's public defender argued that a nominal bond and pretrial services would be a sufficient condition for Mr. Jones's release given his age and low risk score. Mr. Jones was unemployed, had no other source of income, and was a high school student living with this mother. Again, Judge Cantrell, made no findings of fact on why nominal bail, pretrial services supervision, or any other condition of release would be insufficient to mitigate any risk posed by Mr. Jones's release. Nor did he inquire whether Mr. Jones could afford to pay a $4,500 bail.  Because he did not make the required inquiries or findings, Judge Cantrell did not support those findings with any explanation of what clear and convincing evidence he relied on.

---

[19] Ex. J.

### k. Widley Joseph, 10/1/19 12:32–48 p.m.[20]

Widley Joseph appeared before Judge Cantrell on October 1, 2019, following arrest on charges of Domestic Abuse child endangerment, Simple Assault, and possession of Tramadol. The gist alleged that Mr. Joseph's domestic partner had attempted to exit a vehicle and he shoved her back into the vehicle's seat; no injuries were sustained. A child was alleged to have been in an adjacent seat. Mr. Joseph's previous criminal history had been for nonviolent and drug offenses. Pretrial Services assessed Mr. Joseph as a Risk Level 2, and recommended that he be released with supervision. Mr. Joseph's financial declaration stated that he held two jobs, earned $800 in monthly salary, had $881 in a bank account, supported two children, and he had debts and bills of $840 per month.

Mr. Joseph's public defender argued that he had no history of violence and that a stay-away order would be sufficient condition of release. Judge Cantrell made no particularized findings on the sufficiency of a stay-away order or any other alternative conditions before ordering a secured bond of $3,000. He did not determine whether Mr. Joseph could afford that amount, all in violation of this Court's judgment.

### l. Jacob Boulet, 8/28/19[21]

Jacob Boulet appeared before Judge Cantrell on Aug. 28, 2019, on charges of possession of paraphernalia and marijuana. His prior criminal history consisted of only nonviolent offenses, and he had no criminal charges in the previous three years.

Judge Cantrell found Mr. Boulet to be both a flight risk and "danger to the community" because of a previous failure to appear and the allegations of the gist describing the marijuana possession charges. Mr. Boulet's public defender noted that he had a Louisiana address, the

---

[20] Ex. K.
[21] Ex. L.

allegations of the gist were nonviolent, and he had no violent criminal history. The Public Defender recommended pretrial services as a condition of release.  The prosecution made no arguments that Mr. Boulet should be detained prior to trial.

Mr. Boulet's Financial Declaration stated that he could afford $200 bail, had $354 in a checking account, and held no property. Mr. Boulet did not provide on the form an answer to whether he had income or monthly bill obligations or debts. Judge Cantrell did not make an oral inquiry as to that financial data. Judge Cantrell imposed a $600 bond without findings on why supervision by pretrial services would be an insufficient mitigation of whatever risk was present from his history of nonviolent crimes and the current allegations of nonviolent criminal behavior.

### m. Sean Stamper, 7/29/19, 10:52–11:04 a.m.[22]

Sean Stamper appeared before Judge Cantrell on July 29, 2019, on a charge of aggravated battery. The NOPD gist detailed an allegation that Stamper struck a man with a beer bottle. Judge Cantrell found that Stamper was a danger to the victim and the community and also a flight risk.  The prosecutor's argument on danger was limited to the allegations of the gist, and his argument on flight risk was based solely on Mr. Stamper's residing out of state.

Mr. Stamper's financial declaration stated that he could afford to pay a $500 bail amount. He was unemployed and last worked in August 2018, nearly a year earlier. He had no cash in his bank account, no property, and no investments. He lived with family members.

Mr. Stamper's public defender argued that a stay-away order would be sufficient to safeguard the victim and the community. She stressed that Mr. Stamper had no prior criminal history and that he did not have a sizeable amount of money for bail.

---

[22] Ex. M.

Judge Cantrell found that alternative conditions of a stay-away order and nominal bond were insufficient, but without evidence beyond the allegations of the gist. He made no finding as to why the $500 amount Mr. Stamper suggested he could afford would be insufficient. He also noted that Mr. Stamper had a risk score of "1"—unsupervised release—before setting a bond at $4,000. The public defender objected, stating that it was unlikely Mr. Stamper would be able to afford the full amount of bond as he was indigent and unemployed.

### n.   Travis Bridges, 7/2/19, 12:24–12:41 p.m.[23]

Mr. Bridges was booked on charges of domestic abuse, aggravated assault, and possession with intent to distribute marijuana. Judge Cantrell found Mr. Bridges to be a danger based on a prior conviction for resisting arrest and the allegations of the NOPD gist.

