UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADRIAN CALISTE ET AL | CIVIL ACTION |
| VERSUS | NO. 17-6197 |
| HARRY E. CANTRELL | SECTION "L" (5) |

## ORDER & REASONS

Pending before the Court is Plaintiffs' Renewed Motion for Rule to Show Cause Why Defendant Cantrell Should Not Be Held in Contempt. R. Doc. 184. Defendant opposes the motion. R. Doc. 193. Plaintiffs have filed a reply. R. Doc. 200-1.

## I.   BACKGROUND

On June 27, 2017, Adrian Caliste and Brian Gisclair filed suit against Magistrate Judge Harry Cantrell of the Orleans Criminal District Court. This case arose from Defendant Magistrate Judge Cantrell's alleged practice of imposing unreasonably expensive secured financial conditions of release upon arrestees without inquiring about their ability to pay. R. Doc. 1 at 1. Plaintiffs were two criminal defendants of the Orleans Parish Sheriff's Office. R. Doc. 1 at 2-3. Defendant Harry Cantrell, was, and remains, a Magistrate Judge for Orleans Parish Criminal District Court, where he is responsible for setting bail upon arrest and has a role in managing the expenditures of the Judicial Expense Fund. R. Doc. 1 at 3.

In the lawsuit, Plaintiffs challenged two aspects of Defendant's bail practices. First, Plaintiff alleged that Judge Cantrell violated due process and equal protection when he systematically set bond for criminal defendants without first inquiring into their ability to pay the bond or considering satisfactory alternative, nonfinancial conditions of release ("Count I").

Plaintiffs contended that Judge Cantrell set bond without considering the facts of the case to determine whether a lower bond amount or an alternative condition of release might be appropriate. R. Doc. 1 at 6. Second, Plaintiffs alleged that Judge Cantrell again violated due process in his "dual role" of setting pretrial bond while also managing the finances of his court ("Count II"). According to Plaintiffs, this dual role created an unconstitutional conflict of interest because Louisiana law requires a portion of bond amounts collected from commercial surety to be allocated into a "judicial expense fund" which, except to pay judges' salaries, shall "be used for any purpose connected with, incidental to, or related to the proper administration or function of the court or the office of the judges thereof." La. Rev. Stat. §§ 13:1381.4(C), (D); R. Doc. 1 at 2.

## II.     PROCEDURAL HISTORY

### A.  District Court Order

The Court granted summary judgment on both counts and issued a Declaratory Judgment on August 6, 2018. R. Doc. 131. On Count I, the Court agreed that "[t]he Fourteenth Amendment requires an inquiry into ability to pay" bond and concluded that Defendant's failure to undergo this inquiry constituted a violation of procedural due process. R. Docs. 131 at 21, 132 at 1. On Count II, the Court likewise agreed that Defendant's role violated due process because Defendant both created and managed bond fee revenue. R. Doc. 131 at 29. The Court explained that Defendant's role created a "possible temptation . . . not to hold the balance nice, clear, and true between the state and the accused." R. Doc. 131 at 29 (quoting *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 60 (1972)).

### B. Consent Decree

In response to Count I, Defendant entered into a consent decree on June 13, 2019, whereby Judge Cantrell agreed to voluntarily cure the violations found by this Court with respect to his bond setting practices. R. Doc. 158. Specifically, Judge Cantrell agreed to amend his bail practice to consider an arrestee's finances before setting bail and whether nonfinancial conditions of release are available. R. Doc. 158. The consent decree further stipulated that the instant action would be "administratively closed [with regard to Count I] subject to the continuing jurisdiction of this Court to enforce compliance with the terms of this Order." R. Doc. 158 at 4. The Court approved the Consent Decree when entered on June 13, 2019. R. Doc. 158.

### C. Appeal of Count II

In response to Count II, Defendant appealed this Court's judgment to the United States Court of Appeals for the Fifth Circuit. *Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019). The Fifth Circuit affirmed this Court's declaration that Defendant's dual role created a conflict of interest in violation of the Fourteenth Amendment. *Id*. at 532-33. The Fifth Circuit relied on the "average man as judge" standard, which accords with English Common law to hold that judges must not have any pecuniary interest in their rulings. *Id*. at 529. Among the cases applying the "average man" standard are two categories: (1) "one-off situations when the financial incentive is unique to the facts of the case," and (2) where "a court's structure creates [incentives] in every case." *Id*. at 530. The Fifth Circuit reasoned this case falls into the second category. *Id*. Even though Defendant does not personally receive remunerations from his bail decisions, he still receives "substantial non-monetary benefits" because the fees help pay for Defendant's court staff. *Id*. Hence, Defendant's role as both "the sole source of essential court funds and an appropriator of them" created a conflict of interest "that would make the average judge vulnerable to temptation."

*Id.* at 532 (internal quotes omitted). The Fifth Circuit, accordingly, affirmed this Court's declaration that Defendant's role violated due process. *Id.* at 532-33. The Supreme Court denied cert. *White v. Cain*, 2019 WL 7403489 (U.S.).

On June 9, 2020, Governor John Bel Edwards signed Act 110 of the 2020 Regular Session, requiring that the fee on commercial sureties be deposited into an escrow account and deposited annually with the City of New Orleans, rather than with the Judicial Expense Fund. Revenues from commercial sureties must be used by the City to "defray[] the expenses of the criminal justice system in Orleans Parish." In essence, the legislature has eliminated the dual-role that concerned this Court and the Fifth Circuit.

## III.    PRESENT MOTION

On January 10, 2020, Plaintiffs filed a Motion for Discovery and Rule to Show Cause Why Defendant Cantrell Should not be Held in Contempt. R. Doc. 160. In granting the motion for discovery, the Court instructed Cantrell to produce audio transcripts of bond hearings held before his court since entry of the parties' Consent Decree on June 13, 2019. R. Doc. 172 at 10. The Court declined to hold Cantrell in contempt for violations of the Consent Decree without prejudice to Plaintiffs' right to refile the motion in light of new evidence that may be discovered during a review of the audio transcripts. *Id.*

In light of the production of audio transcripts, Plaintiffs have filed a Renewed Motion for Rule to Show Cause Why Defendant Cantrell Should Not Be Held in Contempt. R. Doc. 184 at 1. Plaintiffs explain that they received audio recordings of 148 First Appearance Hearings held between June 13, 2019 and March 10, 2020. *Id.* at 4. After eliminating the hearings over which Judge Cantrell did not himself preside, Plaintiff randomly selected 35 recordings to carefully examine. Those 35 recordings included First Appearance Hearings for 298 class members.

4

Plaintiff contend that Judge Cantrell imposed a secured financial condition of release in 194 hearings, which is about 65% of the total. *Id.* Further, Plaintiffs contend the evidence demonstrates that Judge Cantrell "consistently fails to make required findings of the sufficiency of alternative conditions of release" and "fails to make findings about whether arrestees can afford the secured bonds that he requires." *Id.* at 5, 7.

Judge Cantrell opposes the motion. R. Doc. 193. Judge Cantrell argues he is in full compliance with the Consent Judgment and regularly grants pre-trial release without any financial conditions to defendants.[1] *Id.* at 3. Further, Judge Cantrell argues the Consent Judgment does not require him to make specific finding about the insufficiency of alternative conditions of release in every case, but rather only in those where the arrestee or his attorney objects to the amount imposed. Nevertheless, Judge Cantrell argues that he sufficiently comments upon the insufficiency of alternative conditions in every hearing. Moreover, Judge Cantrell argues that no case cited by Plaintiffs involves an arrestee who objected to the bail imposed, and that to the extent he is required to make such a finding regardless of express objection, the operative language in the Consent Judgment is ambiguous. Judge Cantrell also argues that he consistently considers an arrestee's ability to afford bail among the totality of financial information provided, and that he is not required to question an arrestee about affordability beyond the questions on the financial declaration form filled out by all arrestees. Judge Cantrell further suggests that Plaintiffs have not cited to any hearing in which the bond was truly unaffordable, as the vast majority of arrestees posted bail within twenty-four hours.

---

[1] In these cases, which involved non-violent drug offenses, simple burglary, theft, obstruction of justice, simple assault, and reckless operation of a vehicle, among others, Judge Cantrell determined that any flight risk or danger to the community could be mitigated with nonfinancial conditions of release such as drug testing, stay away orders, release to a drug treatment program, or release to the Orleans Public Defender. *Id.*

Plaintiffs have filed a reply, arguing that Judge Cantrell failed to abide by the consent decree and that the failure to do so does serious harm to all members of the Plaintiff class, regardless of whether they were ultimately able to post bail. Plaintiffs also stress that a failure to follow the terms of the Court's Judgement alone is sufficient to constitute a contemptuous violation, regardless of whether injuries have already been caused by the breach. R. Doc. 200-1 at 15 (citing *Chas. Pfizer & Co., v. Davis-Edwards Pharmacal Corp.*, 385 F.2d 533, 537–38 (2d Cir. 1967)). Further, Plaintiffs argue that Judge Cantrell's obligation to explain why alternative conditions of release are insufficient in each particular case exists whether or not the amount of bond is expressly objected to, so long as the information on an arrestee's financial declaration indicates that they may not be able to afford the bond. R. Doc. 200-1 at 1. To rebut any argument that the sixteen examples provided in the motion represents the only plaintiffs who were conceivably harmed by Judge Cantrell's actions, Plaintiffs also provide eight more non-exhaustive examples.