Mr. Bridges's public defender noted that he had no violent convictions and no felony convictions, and she stated that Mr. Bridges was willing to participate in pretrial services and abide by a stay-away order. His attorney further argued that Judge Cantrell could comply with Code of Crim. Proc. art. 321(C) by setting a nominal bond, in line with *Faulkner v. Gusman*. No. 13-6813, 2014 WL 1876213, at *3 (E.D. La. May 9, 2014) (Vance, J.).

In his financial declaration, Mr. Bridges stated that he could afford to pay a bail amount of $300. He had last been employed in March 2019 and had $300 left in a bank account. Judge Cantrell nonetheless set a bail of $14,000. Judge Cantrell made no findings as to why stay-away order and supervision by pretrial services would have been insufficient. Mr. Bridges's public defender objected to his detention because of insufficient evidence of dangerousness.

---

[23] Ex. N.

### o.  Damon Wells, 7/1/19 12:07–12:20 p.m.[24]

Mr. Damon Wells appeared before Judge Cantrell on a single count of misdemeanor domestic abuse battery. According to the allegations, the incident involved Mr. Wells knocking a bottle of bleach out of the complainant's hand. The prosecutor stated that only argument to community safety was the charge itself. Mr. Wells's public defender noted he had no prior criminal history and that there was no one was injured in the alleged altercation.

The public defender also stated that Mr. Wells was willing and able to comply with any conditions from the court, including a stay-away order. Judge Cantrell stated that any additional alternative condition was insufficient. Again, he made no findings as to why an alternative condition would be insufficient in this case.

Mr. Wells stated in his financial declaration that he could afford to pay a $400 bond. He had $200 in a bank account and earned about $800 a month working full time. He had no other income, no property, and his bills were $486 a month.

Judge Cantrell set bail at $2,000. He also he ordered that Wells report to domestic violence court within 24 hours of his release. The public defender objected, arguing the evidence was insufficient for a finding of flight risk or danger. Judge Cantrell made no findings as to why alternative nonfinancial conditions or even the $400 that defendant proposed he could pay would be insufficient to protect the victim or the community.

### p.  Lakeisha Calvey, 7/1/19, 11:55–12:07[25]

Ms. Lakeisha Calvey appeared before Judge Cantrell on July 1, 2019, following arrest on a warrant for simple robbery. The alleged crime had occurred two years prior. The prosecutor

---

[24] Ex. O
[25] Ex. P.

argued for Ms. Calvey's dangerousness on the basis that the arrest warrant stated there was a physical altercation between Ms. Calvey and the victim during the robbery.

Ms. Calvey's public defender argued that there were no injuries arising from the alleged robbery, Ms. Calvey had no criminal history—much less a violent history—and that a condition of release to satisfy any concerns of public safety could be issuance of a stay-away order preventing her from being near the victim. Judge Cantrell stated that alternative condition was insufficient to satisfy concerns of danger, but he provided no reason why pretrial services, a stay-away order, and/or a nominal bond would be insufficient to prevent a "danger" presented by Ms. Calvey.

Ms. Calvey reported that she owned no property or investments to secure her release. She was unemployed, last working in January 2018. She had no other sources of income and no funds in bank accounts. Judge Cantrell set bail at $3,500. He did so over the public defender's objection as to dearth of evidence on danger, flight risk, or insufficiency of alternative conditions. Judge Cantrell responded that $3,500 *was* nominal in light of the danger Ms. Calvey presented.  Ms. Calvey had been unemployed for a year and had no other income or assets.  Each of these actions violated the clear terms of this Court's judgment.

## V.    Conclusion and Requested Relief

The preceding examples are a small but representative narrative sample of Judge Cantrell's practices in setting bail and his failure to fully comply with the consent judgment. Judge Cantrell will no doubt respond that he releases *other* arrested persons on recognizance. That is both true and laudable. But in those cases in which he imposes secured financial conditions of release, he has not complied with the Consent Judgment.  Judge Cantrell's

violations of the explicit terms of this Court's Order are open and flagrant, and they have led to significant harm to the individuals whose constitutional rights were violated.

Plaintiffs ask this Court to order Judge Cantrell to show cause as to why he should not be held in contempt of the Court's consent judgment (ECF No. 158).

Respectfully submitted,

*/s/ Eric A. Foley*
Eric A. Foley, La. Bar No. 34199, T.A.
James W. Craig, La. Bar No. 33687
Roderick & Solange MacArthur Justice
Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
eric.foley@macarthurjustice.org
jim.craig@macarthurjustice.org

*Counsel for Plaintiffs*

*/s/ Alec Karakatsanis*
Alec Karakatsanis, D.C. Bar No. 999294
(admitted *pro hac vice*)
CIVIL RIGHTS CORPS
1601 Connecticut Avenue NW, 8th Floor
Washington, DC 20009
(202) 681-2409
alec@civilrightscorps.org