## IV.    The Audio Recordings

Plaintiffs have highlighted sixteen First Appearances hearings which they contend "are a small but representative narrative sample of Judge Cantrell's practices in setting bail and his failure to fully comply with the consent judgement." *Id.* at 26. Plaintiffs cite an additional eight hearings in their reply brief. Although Judge Cantrell has responded to the initial sixteen, he has not had an opportunity to respond to the additional eight. The Court has reviewed the additional evidence but does not find it dispositive, and since Judge Cantrell has not been given the opportunity to respond to it, the Court will not consider it further.

### A.  Calvin McGee

Calvin McGee appeared before Judge Cantrell on March 10, 2020 on allegations of possession with intent to distribute and distribution of cocaine. R. Doc. 184-1 at 8. Judge Cantrell set McGee's bail at $4,500.00. *Id*. at 11. The transcript reflects that Judge Cantrell set bail after finding that McGee was a danger to the community based on the drug transaction underlying McGee's arrest, that his crime was one for which he could not be released on his own recognizance, and that his criminal history involved the fact that he was on probation for another drug offense. R. Doc. 193 at 27.

Plaintiffs argues this bail was improperly set because Judge Cantrell did not ask whether this was an amount McGee could afford and because although Judge Cantrell found that McGee was a danger to the community, his justifications for so finding were "woefully inadequate." *Id.* at 9. Specifically, Plaintiffs argue this justification was improper because (1) Judge Cantrell never identified the danger McGee posed; (2) McGee was accused of a nonviolent crime; (3) McGee's prior criminal history was non violent; and (4) Pretrial Services had rated him a level 2, meaning he was clear to be released with minimal conditions. *Id.* Further, to the extent Judge Cantrell relied on the fact that McGee was charged with a crime for which he cannot be released on his own recognizance under Louisiana Code of Criminal Procedure art. 321(C)(20), Plaintiffs argues "that statute does not prevent him from imposing only a nominal secured condition." *Id.* at 10.

Judge Cantrell argues that his colloquy with defendant sufficiently satisfied the Consent Judgment's requirement that he explain why an arrestee is a danger to society and consider the sufficiency of any alternative conditions of financial release. Judge Cantrell cites the following portions of the transcription of McGee's hearing as proof of total compliance:

> All right, considering the evidence of the State and Public Defender, this Court finds that he is a danger to the community for the following reasons: There was a

7

narcotics surveillance on Indigo and Cozar Street where Mr. McGee was observed in a hand to hand transaction with Mr. Jones. Mr. Jones was discreetly handing Mr. McGee some currency. Mr. McGee then took a clear plastic bag and handed that to Mr. Jones. Upon searching Mr. McGee, they found 4 individually wrapped bags of narcotics. It is for those reasons; I find that he is a danger to this community and the public safety of New Orleans. So I must now set conditions of release and satisfy my concerns. Public Defender, does he have any property that he can use to secure bond in this matter?
. . .
Then based upon that, this court finds by clear and convincing evidence that if there were alternative conditions of release, they would not be sufficient to ensure the safety of this community or to protect this community. I described in great detail why I consider him to be a danger to this community, including the fact that this is a crime that he cannot be released on his own recognizance by personal undertaking or surety bond. Also taking into consideration his prior criminal history, including the fact that he's on probation from Section B of this court for felony drugs.

R. Doc. 27–28.

### B. Chansity Seales

Chansity Seales appeared before Judge Cantrell on March 9, 2020 on allegations of home invasion, battery, aggravated burglary, and simple criminal damage to property involving a dispute between his ex-domestic partner and his ex's new partner. R. Doc. 184-1 at 11. Judge Cantrell set Seales' bail at $17,500. The transcript reflects that Judge Cantrell set bail after finding that Seales was a danger to the community based on the allegations in the arrest report, which indicated that Seales had forced his way into the victim's residence, struck the victim and the victim's boyfriend, and shattered a microwave oven and the rear windshield of the second victim's car, and the fact that the underlying crime was a crime of violence under Louisiana Revised Statute 14:2. R. Doc. 193 at 26.

Plaintiffs argue Judge Cantrell imposed this bail over Seales' attorney's objection that Seales would be unlikely to be able to afford that amount and with knowledge of the fact that the bail amount was over five times Seales' monthly salary. Further, Plaintiffs argue Judge Cantrell

failed to explain why the already-signed restraining order was insufficient to protect the victims or society. *Id.* at 12.

Judge Cantrell argues the transcript reflects that he properly found Seales to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 26. Judge Cantrell cites the following portions of the transcription of Seales' hearing as proof of total compliance:

> All right, I am not going to find he is a flight risk; however, I will find that he is a danger to the victims in this case and to the community for the following reasons: The allegations that were read from the jist by the State. Also, in this instant case, the subject or the arrestee allegedly forced his way into the victims' residence by kicking in the front door. Once he was in, he struck his ex-boyfriend with a closed fist and with at least one stick or maybe two sticks. He then went to the rear bedroom of the residence and jumped on the victim's new boyfriend, striking him with a closed fist. Upon exiting the residence, he shattered a microwave oven and the rear windshield of victim #2's automobile. For those reasons, I find that he is a danger to the victims and to the community and I must now turn to conditions of release to satisfy my concerns. Also, the fact that the aggravated burglary is a crime of violence as provided by RS 14:2 and home invasion. Public Defender, does he have any property he can use to secure bond in this matter[?]
> . . .
> Then based upon that, this court finds by clear and convincing evidence that if there were alternative conditions of release, they would not in fact ensure the safety of the victims in this case nor would the community be protected or the public safety of New Orleans. I have described in great detail why I considered him to be a danger to the victims and to the community including the fact that two of these offenses are considered to be crimes of violence.

R. Doc. 193 at 26–27.

### C. Javonne Williams

Javonne Williams appeared before Judge Cantrell on March 6, 2020, on allegations of possession of marijuana with intent to distribute, illegal carrying of a weapon with a controlled dangerous substance, and possession with intent to distribute a controlled substance within 2000 feet of a school. R. Doc. 184-1 at 13. Judge Cantrell set her bail at $3,000. *Id.* at 14. The transcript reflects that Judge Cantrell set bail after finding she was a danger to the community based on the

presence of two guns and 195 grams of marijuana in her home at the time of arrest, and the fact that one of her underlying charges involved a crime of violence. R. Doc. 193 at 25.

Plaintiffs argue Judge Cantrell did not make the requisite finding of why nonfinancial alternatives would be insufficient to mitigate the danger she posed to the public. R. Doc. 184-1 at 14. Plaintiffs further argue Judge Cantrell failed to explain why alternative conditions of release, such as pretrial supervision, would be unsuitable. *Id*. In Plaintiffs' view, "[t]hese evidence-free statements that result in the pretrial detention of a presumptively innocent person without rigorous explanation and finding about why the evidence requires it are precisely the kind of arbitrary pretrial detention that this Court's consent judgment was entered to prohibit." *Id*.

Judge Cantrell argues the transcript reflects that he properly found Williams to be a danger to society and considered her ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 25–26. Judge Cantrell cites the following portions of the transcription of Williams' hearing as proof of total compliance:

> Considering the evidence presented by the State and defense counsel regarding this defendant's danger to the community or flight risk. Of course, I did find that she is a danger to the community. She was found in a house where two guns were however one gun was under a mattress but the other one was in plain view on the sofa. Also, there was 195 grams of marijuana present. So based upon that, I must now set conditions of release to satisfy my concerns for the safety of the community. All right, does she have any property she can use to secure bond in this matter?
> . . .
> I find by clear and convincing evidence that the community would not be protected. I have described in great detail why I consider her to be a danger, possession in a house where there was a firearm that was present on the sofa and 195 grams of marijuana including the fact that one of these offenses is considered to be a crime of violence.

R. Doc. 193 at 25–26.

### D. Angelica Molizone

Angelica Molizone appeared before Judge Cantrell on March 3, 2020 on allegations of aggravated battery and simple criminal damage. R. Doc. 184-1 at 15. Judge Cantrell set bail at $5,500. The transcript reflects that bail was set after finding that Molizone was a danger to the community because her crime was defined as a crime of violence under Louisiana Revised Statute 14.2 and because the underlying incident involved slashing her victim's tires and then stabbing the victim with a box cutter. R. Doc. 193 at 24. Judge Cantrell agreed that Molizone should participate in pretrial services "when she is released," but that participation in pretrial services "would not completely satisfy [his] concern for this defendant's danger to this victim or the community." *Id.*

Plaintiffs argue that Judge Cantrell's "reference to wanting Mr. Molizone to participate in pretrial services when she was released suggested that he did not think she was so dangerous that she could not be released." R. Doc. 184-1 at 16. Further, Plaintiffs argue Judge Cantrell failed to make any factual finding about the sufficiency of alternative conditions of release, such as pretrial supervision, and imposed the bond knowing that she held no property, no cash in her bank accounts, had three dependants, and sizable monthly bills. *Id.* at 15.

Judge Cantrell argues the transcript reflects that he properly found Molizone to be a danger to society and considered her ability to pay and the sufficiency of any alternative conditions of release. Judge Cantrell cites the following portions of the transcription of Molizone's hearing as proof of total compliance:

> All right, considering the arguments of the State and the public defender, this court is going to find that she is a danger to the community and a danger to the victim based upon the fact that this is a crime of violence under Revised Statue 14.2. Based upon the allegations wherein this instant case, she was at the residence of Mr. Greenville. When she went to the residence, she slashed his tires, she then went inside the residence and stabbed the victim with a box cutter on the firsthand

and then continued to stab him several more times with the box cutter. And he elected to receive treatment on the scene. It is for those reasons that I must set conditions of release to satisfy my concerns for the safety of the victim. Ma'am, do you have any property that you can use to satisfy a bond? Do you have any recommendations, Public Defender, for alternative conditions of release that you want to propose to the Court at this time?

. . .

I agree with you when she is released. I can't release her on her own recognizance or take a personal surety bond. When she is released, I want her to report to pre-trial services. However, that would not completely satisfy my concern for this defendant's danger to this victim or the community, so I am going to set a minimum monetary bail based upon her ability to pay.

. . .

Then based upon that, this court finds by clear and convincing evidence that the stay away order and reporting to pre-trial services would not be sufficient to ensure that the victim would be protected or the community would be protected. I described in great detail why I consider her to be a danger to the victim and to the community including the fact that this involves a crime of violence under Revised Statute 14:2.

R. Doc. 193 at 24–25.

### E.  Christopher Foret

Christopher Foret appeared before Judge Cantrell on March 2, 2020 on allegations of illegally carrying a weapon with controlled dangerous substances and possession of marijuana, methamphetamine, and drug paraphernalia. R. Doc. 184-1 at 16. Judge Cantrell set bail at $5,000. *Id*. at 17. The transcript reflects that Judge Cantrell imposed bail after finding that Foret was a danger to society because he had guns in his vehicle at the time of arrest. R. Doc. 193 at 23. Judge Cantrell declined to allow Foret to be released on the condition that he participate in pretrial services, as his attorney had suggested, because that did not "completely satisfy [his] concern for the safety of this community." R. Doc. 193 at 23.

Plaintiffs argue Judge Cantrell impermissibly relied only on the arrest report in finding Foret to be a danger to society, made no finding as to why alternative conditions of release were insufficient, and failed to inquire about Foret's ability to pay the amount imposed. R. Doc. 184-1

at 17. Plaintiffs contend that the information in Foret's declaration did not show that $5,000 was affordable for someone in his situation. *Id.*

Judge Cantrell argues the transcript reflects that he properly found Foret to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. Judge Cantrell cites the following portions of the transcription of Foret's hearing as proof of total compliance:

> All right, considering the arguments of the State and the public defender, this court is going to find that at this time that Mr. Foret is a danger to the community. He had two guns under his seat where he had made admissions to the police officers that there were guns in his vehicle. Based upon that, I find that I must now set conditions of release to satisfy my concerns for the safety for this community and the public safety of New Orleans. Now, Sir, do you have any property that you can use to secure a bond in this matter. No, okay. Public Defender, do you have any recommendations for alternative conditions of release that you want to propose to the Court?
> . . .
> Ok, all right, I will accept that and agree with that recommendation; however, that does not completely satisfy my concerns for the safety of this community based upon the two guns under his seat and his admission and the public safety of New Orleans so I am going to consider this defendant's ability to pay and set a monetary value in this case.
> . . .
> Then I find that by clear and convincing evidence that the alternative conditions of release or pre-trial services are not sufficient to ensure the safety of this community and public safety of New Orleans. I have described in great detail why I consider him to be a danger to this community and the public safety of New Orleans including the fact that he was in possession of two firearms which he admitted.

R. Doc. 193 at 23–24.

### F. Nathaniel Williams

Nathaniel Williams appeared before Judge Cantrell on February 28, 2020 on allegations of distribution of marijuana. R. Doc. 184-1 at 17. Judge Cantrell set bail at $2,000. The transcript reflects that Judge Cantrell set bail after finding that Williams was a danger to the community because he was on parole and probation for several counts involving "dangerous serious offenses,

13

specifically aggravated assault and three violent felonies." R. Doc. 193 at 21. Judge Cantrell also based his finding on the fact that the arrest report indicated that Williams had engaged in a sale of marijuana. *Id.* After asking whether Williams could afford bail, and being informed by his attorney that Williams could not "make a bond in regards to this—or a very high bond for that matter," Judge Cantrell found that no alternative conditions of release could protect the community and set what he considered a "minimum bond under these circumstances." R. Doc. 193 at 21.

Plaintiffs argue Williams' bail was impermissibly imposed because Judge Cantrell failed to make any finding about why alternative conditions were alone insufficient to protect the community or whether Williams could afford the bail imposed. R. Doc. 184-1 at 18.

Judge Cantrell argues the transcript reflects that he properly found Williams to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 21. Judge Cantrell cites the following portions of the transcription of Williams' hearing as proof of total compliance:

> Ok, then based upon the arguments of the State and the defense counsel, this Court is going to find at this time that he is a danger to the community. And these are my reasons for finding that he is a danger to the community, he is on parole and probation for several counts of dangerous serious offenses, specifically aggravated assault and three violent felonies and also I am finding that he is a risk to the community because Mr. Williams allegedly was approached by an unknown male. The unknown male gave him currency and then he exchanged marijuana, in fact, removed the marijuana from his person and handed the marijuana to the male. He was searched and they found a clear plastic bag of marijuana on him. Based upon that, I am finding that he is a danger to the community. I will now turn to the second factor of *Caliste*. Sir, do you own any property that you can make a bond with? Do you own any property that you can make a bond?
> . . .
> Well, I agree with you that programs would be appropriate if he could be released on his own recognizance. But notwithstanding that, I am going to still refer you to a program, to pre-trial services once he gets released. I also agree with you that it should not be a high bond. So I am going to set a minimum bond under these circumstances; however those recommendations do not satisfy my concerns for

the danger to the community so I am going to consider his ability to pay and set a monetary bail on him.
. . .
OK, all right, based upon that, I find that by clear and convincing evidence, that those conditions as previously discussed are not sufficient to ensure that the community would be protected. I have described in great detail why I consider him to be a danger to the community also including the fact that he has convictions for previous violent crimes, in fact on probation and parole and based upon his criminal history.

R. Doc. 193 at 21.

### G. Kia Allen

Kia Allen appeared before Judge Cantrell on February 28, 2020, on allegations of distribution of marijuana and possession of paraphernalia. R. Doc. 184-1 at 18. Judge Cantrell set bond at $1,500. The transcript reflects that Judge Cantrell imposed bail after finding that Allen was a danger to the community because she was involved in a drug transaction and her underlying charge involved a crime for which she could not be released on her own recognizance. R. Doc. 193 at 22. Judge Cantrell set what he considered to be the minimum monetary bail and instructed Allen to report to pretrial services when she was released. R. Doc. 193 at 22.

Plaintiffs argue that $1,500 was not "nominal" and that the decision was reached without discussing why pretrial services or the imposition of a truly nominal bond amount would have satisfied his concerns for public safety, "particularly where the alleged conduct was nonviolent and the arrestee had no history of violence." R. Doc. 184-1 at 19.

Judge Cantrell argues the transcript reflects that he properly found Allen to be a danger to society and considered her ability to pay and the sufficiency of any alternative conditions of release. Judge Cantrell cites the following portions of the transcription of Allen's hearing as proof of total compliance:

All right based upon the arguments of the State and the Public Defender, I am going to find that she is not a flight risk. I agree with the Public Defender also

15

whereby we set a minimum bond in this case. However, based upon her action, I am going to find that she is a danger to the community and for the following reasons. Ms. Allen allegedly was holding a bag that defendant Williams used to transact a drug transaction and then put the bag back in her pocket which to the Court indicates that she was a participant in this alleged illegal action. So based upon that and based upon the fact that she cannot be released on her own recognizance or undertaking a personal surety bond by law, I must now set conditions of release to satisfy my concerns for her danger to the community. Ma'am, do you have any property that you can use to make a bond?

. . .

I agree with you on the pre-trial services and once she is released she has to report to pre-trial services. Other than that, I am not completely satisfied for this defendant's danger to the community based upon her previous action so I am going to consider this defendant's ability to pay and set a minimum monetary bail.

. . .

Then this Court finds that by clear and convincing evidence, that the alternative conditions of release that I have ordered with respect to pre-trial services are not sufficient to protect the community at this time. I have described in great detail why I consider her to be a danger to the community including her prior criminal history.

R. Doc. 193 at 22–23.

### H. Andrew Taylor

Andrew Taylor appeared before Judge Cantrell on December 6, 2019 on allegations for illegal carrying of a weapon, possession of marijuana, and resisting an officer. R. Doc. 184-1 at 19. Judge Cantrell set bail at $4,500. The transcript reflects that Judge Cantrell set bail after finding that Taylor was a danger to the community because he was in possession of a firearm and marijuana at the time of his arrest and that one of his offenses was considered a crime of violence. R. Doc. 193 at 20.

Plaintiffs argue that Judge Cantrell "made no findings concerning alternative conditions of release, let alone findings supported by clear and convincing evidence." R. Doc. 184-1 at 20. Plaintiffs further argue that Judge Cantrell did not inquire into whether Taylor could afford the bond imposed, despite considering Taylor's financial declaration in which he stated that he made

16

$12 an hour and had no other source of income, owned no property, and had no cash on hand or in his bank accounts. R. Doc. 184-1 at 20.

Judge Cantrell argues the transcript reflects that he properly found Taylor to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 19. Judge Cantrell cites the following portions of the transcription of Taylor's hearing as proof of total compliance:

> Ok, this Court, as I said earlier that I did find probable cause on illegal carrying of a weapon, resisting an officer and possession of marijuana. But concerning the State's argument and the Public Defender's arguments regarding the risk of flight and danger to the community, at this time, the Court is going to find that he is a danger to the community for the following reasons. He was in possession of a firearm. Also, if I recall, he admitted that he had marijuana.
> . . .
> Based upon that I find that he is a danger to the community and I must set conditions of release to satisfy my concerns. All right, Public Defender, does he have any property that he can use to secure a bond in this matter?
> . . .
> OK, I will consider, in fact I will order him pre-trial services upon his release. I also indicated earlier that the representations regarding questions with respect to the jist but they do not completely satisfy my concerns for this defendant's danger to the community. So I am going to consider this defendant's ability to pay and set a monetary bail in this amount.
> . . .
> Then this court finds by clear and convincing evidence that those recommendations made by the Public Defender will be accepted; however, they are not sufficient to ensure that the community would be protected nor the public safety of New Orleans. I have described in great detail why I considered him to be a danger to the community including the fact that one of these offenses is considered to be a crime of violence.

R. Doc. 193 at 20.

### I.  Tyson Doughty

Tyson Doughty appeared before Judge Cantrell on November 4, 2020 on allegations of domestic abuse battery. R. Doc. 184-1 at 20. Judge Cantrell set bail at $2,000. The transcript reflects Judge Cantrell set bail after finding that Doughty was a danger to society because he was

arrested for hitting his wife and that his offense involved a crime of violence. R. Doc. 193 at 19. Although Doughty's counsel suggested a stay-away order would be a sufficient condition of release, Judge Cantrell said "those alternative conditions of release do[] not completely satisfy my concerns for this defendant's danger to the victim or the community. So I am going to . . . set a minimum monetary value in this case." R. Doc. 193 at 19.

Plaintiffs argue Judge Cantrell made no finding why the stay-away order or another non-financial condition of release would be insufficient, nor did he inquire into Doughty's ability to pay. R. Doc 184-1 at 20.

Judge Cantrell argues the transcript reflects that he properly found Doughty to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 18. Judge Cantrell cites the following portions of the transcription of Doughty's hearing as proof of total compliance:

> Considering the arguments of the State and the Public Defender regarding this defendant's risk of flight and danger to the community, this Court is going to find that he is a danger to the victim, to the community, public safety of New Orleans at the time that these acts were committed and that is for the following reasons. The victim was struck by her husband with a closed fist and the officers observed bruising on the left side of the victim's lower lip. For that reason and the fact that he cannot be released on his own recognizance or personal undertaking of a surety bond, I am going to set conditions of release to satisfy my concerns. Public Defender, does he have any property that he can use to secure a bond in this matter?
> . . .
> All right then those alternative conditions of release does not completely satisfy my concerns for this defendant's danger to the victim or the community. So I am going to consider this defendant's ability to pay and set a minimum monetary value in this case.
> . . .
> All right this Court will find by clear and convincing evidence, that the alternative conditions of release are not sufficient to ensure the safety of the victim, the community, or the public safety of New Orleans. I have described in great detail why I consider him to be a danger including the fact that this crime is one of violence as defined in Revised Statute 14:3.

R. Doc. 193 at 18–19.

### J.  Delive Jones

Delive Jones appeared before Judge Cantrell on October 31, 2019, on allegations of possession of Tramadol and illegal carrying of a weapon with a controlled dangerous substance. R. Doc 184-1 at 21. Judge Cantrell set bail at $4,500. *Id*. The record reflects that Judge Cantrell set bail after finding that Jones was a danger to society because he had a gun and two pills on his person at the time of arrest. R. Doc. 184-1 at 21. Although Jones' attorney asked for a nominal bond and pretrial services, Judge Cantrell explained that "that does not completely satisfy [his] concern for this defendant's danger to the community." R. Doc. 193 at 18.

Plaintiffs argue bail was imposed without a finding as to why nominal bail or alternative conditions of financial release such as pretrial services, would be insufficient to mitigate the risk, or a finding regarding Jones' ability to pay. R. Doc. 184-1 at 21. Plaintiffs further argue that "[b]ecause he did not make the required inquiries or findings, Judge Cantrell did not support those findings with any explanation of what clear and convincing evidence he relied on." *Id*.

Judge Cantrell argues the transcript reflects that he properly found Jones to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 17. Judge Cantrell cites the following portions of the transcription of Jones' hearing as proof of total compliance:

> Then considering the arguments of the State and the Public Defender, regarding this defendant's risk of flight and danger to the community, this court is going to find that he is a danger to the community. He did admit that he had a gun in his waistband and he was found to have 2 pills in his pocket. So based upon that, along with the additional allegations that were read into the record by the State, I must set conditions of release to satisfy my concerns. OK, Public Defender, does he have any property that he can use to secure bond in this matter?
> . . .
> All right, I certainly will consider that in fact I will order that he report to pre-trial services once he is released on bond. I will consider setting a lower bond based

upon your representations but that does not completely satisfy my concern for this defendant's danger to the community or the New Orleans Public by carrying a gun in his waistband and in possession of two Tramadol pills. So, I am going to consider now the defendant's ability to pay and set a minimum monetary bail in this amount.

. . .

Then this court finds by clear and convincing evidence that the alternative conditions that the court has accepted are not sufficient to ensure the safety of the community and New Orleans public safety. I have described in great detail along with the allegations read into the record by the State why I consider him to be a danger to the community and to the New Orleans public and based upon the fact that one of these offenses is considered to be a crime of violence.

R. Doc. 193 at 17–18.

### K. Widley Joseph

Widley Joseph appeared before Judge Cantrell on October 1, 2019, on charges of domestic abuse child endangerment, simple assault, and possession of tramadol. R. Doc. 184-1 at 22. Judge Cantrell set bail at $3,000. *Id.* The transcript reflects that Judge Cantrell imposed bail after finding that Joseph was a danger to the community because he shoved the victim in the presence of a 7-year-old child and threatened the victim on the phone and because domestic abuse battery is defined as a crime of violence. R. Doc. 193 at 17. Judge Cantrell found that alternative conditions of financial release, including a stay away order, were insufficient to protect the community. R. Doc. 193 at 17.

Plaintiffs contend Judge Cantrell did not explain why alternative conditions were insufficient nor did he determine whether Joseph could afford the bail. R. Doc. 184-1 at 22.

Judge Cantrell argues the transcript reflects that he properly found Joseph to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 16. Further, Judge Cantrell alleges that at the time of Joseph's arrest, "there was a warrant out for his arrest for non-compliance with the drug court program that required him

to be held without bond." R. Doc. 193 at 17. Judge Cantrell cites the following portions of the transcription of Widley's hearing as proof of total compliance:

> Considering the arguments of the State and the Public Defender, I am going to find that he is a danger to the victim and the community for the following reasons. Those reasons that the State read from the jist and also based upon my reading of the jist, where he shoved the victim. He did threaten her on the phone, said that someone was going to die, either him or her which is the simple assault. The domestic abuse battery was the shoving of the victim in the presence of a 7-year-old child. Based upon that, we must now turn to the Caliste factors. Public Defender, does he have any property that he can use to secure a bond in this matter?
> . . .
> Then this court finds that by clear and convincing evidence that although there are no alternative conditions of release including the stay away order, they are not sufficient to ensure that the victim will be protected or the community or the public of the City of New Orleans. I have described in great detail why I consider him to be a danger to the victim and to the community. Based also upon the fact that the domestic abuse battery 14:35.3 is a crime of violence. Previous criminal history is represented by the State.

R. Doc. 193 at 16–17.

## L.  Jacob Boulet

Jacob Boulet appeared before Judge Cantrell on August 28, 2019, on charges of possession of marijuana and paraphernalia. R. Doc. 184-1 at 22. Judge Cantrell set bail at $600. *Id.* at 23. The transcript reflects that Judge Cantrell imposed bail after finding that Boulet was a flight risk and a danger to the community because he had a prior failure to appear and an outstanding warrant and was in possession of controlled substances at the time of his arrest. R. Doc. 193 at 15. Judge Cantrell stated that "this Court is going to find that by clear and convincing evidence that any alternative conditions recommended other than pre-trial services and drug court would not be sufficient to ensure that this person would appear in court and/or that the community would be protected." R. Doc. 193 at 16.

Plaintiffs argue bail was imposed without finding about why alternative conditions such as pretrial services would be insufficient. R. Doc. 184-1 at 23. Further, Plaintiffs note that although bail was set at $600, Boulet's financial declaration indicated that he could only afford $200 in bail. R. Doc. 184-1 at 23.

Judge Cantrell argues the transcript reflects that he properly found Boulet to be a flight risk and a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. Judge Cantrell cites the following portions of the transcription of Boulet's hearing as proof of total compliance:

> Considering the arguments of the State and the Public Defender regarding this defendant's flight risk and danger to the community. At this time I am going to find that he is a flight risk and he is a danger to the community for the following reasons. He has one failure to appear. He had an outstanding warrant from Lafayette which is the address that he listed on the arrest register. He is a level 4 and that he was alleged to be in possession of controlled dangerous substances. For those reasons, I must set conditions of release to satisfy my concerns. Public Defender, does he have any property that he could use to secure a bond?
> . . .
> I agree with you. I am going to send him to pre-trial services upon his release and that pre-trial services send him first to be tested for drugs. And secondly that if he is positive, that he attend a drug program recommended by them. However, those recommendations do not completely satisfy my concern for this defendant's flight risk and/or danger to the community so I am going to consider this defendant's ability to pay and set a minimum monetary bail in this case.
> . . .
> Let the financial declaration be entered into the record. And this Court is going to find that by clear and convincing evidence that any alternative conditions recommended other than pre-trial services and drug court would not be sufficient to ensure that this person would appear in court and/or that the community would be protected. I have described in detail why I consider him a danger to the community, along with the representation made by the State in its reading of the jist into the record and why he is a flight risk.

R. Doc. 193 at 15–16.

### M. Sean Stamper

Sean Stamper appeared before Judge Cantrell on July 29, 2019 on charges of aggravated battery. R. Doc. 184-1 at 23. Judge Cantrell set bail at $4,000. *Id.* at 24. The transcript reflects that Judge Cantrell imposed bail after finding that Stamper was a danger to the community because his underlying charge involved hitting his victim, who was apparently a stranger, with a bottle and attempting to flee the scene. R. doc. 193 at 13. Judge Cantrell noted that this was an offense for which Stamper could not be released on his own recognizance. *Id.* Judge Cantrell found that a stay away order was insufficient to satisfy his concerns about the public danger. *Id.*

Plaintiffs argue Judge Cantrell failed to explain why Stamper's suggested $500 bail, which he indicated he could afford, would be insufficient. R. Doc. 184-1 at 24. Plaintiffs further argue Judge Cantrell failed to explain why alternative conditions of release, such as a restraining order or nominal bond, would be insufficient "without evidence beyond the allegations of the [arrest report]." *Id.*

Judge Cantrell argues the transcript reflects that he properly found Stamper to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. Judge Cantrell cites the following portions of the transcription of Stamper's hearing as proof of total compliance:

> Considering the arguments of the State and the Public Defender, this court is going to find that he is certainly a danger to the victim and a danger to the community. I find that he is a danger to the victim and to the community because he allegedly struck the victim in the face with a glass bottle then attempted to flee the scene. The victim suffered deep lacerations to the bridge of his nose and forehead. The alleged perpetrator says he did not know the victim or have any type of interaction before this incident. OK, let's see. Also let the record reflect that he cannot be released on his own recognizance or a personal undertaking a surety bond in accordance with the Louisiana Code of Criminal Procedure Article 321(c). Also that this is considered to be a crime of violence under Louisiana Revised Statutes 14:2. All right now, does he have any property, Public Defender, that he can use to secure a bond?

. . .
OK, I can't release him on his own recognizance or personal undertaking a surety bond. I stated that reason before. However, the stay away order is not enough to satisfy my concerns for this defendant's danger to the community so I am going to consider this defendant's ability to pay and set a monetary bail in this case.

. . .
All right then based upon that, I find by clear and convincing evidence that the alternative conditions of release are not sufficient to ensure, that it would not protect the victim or the community. I have described in detail why he is a danger to the community including those specific details of why this court feels as though this was a violent crime as defined in Revised Statute 14:2.

R. Doc. 193 at 13.

### N. Travis Bridges

Travis Bridges appeared before Judge Cantrell on July 2, 2019 on allegations of domestic abuse, aggravated assault, and possession with intent to distribute marijuana. R. Doc. 184-1 at 24. Judge Cantrell set bail at $14,000. *Id*. The transcript reflects that Judge Cantrell imposed bail after finding that Bridges hit his victim with a closed fist, pointed a gun at the victim's brothers, and threatened to "shoot this place up." R. Doc. 193 at 14. Judge Cantrell also considered the fact that Bridges' offense involved a crime of violence. *Id*. at 15.

Plaintiffs argue that the bail was set at an exorbitant amount despite the fact that Bridges stated he could only afford to pay $300 and that Judge Cantrell failed to find why a stay-away order or supervision by pretrial services would be insufficient. R. Doc. 184-1 at 24.

Judge Cantrell argues the transcript reflects that he properly found Bridges to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 14. Judge Cantrell cites the following portions of the transcription of Bridges' hearing as proof of total compliance:

At this time, considering the evidence and arguments presented by the State and the Public Defender regarding the defendant's flight risk and danger to the community. This Court is going to find that he is a danger to the victim and a danger to the community. And that is based on the allegations in the arrest warrant that he struck

the victim in the face with a closed fist. And then once the brother attempted to remove the victim from the scene and took them outside, the subject proceeded to produce a blue handgun from the pocket and pointed it at the victim's brother stating "you can close the door all you want, I will still shoot this place up". This means he is a danger to the victim and the community. Now, public defender, does he have any means to make a property bond?

. . .

Now, I will agree with the one condition with respect to issuing a stay away order. You cannot have any further contact with the victim, do you understand me, Sir? You are also not to contact the victim personally, electronically, by phone, in writing or through a third party or go up to 600 feet of the victim. You are not to contact the victim's family personally, electronically, by phone, in writing or through a third party. You have to report to our domestic violence court within 24 hours of your release. I have a protective order here that I am going to give to our counselor here. She is going to explain it to you and have you sign it and return it to the court indicating that she explained that to you and that you understand it and that you are going to abide by it. However, the other alternative condition that the Public Defender has recommended does not satisfy my concern for this defendant's danger to the victim or the community so I am going to consider this defendant's ability to pay and set a monetary bail.

. . .

Then based upon that I find by clear and convincing evidence that the alternative conditions other than what was recommended are not sufficient to protect the community or the victim. I have described in detail why he is a danger to the victim who is a member of the community and the community, also including specific details of a violent crime. This is considered to be a violent crime under Louisiana Revised Statute 14:35.3 . . . And criminal history represented by the State.

R. Doc. 193 at 14–15.

### O. Damon Wells

Damon Wells appeared before Judge Cantrell on July 1, 2019 on allegations of misdemeanor domestic abuse battery. R. Doc. 184-1 at 25. Judge Cantrell set bail at $2,000. *Id.* The transcript reflects that Judge Cantrell imposed bail after finding that Wells was a danger to society because he "smacked a bottle of bleach out of the victim's hand while she was using it to do laundry and it spilled on her shirt and her stomach as a result." R. Doc. 193 at 12. Judge Cantrell also noted that the underlying charge involved a crime of violence for which Wells could

not be released on his own recognizance under Louisiana law. *Id*. Judge Cantrell also imposed a stay-away order. *Id*.

Plaintiffs argue that this bail was set despite Well's indication in a financial declaration that he could only afford a $400 bond and that Judge Cantrell made no finding as to why an alternative condition of release or a lower bond amount was insufficient. R. Doc. 184-1 at 25.

Judge Cantrell argues the transcript reflects that he properly found Wells to be a danger to society and considered his ability to pay and the sufficiency of any alternative conditions of release. R. Doc. 193 at 11. Judge Cantrell cites the following portions of the transcription of Wells' hearing as proof of total compliance:

> Let the record reflect that this is considered to be a crime of violence under Revised Statute 14:35.3 Also let the record reflect that he cannot be released on his own recognizance or personal undertaking surety bond in accordance with the laws of the State of Louisiana. And this court will find that he is a danger to the victim and to the community based upon the crime of violence. Further reasoning that he smacked a bottle of bleach out of the victim's hand while she was using it to do laundry and it spilled on her shirt and her stomach as a result. Also, let the record reflect that the defendant was her boyfriend and the father of her unborn child. Based upon that, the court feels as though he is a danger to the victim and as a member of the community. Based upon that I must set conditions of release to satisfy these concerns. Public Defender, does he have any means to secure a property bond in this case?
> . . .
> The court is going to consider those alternative conditions; however, as stated earlier, the court indicated that he cannot be released on his own recognizance or personal undertaking a personal surety bond in accordance with the law however one condition in setting this bail of course I'm going to order that um, You cannot have any further contact with the victim, do you understand me, Sir? Also ordered not to have contact with the victim personally, electronically, by phone, in writing or through a third party or go within 600 feet of the victim. You are not to contact the victim's family personally, electronically, by phone, in writing or through a third party. You have to report to our domestic violence court within 24 hours of your release. I have a counselor here. She is going to explain that to you and have you sign this order indicating that she explained that to you and that you understand it and that you are going to abide by it. I have based upon the law, there are no other conditions that would satisfy my concern for this defendant's danger to the victim or the community so I am going to consider the defendant's ability to pay and set a monetary bail.

. . .
Then based upon that, I find that by clear and convincing evidence that any
additional alternative conditions of release are not sufficient to ensure he is not a
danger to the victim or that those conditions would protect the community. I have
described in detail my reasons why he is a danger to the community including the
specific details indicating this is a crime of violence as defined by the revised
statutes.

R. Doc. 193 at 11–12.

### P.  Lakeisha Calvey

Lakeisha Calvey appeared before Judge Cantrell on July 1, 2019 on allegations of simple

robbery. R Doc. 184-1 at 25. Judge Cantrell set bail at $3,500. *Id*. at 26. The transcript reflects

that Judge Cantrell imposed bail after finding that she was charged with a crime of violence that

involved a physical altercation and the theft of belongings from the victim's wallet. R. Doc. 193

at 11. Judge Cantrell noted that these offenses involved crimes of violence for which she could

not be released on her own recognizance under Louisiana law. *Id*.

Plaintiffs argue that although Judge Cantrell found that proposed alternative conditions of

release were insufficient to satisfy his concerns about public safety, he did not explain his

reasoning, or explained why he could not impose a lower amount in light of the fact that Calvey

had been unemployed for a year and had no income or assets. R. Doc 184-1 at 26.

Judge Cantrell argues the transcript reflects that he properly found Calvey to be a danger

to society and considered her ability to pay and the sufficiency of any alternative conditions of

release. Judge Cantrell cites the following portions of the transcription of Calvey's hearing as

proof of total compliance:

Then considering the arguments and evidence presented by the government and the
defense counsel regarding the flight risk and danger, this court is going to find that
she is a danger to the community for the following reasons. First of all, let the record
reflect as stated earlier this is an arrest warrant where probable cause has already
been found by a judicial officer. Also, that this offense is one that is defined to be
a violent crime as defined in Louisiana Revised Statute 14:2. Also taking into

consideration that she cannot be released on her own recognizance or personal undertaking of a surety bond in accordance with the Code of Criminal Procedure Article 321(c). Further, let the record reflect that she was engaged in a physical altercation on Canal and Bourbon. That she and other subjects gained possession of the victim's property as a result of her falling on the ground during the altercation. That Ms. Calvey was in possession of the victim's wallet and she was observed going through her wallet and removing several items from her wallet. The victim yelled for her to return but Calvey did not do so and emptied her wallet. Calvey then entered an unknown vehicle which was waiting at the intersection of Canal and Bourbon Street and fled in that area. This indicates to the court that she is a danger to the community and I must set conditions of release to satisfy my concerns as to her being a danger to the victim and the community. Public Defender, does she have any means to secure a property bond in this case?

. . .

Of course, I am certainly going to take that alternative condition [stay away order] into consideration however it does not satisfy my concern for this defendant's danger to the victim or the community so I am going to consider her ability to pay and set a monetary bail.

. . .

Then based upon that I find that by clear and convincing evidence, that the alternative condition that was proposed, it was not sufficient to satisfy my concern that she will appear in court and/or protect the victim or the community from safety. I have described in detail why she is a danger to the victim and the community.

R. Doc. 193 at 10–11.

## III.    LAW & ANALYSIS

### a.  Contempt Standard

"[D]istrict courts have the power and ordinarily must hold parties to the terms of a consent decree." *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008); *see also United States v. City of Jackson, Miss.*, 359 F.3d 727, 732 (5th Cir. 2004) ("A consent decree embodies an agreement of the parties and is also an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). District courts have wide discretion in how to enforce consent decrees and implement remedies for their violation. *Alcoa*, 533 F.3d at 286. One available remedy is a citation for

contempt. *See Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987) (citing *United States v. City of Miami*, 664 F.2d 435, 439–40 (Former 5th Cir. Dec. 1981) (en banc)). "The civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court." *Whitfield*, 832 F.2d at 913.

To prevail in a civil contempt proceeding, the moving party must demonstrate by clear and convincing evidence "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). The operative question is whether the respondent failed to comply with the court's order, not whether the failure to comply was willful. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (citing *N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984)). Once the moving party has established a prima facie case, the burden shifts to the respondent to demonstrate "either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order." *Whitfield*, 832 F.2d at 914.

### b. The Consent Judgment

Keeping in mind that "[c]ontempt is committed only if a person violates a court order requiring in specific and definite language that a person do or refrain from doing an act," *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992), the Court turns to the language of the Consent Judgment at issue in this case, which was entered on June 13, 2019. R. Doc. 158.

The Consent Judgment set forth a specific protocol for Magistrate Judge Cantrell to use when determining the conditions of pretrial release that reflects the Court's August 14, 2018 Declaratory Judgment. *Id.* at 1. Relevant here, the Consent Judgment obligates Judge Cantrell to first determine whether an arrestee can be released from custody with only the standard conditions

of release set forth in Louisiana Code of Criminal Procedure article 320(B).[2] If an arrestee cannot be released under the standard conditions, Judge Cantrell must determine whether any nonfinancial conditions of release, alone or in combination, would satisfy his concerns for public safety and ensure a future court appearance. R. Doc. 158 at 2. If nonfinancial conditions are sufficient, the arrestee must be released on such conditions. If financial conditions are being considered, Judge Cantrell must inquire into the arrestee's income, assets, expenses (including rent or mortgage obligations, utilities, dependants, medical expenses, transportation costs, payments on loans, credit cards, or other debts), and the amount of bail the arrestee states he can afford.[3] R. Id. at 3. Judge Cantrell is authorized to collect this information through use of a signed declaration form, which is filed with the Court.

Having collected this financial information, Judge Cantrell must decide whether a financial condition of release is necessary. If the arrestee is unable to pay the financial condition imposed, Judge Cantrell must explain "by clear and convincing evidence on the record why the government has demonstrated that no other alternatives of release are sufficient" to protect the public or ensure future court appearances. Id. The "clear and convincing evidence" must be particularized. Id. It is insufficient for Judge Cantrell to rely solely on the statute governing the alleged violation, the arrestee's primary address, or the arrestee's lack of permanent physical

---

[2] Louisiana Code of Criminal Procedure article 320(B), governing the conditions of bail, provides as follows:

> The condition of the bail undertaking in district, juvenile, parish, and city courts shall be that the defendant will appear at all stages of the proceedings to answer the charge before the court in which he may be prosecuted, will submit himself to the orders and process of the court, and will not leave the state without written permission of the court. The court may impose any additional conditions of release that are reasonably related to assuring the appearance of the defendant before the court and guarding the safety of any other individual or the community.

[3] Under the terms of the Consent Judgment, Judge Cantrell may collect this information via a sworn declaration. R. Doc. 158 at 1, 3.

address. *Id*. at 3 n. 2. If the arrestee objects to the bail imposed, Judge Cantrell must consider any additional evidence related to the dangerousness, flight risk, or alternative conditions. *Id*. at 3.

### c. Discussion

The parties do not dispute that the Consent Judgement was a valid court order and that it required certain conduct of Judge Cantrell. The only question is whether Judge Cantrell has failed to comply with the Consent Judgment's terms. *See Petroleos Mexicanos*, 826 F.2d at 401 (5th Cir. 1987).

A cursory review of the hearing transcripts provided by parties and the parties' briefs suggests that Plaintiffs have identified two general violations of the Consent Judgment, which they claim justify their contempt request. Plaintiffs argue the recordings illustrate that Judge Cantrell violates the Consent Judgment by: (2) failing to make findings about an arrestee's ability to pay the bond imposed; and (2) failing to explain why alternative conditions of release would be insufficient to prevent the risk of flight or protect the public. The Court considers whether each alleged grievance constitutes a violation of the Consent Judgment in turn.

### 1. *Whether Judge Cantrell violates the Consent Judgment by setting bail without making findings about an arrestee's ability to pay*

Paragraphs 4 and 5 of the Consent Judgment govern Judge Cantrell's obligation to inquire into an arrestee's ability to afford bail when determining whether financial conditions of release are necessary and if so, in what amount. Specifically, if Judge Cantrell "is considering a financial condition to satisfy" his concerns "for public safety and/or future appearance at court," he must inquire into and consider the following: the arrestee's income, assets, expenses (including rent, utilities, dependants, medical expenses, and transportation costs), and the "[a]mount of bail defendant states he can afford." R. Doc. 158 at 3.

The record reflects that Judge Cantrell typically solicits this information through a financial declaration form completed by the arrestee and his or her attorney. Paragraph 4 expressly authorizes this method of inquiry. *Id*. Plaintiffs argue that although this form at one time asked what amount of bond an arrestee could pay, the current form does not make the same inquiry. R. Doc. 184-1 at 7 n. 5. Although Judge Cantrell admits that older version of the current form may have inadvertently omitted the affordability question, he avers the current version makes the appropriate inquiry and resolves to "ensure that only the new forms are used in his section of the court." R. Doc. 193 at 6.

As an initial matter, the Court is satisfied that Judge Cantrell makes findings regarding an arrestee's ability to pay a certain amount of bail when imposing conditions of release. As explained above, the Consent Judgement expressly authorizes the collection of this information, along with other financial details, through a Financial Declaration form. R. Doc. 158 at 3. A copy of the form provided to the Court reveals that the very first question asked is: "For purposes of determining the amount of your bail, how much can you afford to pay at this time?" Although Plaintiffs aver that older versions of this form did not contain this question or otherwise ask about the ability to pay, the Court is satisfied that the omission of this question was an administrative oversight and that Judge Cantrell is committed to ensuring that the proper version of the form is used moving forward. Certainly, this allegation, made "upon information and belief," is not sufficient to hold Judge Cantrell in contempt. Further, while not dispositive, it is interesting to note that in twelve of the sixteen cases cited by Plaintiffs, the arrestee was released within twenty-four hours upon satisfying the monetary bail conditions set by Judge Cantrell. R. Doc. 193 at 4.

Whether Judge Cantrell violates the Consent Judgment by setting bail in an amount the arrestee cannot afford, either over his attorney's objection or in light of the financial declarations

made, is another matter entirely. Notably, the Consent Judgment does not bar Judge Cantrell from setting bail in an amount that exceeds what an arrestee represents he or she can afford; rather, it merely obligates him to consider the affordability of bail among other financial factors as well as the potential risks that secured conditions of release attempt to mitigate when doing so. In fact, the Consent Judgment expressly anticipates that unaffordable bail may be imposed in certain situations, and accordingly requires Judge Cantrell to make additional specific findings in the event that an arrestee cannot afford bail. Whether Judge Cantrell properly employs this procedural safeguard is discussed below.

## 2. *Whether Judge Cantrell violates the Consent Judgment by failing to explain why alternative conditions of release would be insufficient to prevent the risk of flight or protect the public*

The underlying litigation and resulting Consent Judgement are aimed at remedying bail hearing procedures pursuant to which Judge Cantrell consistently imposed exorbitant secured financial conditions of release without considering an arrestee's ability to pay or articulating why secured financial conditions of release were even necessary. To prevent Judge Cantrell from indiscriminately imposing cash bail requirements, paragraph 5 of the Consent Judgment provides:

> If the person cannot pay the financial condition that the court determines necessary, then the court must explain by clear and convincing evidence on the record why the government has demonstrated that no other alternative conditions of release are sufficient to reasonably guard against the person's flight from prosecution or to reasonably ensure the safety of the community during the pretrial period.

R. Doc. 158 at 3. The parties dispute when clear and convincing evidence is required and whether Judge Cantrell's finding are sufficient under this standard.

First, Plaintiffs interpret the phrase, "[i]f the person cannot pay the financial condition," to mean that Judge Cantrell must support his decision with clear and convincing evidence in every

case in which the arrestee's attorney objects to the imposition of the bond on the grounds of unaffordability or in which the arrestee's financial information suggests that the bond will be unaffordable. Plaintiffs argue that in the 190 cases they reviewed, they found no case in which Judge Cantrell specifically explained why an alternative condition of release was insufficient, despite evidence of unaffordability. Judge Cantrell, in contrast, interprets the phrase as requiring clear and convincing evidence only when there is an express objection from the arrestee's counsel. In Judge Cantrell's view, to the extent it is argued that paragraph 5 of the Consent Judgment obligates him to explain by clear and convincing evidence why the government has demonstrated that alternative conditions are insufficient *"even in the absence of an objection to the bail as unaffordable,"* paragraph 5 is unclear and ambiguous and therefore may not support a finding of contempt. R. Doc. 193 at 9.

While the Court is sympathetic to Plaintiffs' interpretation and recognizes that the spirit of the Consent Judgment and the aims of the underlying litigation are best supported by clear findings in all cases where an arrestee risks being detained before trial because he or she is unable to post the required bail, the language of the Consent Judgment is simply not specific enough to support a finding of contempt on this issue. Notably, a finding of contempt is only appropriate upon a violation of "specific and definite language," and the parties' differing interpretations of the relevant language reveal that the phrase could be interpreted in at least two reasonable ways. Accordingly, the Court must now consider whether Judge Cantrell's findings are sufficient when an express objection to affordability is raised.

Plaintiffs aver that where Judge Cantrell does comment on the sufficiency of alternative conditions of release, he relies on "boilerplate language to pronounce that 'alternative conditions do not satisfy my concern for flight risk and danger to the community and the victim' or some

variation thereof." R. Doc. 184-1 at 5. Noting the Judge Cantrell typically relies on the allegations of the underlying arrest to find that an arrestee is a danger to the community, Plaintiffs aver that "Judge Cantrell makes no finding of *why* the particular allegations surrounding the arrest render an alternative condition of release insufficient." *Id.* Judge Cantrell, in contrast, argues he satisfies the clear and convincing evidence requirement by explaining why an arrestee subject to a secured financial condition of release poses a danger or a flight risk and uses that explanation as the basis for finding that an alternative condition of release would not alone be sufficient. R. Doc. 193.

A review of the hearing transcripts and audio recordings provided by the parties supports Judge Cantrell's argument. Although it is not clear that the Consent Judgment requires Judge Cantrell to comment on the sufficiency of alternative conditions in all cases, he nevertheless concludes each bail hearing with a summary of the reasons for which he feels financial conditions of release are necessary. Judge Cantrell's colloquy with the arrestee routinely contains the following language, or some variation thereof:

> This court finds by clear and convincing evidence that if there were alternative conditions of release, they would not in fact ensure the safety of the victims in this case nor would the community be protected or the public safety of New Orleans. I have described in great detail why I considered him to be a danger to the victims and to the community including the fact that two of these offenses are considered to be crimes of violence.

This language was used in Chansity Seales's hearing, before his attorney objected to the imposition of a $17,500 bond on the grounds that it would "act as a detainer." R. Doc. 184-1 at 12. A review of the recordings reveals that Judge Cantrell routinely makes similar findings, which Plaintiffs characterize as "boilerplate." *Id.* at 5.

In these instances, Judge Cantrell relies on the previously-found community danger or flight risk—as revealed in the factual description supporting the defendant's arrest—to justify his

concern for public safety. Typically, Judge Cantrell determines that an individual is a danger to the community after considering the nature of the underlying offense, whether the offense is deemed a crime of violence under Louisiana law, whether the arrestee can be released on his or her own recognizance under Louisiana Code of Criminal Procedure article 321, and the arrestee's criminal history. The Court believes these are reasonable things to consider when determining whether an individual poses a threat or a flight risk. For example, the Court is hard-pressed to conclude that Judge Cantrell's finding that an individual charged with crimes of violence such as domestic abuse and aggravated assault with a firearm was a public danger, was inherently unreasonable. Notably, Judge Cantrell's role requires him to make subjective determinations, as there is no universal measure by which to conclusively assess whether an individual poses a public danger or flight risk. Further, it is clearly reasonable for Judge Cantrell to rely on these findings when commenting on the insufficiency of alternative conditions.

To the extent that Plaintiffs disagree with the substance of Judge Cantrell's decisions or his reasoning, such disagreement is best resolved on a case-by-case basis, rather than a contempt motion. Further, the Court stresses that mere disagreement with Judge Cantrell's decision does not give rise to contempt. The Consent Judgment leaves the decision of whether an arrestee is a danger to society or a flight risk to Judge Cantrell's discretion. It does not set forth specific factors that must exist to support any particular finding. Further, the nature of Judge Cantrell's position requires him to make these determinations day in and day out in an efficient manner. While it may be possible for a lawyer, with the clarity of hindsight, to parse the transcript and argue that a different finding would have been justified, Judge Cantrell does not have the same luxury of time as he undertakes the task of dealing with a busy docket. It appears to the Court as though Judge Cantrell's decision to find someone a public danger or flight risk are reasonable in light of

the available information, and that this determination is relevant to the question of whether and to what extent alternative conditions of release may be appropriate.

Moreover, the Court recognizes that Judge Cantrell's bail proceedings have dramatically improved since the imposition of the Consent Judgment. A review of the audio recording and hearing transcripts indicates that Judge Cantrell is striving to abide by the terms of the Consent Judgment and carry out the responsibilities of his office fairly and efficiently. Indeed, before the Consent Judgment was adopted, it was alleged that Judge Cantrell routinely set a $2,500 minimum secured bond in all cases without considering *any* facts specific to the case or even entertaining the possibility that alternative conditions of release may be appropriate. *See Caliste v. Cantrell*, 329 F. Supp. 3d 296, 302 (E.D. La. 2018), *aff'd*, 937 F.3d 525, 302 (5th Cir. 2019). He allegedly required *all* bonds to be obtained from a commercial surety and never allowed arrestees to post case bail. *Id.* It was alleged that Judge Cantrell routinely threatened public defenders with contempt if they even attempted to argue for a lower bond amount or release on the arrestee's own recognizance. *Id.* at 309. Further, Judge Cantrell admitted that he never considered whether financial conditions of release would result in pretrial detention when presiding over bail hearings. *Id.*

In contrast, since the entry of the Consent Judgment, Judge Cantrell apparently routinely releases a large proportion of defendants after imposing nonfinancial alternative conditions of release, such as drug testing, stay away orders, and rehabilitation programs. R. Docs. 193 at 3, 193-1. Although the majority of these defendants were charged with non-violent drug crimes, Judge Cantrell avers he has also released individuals charged with simple burglary, theft, obstruction of justice, simple criminal damage to property, and criminal trespass, among other crimes, on similar grounds. R. Doc. 193 at 3, 193-1. It further appears from the transcripts that

37

Judge Cantrell consistently engages in a lengthy colloquy during bail hearings, specifically referencing the *Caliste* requirements, responding to counsel's objections and suggestions, and striving to justify his decisions with evidence from the record. Based on the evidence presented, the Court is unable to conclude that Judge Cantrell violates the Consent Judgment in a fashion that would justify holding him in contempt.

In so ruling, the Court nevertheless recognizes that money bail is an archaic feature of our law that deserves serious study to determine whether it has outlived its usefulness in the present criminal justice system. There is a plethora of scholarly articles supporting the conclusion that the cash bail system is arbitrary,[4] disproportionately impacts indigent defendants and communities of color,[5] does not actually ensure public safety,[6] is statistically unnecessary to ensure future court appearance,[7] routinely leads to worse outcomes for those detained before trial,[8] and primarily serves the interests of the for-profit bail bond industry, an industry that exists only in the United

---

[4] *See* Criminal Justice Policy Program, Harvard Law School, Moving Beyond Money: A Primer on Bail Reform, Harvard Law School Criminal Justice Policy Program (October 2016), http://cjpp.law.harvard.edu/assets/FINAL-Primer-on-Bail-Reform.pdf.

[5] *See* Traci Schlesinger, Racial and Ethnic Disparity in Pretrial Criminal Processing, Justice Quarterly 22, no. 2 (2005) (studying racial disparity in pretrial decisions and concluding that often, "racialized attributions" are used to "fill in the knowledge gaps created by limited information on cases and defendants"); Stephen Demuth, "Racial and Ethnic Differences in Pretrial Release Decisions and Outcomes: A Comparison of Hispanic, Black, and White Felony Arrestees," Criminology 41, no. 3 (2003) (studying disparities between Hispanic, black, and white defendants with respect to pretrial release decisions and outcomes).

[6] *See* Michael R. Jones, Pretrial Justice Institute, Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option, https://pdfs.semanticscholar.org/5444/7711f036e000af0f177e176584b7aa7532f7.pdf (comparing the effect of secured and unsecured bonds on public safety and concluding that "unsecured bonds are as effective as secured bonds at achieving public safety").

[7] *See* Michael R. Jones, Pretrial Justice Institute, Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option, https://pdfs.semanticscholar.org/5444/7711f036e000af0f177e176584b7aa7532f7.pdf (comparing the effect of secured and unsecured bonds on court appearance and concluding that "unsecured bonds are as effective as secured bonds at achieving court appearance").

[8] *See* Leon Digard & Elizabeth Swavola, Vera Institute of Justice, Justice Denied: The Harmful and Lasting Effects of Pretrial Detention, 3–5 (April 2019), https://www.vera.org/publications/for-the-record-justice-denied-pretrial-detention (summarizing studies demonstrating that "compared to people who are released from jail within a few days of their bail hearings, people who are detained for longer periods are more likely to be convicted," are more likely to receive harsher sentences, and are more likely to be "charged with a new crime in the future").

States and the Philippines.[9]  Recognizing the serious harms associated with the cash bail system,
[10] many cities and even whole states have begun to eliminate or at least severely curtail its use.[11]

       The Consent Judgment entered into in this matter, however, was designed to mitigate, not
eliminate, the insidious effects of cash bail in the Orleans Parish criminal justice system. Actually
changing any systemic problems associated with money bail and pre-trial detention will require
more than a single Consent Judgment targeting the actions of a single Magistrate Judge. Indeed,
as explained above, Judge Cantrell *is* following the law—he makes the findings required of him
by the Consent Judgment and imposes cash bail as authorized by Louisiana law, which
specifically instructs judges to set bail in amount that "will ensure the presence of the defendant,
as required, and [ensure] the safety of any other person and the community," La. Code Crim.
Proc. art. 316. Furthermore, article 321 prevents him from releasing individuals arrested for
certain crimes on their own recognizance. *Id*. art. 321(c)(20). In this case, the problem is not with
Magistrate Judge Cantrell's application of the law; it is with the law itself. The Louisiana law, in
its current form, is anachronistic and needs to be modified to meet the realities of the current

---

[9] *See* Color of Change, ACLU Campaign for Smart Justice, \$elling Off Our Freedom (May 2017),
https://nomoneybail.org/wp-content/uploads/2018/02/059-Bail-Report.pdf (examining the role of insurance
companies and local bond agents in the criminal justice system and advocating for the elimination of for-profit money
bail); *see also* Justice Policy Institute, "For Better of For Profit: How the Bail Bonding Industry Stands in the Way
of Fair and Effective Pretrial Justice," (September 2012),
http://www.justicepolicy.org/uploads/justicepolicy/documents/_for_better_or_for_profit_.pdf.

[10] Take, for example, the story of Kaleif Browder, a sixteen-year old boy who spent three years on Rikers
Island awaiting trial after being arrested for allegedly stealing a backpack because his family could not afford his
\$3,000 bail. Mr. Browder, who spent almost two of the three years in jail in solitary confinement, was released when
the District Attorney dropped the charges against him. He committed suicide two years later. *See* Jennifer
Gonnerman, Before the Law, NEW YORKER (Oct. 6, 2014),
https://www.newyorker.com/magazine/2014/10/06/before-the-law; Jennifer Gonnerman, Kalief Browder, 1993-
2015, NEW YORKER (June 7, 2015), https://www.newyorker.com/news/news-desk/kalief-browder-1993-2015.

[11] *See* Colin Doyle, Chiraag Bains & Brook Hopkins, Criminal Justice Policy Program, Harvard Law School,
Bail Reform: A Guide for State and Local Policymakers (February 2019) (surveying reform efforts in Washington,
D.C., Kentucky, New Jersey, Illinois, California, New Mexico, and Maryland, among others).

criminal justice system. Any change in the law, however, is best left to the legislature, not this Court.

## IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Renewed Motion for Rule to Show Cause Why Defendant Cantrell Should Not Be Held in Contempt, R. Doc. 184, is **DENIED**.

New Orleans, Louisiana this 18th day of August, 2020.

_____

Eldon E. Fallon

United States District Judge